In re Canaveral Crossroads, LLC and Sherwood Construction, Inc.
Case No. 6:26-bk-05426-GER, jointly administered with Case No. 6:26-bk-05428-GER

*Debtor's Objection to Claim 3-2 of Billd Exchange, LLC*

# EXHIBIT 2

Claim 10-1 of Billd Exchange, LLC in In re Martin Charles Flynn, Jr., No. 6:26-bk-00399-LVV, filed April 1, 2026, with the Master Contractor Agreement, Purchase Statement form (Ex. B), and Outstanding Balance schedule.

**Fill in this information to identify the case:**

Debtor 1 Martin Flynn

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court **Middle District of Florida**

Case number: **26−00399**

FILED
**U.S. Bankruptcy Court**
**Middle District of Florida**
4/1/2026
**Jose A. Rodriguez, Clerk**

Official Form 410
# Proof of Claim

**04/25**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Billd Exchange, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ______

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Billd Exchange, LLC | |
| Name | Name |
| 3800 N. Lamar Blvd. #210<br>AUSTIN, TX 78756 | |
| Contact phone 5122704805 | Contact phone ______ |
| Contact email legal@billd.com | Contact email ______ |
| Uniform claim identifier (if you use one): ______ | |

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ______

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ________

**7. How much is the claim?**

$ 1001051.75

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Personal Guaranty of a Master Contractor Agreement (attached)

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: ________

**Basis for perfection:** ________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ ________

**Amount of the claim that is secured:** $ ________

**Amount of the claim that is unsecured:** $ ________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ ________

**Annual Interest Rate** (when case was filed) ________ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ ________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ________

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No<br>☐ Yes. *Check all that apply*: | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 4/1/2026
MM / DD / YYYY

/s/ Ryan Delgado
Signature

Print the name of the person who is completing and signing this claim:

Name: Ryan Delgado
First name Middle name Last name

Title: Senior Counsel

Company: Billd Exchange, LLC
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 3800 N. Lamar Blvd. #210
Number Street
AUSTIN, TX 78756
City State ZIP Code

Contact phone: 5122704805 Email: legal@billd.com

## Outstanding Balance Martin Flynn

As of 2026-04-01 09:55:32 Central Standard Time/CST

| Project Name ↑ | Account Name | Financing Name | Financing Record Type | Processed Date | Current Maturity Date | Total Principal | Total Finance Charge | Total Fees | Total Outstanding Balance |
|---|---|---|---|---|---|---|---|---|---|
| Austin Commons | Sherwood Construction | Austin Commons_MF_28 | Material Financing | 3/29/2024 | 7/30/2024 | $924.48 | $170.05 | $0.00 | 1094.53 |
| | Sherwood Construction | Austin Commons_MF_24 | Material Financing | 3/8/2024 | 7/9/2024 | $1,057.59 | $172.27 | $0.00 | 1229.86 |
| | Sherwood Construction | Austin Commons_MF_29 | Material Financing | 3/29/2024 | 7/30/2024 | $1,214.45 | $223.40 | $0.00 | 1437.85 |
| | Sherwood Construction | Austin Commons_MF_30 | Material Financing | 3/28/2024 | 7/26/2024 | $1,866.08 | $330.21 | $0.00 | 2196.29 |
| | Sherwood Construction | Austin Commons_MF_21 | Material Financing | 3/4/2024 | 7/2/2024 | $2,456.85 | $382.84 | $0.00 | 2839.69 |
| | Sherwood Construction | Austin Commons_MF_34 | Material Financing | 4/23/2024 | 8/21/2024 | $3,084.81 | $695.46 | $0.00 | 3780.27 |
| | Sherwood Construction | Austin Commons_MF_31 | Material Financing | 4/1/2024 | 7/30/2024 | $3,676.21 | $676.35 | $0.00 | 4352.56 |
| | Sherwood Construction | Austin Commons_MF_22 | Material Financing | 3/11/2024 | 7/9/2024 | $5,238.02 | $853.12 | $0.00 | 6091.14 |
| | Sherwood Construction | Austin Commons_MF_26 | Material Financing | 3/21/2024 | 7/19/2024 | $5,849.52 | $973.94 | $0.00 | 6823.46 |
| | Sherwood Construction | Austin Commons_MF_25 | Material Financing | 3/21/2024 | 7/19/2024 | $5,875.21 | $998.18 | $0.00 | 6873.39 |
| | Sherwood Construction | Austin Commons_MF_27 | Material Financing | 3/26/2024 | 7/24/2024 | $8,830.06 | $1,562.40 | $0.00 | 10392.46 |
| | Sherwood Construction | Austin Commons_MF_32 | Material Financing | 4/3/2024 | 8/1/2024 | $8,675.27 | $1,754.49 | $0.00 | 10429.76 |
| | Sherwood Construction | Austin Commons_MF_36 | Material Financing | 5/2/2024 | 8/30/2024 | $8,668.44 | $2,021.41 | $0.00 | 10689.85 |
| | Sherwood Construction | Austin Commons_MF_19 | Material Financing | 2/14/2024 | 6/13/2024 | $9,570.31 | $1,286.88 | $0.00 | 10857.19 |
| | Sherwood Construction | Austin Commons_MF_20 | Material Financing | 2/22/2024 | 6/21/2024 | $12,110.76 | $1,716.72 | $0.00 | 13827.48 |
| | Sherwood Construction | Austin Commons_MF_35 | Material Financing | 4/25/2024 | 8/23/2024 | $16,916.53 | $3,813.91 | $0.00 | 20730.44 |
| **Subtotal** | Sum | | | | | $96,014.59 | $17,631.63 | $0.00 | 113646.22 |
| | | | | | | | | | |
| Cherry Village | Sherwood Construction | Cherry Village_MF_51 | Material Financing | 3/14/2024 | 7/13/2024 | $642.08 | $104.56 | $0.00 | 746.64 |
| | Sherwood Construction | Cherry Village_MF_48 | Material Financing | 3/7/2024 | 7/6/2024 | $1,861.80 | $290.15 | $0.00 | 2151.95 |
| | Sherwood Construction | Cherry Village_MF_53 | Material Financing | 3/14/2024 | 7/13/2024 | $2,795.97 | $455.33 | $0.00 | 3251.3 |
| | Sherwood Construction | Cherry Village_MF_56 | Material Financing | 4/9/2024 | 8/8/2024 | $3,305.97 | $694.17 | $0.00 | 4000.14 |
| | Sherwood Construction | Cherry Village_MF_59 | Material Financing | 4/24/2024 | 8/23/2024 | $3,531.00 | $796.06 | $0.00 | 4327.06 |
| | Sherwood Construction | Cherry Village_MF_52 | Material Financing | 3/14/2024 | 7/13/2024 | $4,315.17 | $702.77 | $0.00 | 5017.94 |
| | Sherwood Construction | Cherry Village_MF_45 | Material Financing | 2/13/2024 | 6/13/2024 | $5,669.17 | $763.67 | $0.00 | 6432.84 |
| | Sherwood Construction | Cherry Village_MF_58 | Material Financing | 4/22/2024 | 8/21/2024 | $6,828.00 | $1,539.42 | $0.00 | 8367.42 |
| | Sherwood Construction | Cherry Village_MF_60 | Material Financing | 4/24/2024 | 8/23/2024 | $9,416.00 | $2,122.85 | $0.00 | 11538.85 |
| | Sherwood Construction | Cherry Village_MF_62 | Material Financing | 5/30/2024 | 9/27/2024 | $9,891.79 | $2,612.78 | $0.00 | 12504.57 |
| | Sherwood Construction | Cherry Village_MF_46 | Material Financing | 2/16/2024 | 6/15/2024 | $16,029.64 | $2,154.15 | $0.00 | 18183.79 |
| | Sherwood Construction | Cherry Village_MF_61 | Material Financing | 5/24/2024 | 9/21/2024 | $14,584.67 | $3,739.51 | $0.00 | 18324.18 |
| | Sherwood Construction | Cherry Village_MF_50 | Material Financing | 3/12/2024 | 7/11/2024 | $19,185.00 | $3,124.49 | $0.00 | 22309.49 |
| | Sherwood Construction | Cherry Village_MF_43 | Material Financing | 2/5/2024 | 6/4/2024 | $26,106.84 | $3,333.19 | $0.00 | 29440.03 |
| | Sherwood Construction | Cherry Village_MF_35 | Material Financing | 1/23/2024 | 7/21/2024 | $31,036.53 | $5,382.41 | $620.73 | 37039.67 |
| | Sherwood Construction | Cherry Village_MF_49 | Material Financing | 3/12/2024 | 7/11/2024 | $32,808.70 | $5,343.28 | $0.00 | 38151.98 |
| | Sherwood Construction | Cherry Village_MF_39 | Material Financing | 1/23/2024 | 7/21/2024 | $31,986.62 | $5,547.11 | $639.73 | 38173.46 |
| | Sherwood Construction | Cherry Village_MF_54 | Material Financing | 3/25/2024 | 7/24/2024 | $50,877.94 | $9,002.26 | $0.00 | 59880.2 |
| | Sherwood Construction | Cherry Village_MF_36 | Material Financing | 1/23/2024 | 7/21/2024 | $72,611.82 | $12,592.23 | $1,452.24 | 86656.29 |
| | Sherwood Construction | Cherry Village_MF_38 | Material Financing | 1/24/2024 | 7/21/2024 | $78,071.48 | $13,539.10 | $1,561.43 | 93172.01 |
| | Sherwood Construction | Cherry Village_MF_37 | Material Financing | 1/24/2024 | 7/21/2024 | $133,302.45 | $22,518.40 | $2,666.05 | 158486.9 |
| | Sherwood Construction | Cherry Village_MF_40 | Material Financing | 1/26/2024 | 7/24/2024 | $192,094.10 | $33,312.84 | $3,841.88 | 229248.82 |
| **Subtotal** | Sum | | | | | $746,952.74 | $129,670.73 | $10,782.06 | 887405.53 |
| | | | | | | | | | |
| **Total** | Sum | | | | | $842,967.33 | $147,302.36 | $10,782.06 | 1001051.75 |

billd

# MASTER CONTRACTOR AGREEMENT

This MASTER CONTRACTOR AGREEMENT (this "***MCA***") sets forth certain terms and conditions applicable to Contractor's purchase of Program Goods or Services on trade credit offered to Contractor by Billd Exchange in connection with such purchase as contemplated by the Agreement. As used herein: "***Agreement***" means this MCA, all exhibits, schedules and supplementary documents, each Personal Guaranty and each Purchase Statement (including each Modified Purchase Statement, if applicable) involving Contractor under the Agreement, in each case, as same may be amended from time to time; "***Contractor***" refers to the business entity or entities identified as the "Contractor" on the signature page attached hereto; "***Program Goods or Services***" means any construction materials or other products or services sourced from an Originating Supplier and purchased by Contractor for purposes of Contractor's incorporating such materials or other products or services into a construction project for which Contractor provides constructions services; and "***Billd Exchange***" refers to Billd Exchange, LLC, a Delaware limited liability company.

In this MCA, "***you***" and "***your***" refer to Contractor, and "***we***," "***us***" and "***our***" refer to Billd Exchange (and, as applicable, our Associated Persons). Please also refer to Exhibit A attached hereto for certain other defined terms used in the Agreement (the "***Program Defined Terms***"), which Program Defined Terms are incorporated herein by reference and are subject to change, from time to time, by Billd Exchange in its sole discretion. Any such change(s) shall be deemed effective upon posting to our website located at www.billd.com/program-defined-terms/. In addition, the terms of each Purchase Statement between you and Billd Exchange entered into pursuant to the Agreement, a form of which is attached hereto as Exhibit B (the "***Purchase Statement Form***"), are hereby made a part of the Agreement.

1) **The Basics.** We will issue you Access Devices (i.e., Account number(s), User ID(s), Purchase ID(s), Project ID(s) and passwords) that your Administrator and your Users may use to access your Account using the Billd Portal, subject to the terms of the Agreement. Before your Account can be used for a Purchase, you must have received all Approved Submittals, and then your Administrator or applicable User will need to log-on to the Billd Portal and make a Purchase Request for the specific Purchase that you want us to approve and execute. We will review your Purchase Request and any other information we may need to review relating to the underlying request for trade credit, and we will inform you whether your Purchase has been approved for execution and funding by us, via either email or in the Billd Portal. If approved, we will establish a credit limit for each specific Purchase we approve, and from time to time, we may also establish an overall credit limit for you. **Your Account and Access Devices may be used for business purposes only and not for personal, family or household purposes.**

2) **Purchase of Program Goods or Services.** Subject to the terms and conditions of the Agreement (including receipt of all Approved Submittals and the terms of each Purchase Statement), Billd Exchange agrees to offer you trade credit for your purchase of certain Program Goods or Services sourced from an Originating Supplier specified in a Purchase Statement accepted by us pursuant to the terms of the Agreement. We may reject any Purchase Request in our sole discretion. Subject to the terms of the Agreement, we will pay the applicable Originating Supplier the Purchase Amount (less any applicable Purchase Fee or Supplier Discount) for such Program Goods or Services as set forth in the applicable Purchase Statement accepted by us pursuant to the terms of the Agreement.

3) **Your Promise to Pay.**

   a) You promise to pay Billd Exchange the full Purchase Amount and Finance Charges as set forth in each Purchase Statement (including any Modified Purchase Amount and Finance Charges thereon as set forth in any Modified Purchase Statement) accepted by us for the purchase of Program Goods or Services on your Account. You must pay Billd Exchange for each purchase made on your Account, regardless of whether you signed for the purchase or received a proof of delivery and regardless of whether the purchase violates your internal rules, any credit limit or the terms of the Agreement. You are obligated to pay Billd Exchange in full and on time any amounts due pursuant to the terms of the Agreement, regardless of whether you are paid by the project owner, the general contractor, any sub-contractor or any other Person. No third party is authorized to receive payments for Billd Exchange other than us. If you make a payment directly to any Originating Supplier, that payment will *NOT* operate to reduce any of your indebtedness owed to Billd Exchange. You may pay the balance on your Account, in whole or in part, at any time without the payment of a premium. If you are over any trade credit limit or past

due, all over limit and past due amounts will be added to your payments and shall be deemed immediately due and payable. Payments in excess of any applicable minimum payment do not relieve you from the obligation to make future payments. **In all events, you must make payments sufficient to assure that the balance of each Purchase is paid in full by the Maturity Date provided in the Purchase Statement (or, if applicable, the Modified Maturity Date as provided in the applicable Modified Purchase Statement)**. This means that one or more payments may need to be larger than any applicable Minimum Payment. Each time you permit your Account or Access Device to be used, you will be considered to be representing to us that you intend to and have the ability to repay us in accordance with the Agreement on or before the respective Maturity Date (or, if applicable, the respective Modified Maturity Date).

b) **Regardless of the Maturity Date (or, if applicable, the Modified Maturity Date), you agree to pay all amounts owed to us for a Purchase in full within five (5) business days of your receipt of funds from a general contractor, owner or other party related to the Program Goods or Services you have purchased for such Purchase.**

c) **Joint Check Power of Attorney.** As security for your prompt payment and performance of your obligations owed to Billd Exchange with respect to each Purchase hereunder, you hereby irrevocably constitute and appoint any officer of Billd Exchange as your true and lawful attorney-in-fact to, without your consent or notice to you: (i) receive, endorse and deposit any joint check or similar instrument (and any and all other documents related thereto) received by Billd Exchange with respect to any such Purchase; (ii) apply such funds so received, endorsed and deposited to your outstanding obligations owed to Billd Exchange hereunder; and (iii) take any and all other action(s) required, necessary or proper in connection therewith, as fully for all intents and purposes as you might or could do if present, in each case, with full power of substitution or revocation, to the extent permitted by applicable law. You hereby ratify and confirm any and all actions that such attorney-in-fact, or such attorney-in-fact's substitute or substitutes, shall lawfully do or cause to be done by virtue of this power of attorney and the rights and powers herein granted. This power of attorney is irrevocable and coupled with an interest. You hereby agree to execute and deliver any other document or other instrument, in the presence of a duly authorized notary, as the case may be, as Billd Exchange may request at any time. In the event the funds received by Billd Exchange pursuant to the exercise of the foregoing power of attorney exceed your outstanding obligations owed to Billd Exchange, Billd Exchange will refund any excess to you.

**4) Payments, Finance Charges, Fees and other Trade Credit Terms.**

a) **Payments.** The statement of your Account will be accessible in the Billd Portal, detailing your Purchases, including accrued Finance Charges and any other amounts due to Billd Exchange, and any payments credited to your Account.

b) **Manner of Payment.** You will maintain your Contractor Bank Account so long as any amounts are outstanding on your Account, with sufficient funds to cover all payments owed to Billd Exchange under the Agreement. Your payments to Billd Exchange will be made via ACH debit against your Contractor Bank Account initiated by Billd Exchange, or in such other manner as instructed by us. You authorize Billd Exchange to initiate such ACH transactions in accordance with applicable U.S. law. Each week or month, as specified in your Purchase Statement, we may initiate an ACH debit against your Contractor Bank Account for purposes of collecting any scheduled payment then due. You will be solely liable for all charges, fees and costs associated with your Contractor Bank Account and for all overdrafts thereon, regardless of whether such overdrafts directly or indirectly result from the ACH entries initiated by us. You agree to supply such additional written documentation with respect to the foregoing as we may request from time to time. If you make a payment other than as provided herein or contrary to our other instructions, we are not required to accept your payment, and even if we accept the payment, there may be a delay in crediting your Account and you will be responsible for all Finance Charges and other amounts incurred or accrued during such delay. In addition, we are not required to accept payments that are marked "payment in full" or similarly and our acceptance of any such payments will not cause us to lose or waive our right to receive payment in full. We reserve our rights as to all such payments. Partial payments offered in full

satisfaction of a disputed amount must be sent to a special address specified from time to time by us and are subject to acceptance in our sole and absolute discretion.

c) **Finance Charges; Recovery Costs; Purchase Fees.** We will calculate and accrue Finance Charges on each Purchase Amount posted to your Account beginning as of the day immediately following the applicable Purchase Date (subject to any initial Interest Free Periods as agreed by Billd Exchange and set forth in the applicable Purchase Statement, if applicable) and using the Contract Rate and other terms specified in the applicable Purchase Statement. Any balance outstanding beyond the Maturity Date (or, if applicable, the Modified Maturity Date) shall continue to accrue Finance Charges at the Contract Rate, without affecting any of our rights or remedies as a result of your failure to pay your Account in full on or before the Maturity Date (or, if applicable, the Modified Maturity Date). For the avoidance of doubt, we will also calculate and accrue Finance Charges on any Modified Purchase Amount as set forth in any Modified Purchase Statement accepted and agreed to by Billd Exchange, in its sole discretion, which Finance Charges you agree to pay by your execution of any Modified Purchase Statement. You also agree to pay us for any and all Recovery Costs we incur in connection with your Purchases. In addition, except as otherwise agreed by Billd Exchange with respect to any Purchase and reflected in your Account on the Billd Portal, you acknowledge and agree that a Purchase Fee will be included in the applicable Purchase Amount set forth in the Purchase Statement for a Purchase. In the event of a Purchase sourced from a Partner Supplier, the exact Purchase Fee may vary, depending on terms available to Contractors purchasing Program Goods or Services sourced from such Partner Supplier, as agreed by Billd Exchange. In the event of any Modified Purchase Statement, you acknowledge and agree that a Modification Fee will be included in the applicable Modified Purchase Amount set forth in the Modified Purchase Statement.

d) **Taxes.** We shall not be responsible for any sales, use or other taxes relating to or arising from each Purchase on your Account. You agree to pay such taxes if passed on by an Originating Supplier (or otherwise charge any such taxes to your project general contractor, subcontractor or owner) or otherwise ensure that a valid tax exemption applies.

e) **Application of Payments.** You may from time to time provide instructions as to the application of payments on your account. We may honor certain of those instructions, but reserve the right to apply payments in the order we decide. We may apply payments in a way that is most convenient or favorable to us (for example, we may apply payments first to Finance Charges, then to fees and then to Purchase Amount balances). We may apply payments to various Purchases on your Account in the order we choose. We may reject any payment that would create a credit balance. We may retain and apply any credit balance to future Purchases or other amounts you owe us. We do not pay interest on credit balances.

f) **Trade Credit Availability.** The Agreement does *NOT* constitute a binding commitment on our part to extend credit to you. We reserve the right to approve or decline any Purchase Request, in our sole discretion. We may close your Account and or any Purchase on your Account from time to time in our sole discretion. After we have closed a Purchase, you shall not be permitted to use any Access Device(s) associated with such Purchase other than to access your outstanding balance for such Purchase.

g) **Trade Credit Limits.** We may adjust your credit limits from time to time without advance notice. We may, but are not obligated to, allow usage in excess of any trade credit limit. We are not obligated to permit re-advances of amounts previously advanced under a Purchase, even if those amounts have been repaid. We may, but are not obligated to, treat Purchase credit limits as the maximum amount of trade credit that may be advanced on your Account on a cumulative basis.

h) **Billd Restocking Fee.** We may charge you a restocking fee, in our sole discretion, in the event you exchange, return or otherwise adjust any Program Goods or Services after delivery (a "***Billd Restocking Fee***"), in addition to any other amounts you owe us in respect of the applicable Purchase. The Billd Restocking Fee shall equal no more than 3% of the Purchase Amount of the applicable Program Goods or Services that are exchanged, returned or adjusted, and in the event less than all of such Program Goods or Services are exchanged, returned or adjusted, then the Billd Restocking Fee shall equal no more than 3% of the proportional amount of such Purchase Amount

determined by Billd Exchange in relation to the quantity of such Program Goods or Services actually exchanged, returned or adjusted. In the event Billd Exchange charges a Billd Restocking Fee, you agree to promptly pay such Billd Restocking Fee to Billd Exchange upon notice thereof (and in no event later than five (5) days following such notice).

5) **Lien Rights.** You acknowledge and agree that, for purposes of statutory and other lien rights, we shall be deemed the supplier of all Program Goods or Services purchased on your Account, and you agree that you are purchasing such Program Goods or Services for purposes of your incorporating such Program Goods or Services into a construction project for which you are providing construction services. You shall not resell, transfer, convey or otherwise distribute such Program Goods or Services as a supplier, distributor or reseller. You agree that Billd Exchange has: (1) all rights to receive payment in full for each purchase made on your Account; and (2) other rights and remedies regarding each purchase made on your Account, including supplier's, mechanic's, materialman's and/or other similar lien rights and rights to make a bond claim that may exist by law as against you, your subcontractor, your general contractor, the owner, the real property or any other Person or property allowed by law, as the case may be, to which the Program Goods or Services were delivered or intended to be delivered. You represent, warrant and agree that: (i) you will take such actions as legally required or requested by us to file such notices and record such documents as are necessary to preserve those lien rights and/or bond claim rights, using any lien processing service provider we designate; (ii) you agree to collaterally assign to Billd Exchange your lien rights and rights to make a bond claim and Billd Exchange shall be permitted to enforce those lien rights and bond claim rights as are available to it; (iii) Billd Exchange shall be entitled to enforce those lien rights and bond claim rights to recover any unpaid balance related to the applicable Purchase on your Account; (iv) your payment obligations and Billd Exchange's lien rights and bond claim rights continue in full force and effect even after we pay the Originating Supplier for your purchase; and (v) your payment obligations are satisfied only by our receipt of valid funds, representing full and final payment to us of all amounts owed to us under the Agreement. You also represent, warrant and agree that the Program Goods or Services you purchase: (x) are eligible for coverage by a supplier's, mechanic's, materialman's and/or other similar lien filed on behalf of Billd Exchange and/or are eligible for a bond claim; and (y) shall be incorporated into or used for the specific project associated with the applicable Purchase for which such Program Goods or Services were purchased. Billd Exchange's lien rights and bond claim rights shall survive any closure of your Account or any Purchase and shall continue in full force and effect until all amounts owed to us are paid in full (and shall be reinstated in the event any payments to us are required to be disgorged or returned). You covenant and agree to establish, preserve and protect your own mechanic's, materialman's and/or other similar lien rights and/or bond claim rights, as applicable, related to each Purchase, and you agree to not take any action that would adversely affect Billd Exchange's lien rights and/or bond claim rights. You agree to take all action necessary to protect your own lien rights, including the timely filing of any required preliminary notice. You will be responsible for all costs and expenses related to such lien processing. Notwithstanding the foregoing, we are not obligated to pursue any lien rights, bond claims or other courses of action prior to seeking payment from you or otherwise taking any legal action against you pursuant to the Agreement.

6) **Events of Default; Immediate Payment; Automatic Charges and Debits After Maturity Date.**

   a) If any of the following events or circumstances (each, an "***Event of Default***") exist or occur without our prior written consent, you will be deemed to be in default under the Agreement and, in addition to any other remedies available to us, we may require immediate payment of your entire Account balance(s):

      i) You do not make any regularly scheduled payment that is due before the Maturity Date (or, if applicable, the Modified Maturity Date) within three (3) days of the scheduled due date for such payment;

      ii) You do not make full payment of all amounts due with respect to a Purchase upon the applicable Maturity Date (or, if applicable, the Modified Maturity Date) or within one (1) day thereafter;

      iii) You do not comply with the terms of the Agreement and such non-compliance continues for more than ten (10) days after your receipt of notice of the same;

iv) Your trade credit exceeds your available credit limits set by us from time to time, and you have not repaid any such excess amounts to us within ten (10) days of notice of such excess;

v) You make a payment that is returned or dishonored;

vi) You provide us with false or misleading information in connection with the Agreement or related to any Purchase on your Account;

vii) You die (if a sole proprietor), dissolve or cease doing business (if a business entity) or become insolvent, or you no longer have a valid license to conduct your business;

viii) You sell, transfer or otherwise dispose of all or substantially all of your business or assets, or you enter into any Purchase pursuant to which greater than fifty percent (50%) of your equity ownership changes or a majority of the members of your governing body changes;

ix) A petition is filed by or against you in any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation proceeding, or a receiver, liquidator or trustee is appointed for you or any of your property, or you make an assignment of the benefit of creditors and such matters are not dismissed within thirty (30) days;

x) You are generally not paying or have announced that you will not pay your debts as they come due whether to us or any other party;

xi) You are in breach of any contract or agreement, or you are in violation of any law, rule, regulation, policy or guideline, applicable to your performance of construction services in connection with any project that is the subject of a Purchase, including without limitation your default under any payment and performance bond with respect to any such project;

xii) You default on or breach any note, loan agreement or other obligation for borrowed money whether owed to us or any other party;

xiii) A material adverse change occurs in your financial condition, your business, your prospects or any other condition affecting or relating to you, any of your material assets or your ability to repay any amounts owed to us; or

xiv) Billd Exchange's lien rights and/or bond claim rights shall be impaired or adversely affected by any act or omission by you or your Contractor Personnel.

b) Following the Maturity Date for a Purchase (or, if applicable, the Modified Maturity Date for a Purchase), in the event you do not make full and final payment within one (1) day of such Maturity Date (or, if applicable, the Modified Maturity Date), you authorize us to, in our discretion, (i) initiate a charge to your Contractor Credit Card or (ii) initiate an ACH debit against your Contractor Bank Account, in each case, for the full amount outstanding (including the unpaid Purchase Amount (or, if applicable, Modified Purchase Amount) and all unpaid Finance Charges and other fees) with respect to the applicable Purchase. You will be solely liable for all charges, fees and costs associated with your Contractor Credit Card and/or your Contractor Bank Account and for all overcharges and/or overdrafts thereon (including any failed attempt to initiate an ACH entry), regardless of whether such overcharges and/or overdrafts (or such failed attempts) directly or indirectly result from the credit charges or ACH entries initiated by us. You agree to supply such additional written documentation with respect to the foregoing as we may request from time to time. For the avoidance of doubt, Billd Exchange will not initiate a charge to your Contractor Credit Card or initiate an ACH debit against your Contractor Bank Account except as authorized by the foregoing and other provisions of the Agreement or as otherwise authorized by you.

c) Our remedies under the Agreement are in addition to all other rights and remedies available at law or in equity, including, but not limited to, our right to file, enforce and otherwise exercise all supplier's, mechanic's, materialman's and/or other similar lien rights associated with any Purchase. You agree to pay all collection costs and expenses (including reasonable attorneys' fees, arbitrator fees and arbitration costs, court costs and litigation related expenses) that we incur to enforce the Agreement and/or any lien we file.

**7) Term; Termination or Suspension of Credit.** The Agreement shall remain in full force and effect until terminated by us (the "***Term***"). We may terminate the Agreement and/or suspend any or all of your purchase and credit privileges at any time, with or without cause and without advance notice. Notwithstanding such termination or suspension, your obligations under the Agreement with respect to any outstanding Purchases shall continue. In addition, your obligations under Sections 16 through 29 shall survive any termination of the Agreement. Without limiting the generality of the foregoing, we may terminate the Agreement and/or suspend your purchase and credit privileges if you move out of our market area.

**8) Access Device Usage.** Access Devices will be useable only with Originating Suppliers approved by us, and such approved Originating Suppliers may change without advance notice. We are not responsible for any Originating Supplier's refusal to honor an Access Device. We may authorize purchases made with your Access Device(s) until we receive actual written notice that an Access Device should be revoked, and we have a reasonable opportunity, not less than two (2) business days, to act on that notice. We may permit Access Devices to be used with reference to multiple Purchases or we may limit Access Device usage to specific Purchases. You are responsible for all charges made by use of your Access Devices regardless of the purpose thereof and regardless of whether any Administrator, User or other Person violates your rules pertaining to Access Device usage. Each use of an Access Device is subject to our authorization. We may decline authorization for any use in our sole discretion. We are not liable for declining or failing to authorize any usage, regardless of the reason for our decline or failure (including, but not limited to, failures that result from computer, communications or other network or system failures).

**9) Unauthorized Use of Your Account.** You agree that you shall be responsible for all of your Access Devices, for preventing unauthorized use of and access to your Account and for assuring the security of your own computer systems. You are responsible for any losses we suffer arising out of any unauthorized access to the Billd Systems using your Access Devices. You agree to take immediate action if you have reason to suspect that: (a) any unauthorized use of or access to your Account or Access Device(s) has occurred; or (b) any unauthorized Person has accessed your computer systems. Your immediate action should include (but is not necessarily limited to) notifying us and having your Administrator terminate access rights to all potentially affected Access Device(s). Your Administrator is responsible for taking all steps necessary to discontinue Access Device and system access rights when necessary. Access rights should not be considered discontinued unless your Administrator receives an email or other written communication from us confirming the discontinuation. You agree that any use of your Account or Access Device(s) by any of your personnel or by any other Person that you or your personnel permit to access the Account or any Access Device may be considered by us to be authorized. You agree to fully cooperate with our investigation of any alleged unauthorized use. If any unauthorized use of your Access Devices occurs, you agree to (x) cooperate with us and law enforcement authorities in identifying and prosecuting the perpetrator and (y) provide the reasonable assistance we request in recovering any losses. We shall not be responsible under any circumstances for any losses that you may incur as a result of any use of or access to your Account or Access Devices. Except as otherwise expressly limited by applicable law, you are liable for all use of your Account and/or Access Device(s), whether authorized or unauthorized.

**10) Refunds, Returns and Purchase Disputes, etc.** We will have no liability for the Program Goods or Services you purchase or for any other acts, omissions, warranties or obligations of any Originating Supplier. Your payment obligations to us are absolute and unconditional. You are obligated to pay all amounts due on your Account with us regardless of any claim, defense, set-off or other rights that you may have against us or the Originating Supplier. You agree to be bound by all return policies and restocking fees, if applicable, of the Originating Supplier. If you are entitled to a refund arising from Program Goods or Services sourced from an Originating Supplier, you may not accept cash, store credit, discounts or any other value from the Originating Supplier and agree not to request or receive any of the foregoing from an Originating Supplier. We must receive any and all refunds, and such refunds

shall be processed by us only as a credit to your Account after payment in respect of the applicable Credit Voucher is received by us. You may, however, with our advance written approval, accept exchanges in resolution of a dispute, so long as the Program Goods or Services exchanged are incorporated into the project associated with the Purchase under which the original purchase was made. We will not post any credit to your Account until we receive a Credit Voucher or the funds we advanced to Originating Supplier returned from the Originating Supplier. We do not assume any of your obligations to an Originating Supplier. The terms of any purchase order that you use in a purchase that we approve and forward to the Originating Purchaser shall not apply to us. We may, but are not obligated to, decline to pay an Originating Supplier for any purchase which is asserted to be erroneous, unauthorized or disputed. We may suspend all further use of your Account and Access Device(s) until all asserted errors and unauthorized or disputed purchases are resolved to our satisfaction. **Disputes will not result in any credit or adjustment to your account unless and until we receive payment from the Originating Supplier.**

**11) Your Obligation to Verify Purchases and Inspect Deliveries; Location of Materials.**

a) You shall review all Sales Documentation and amendments thereto provided to, from or on behalf of the Originating Supplier (whether by you or by us). You are responsible for any errors or misstatements with respect to quantities and description of Program Goods or Services, calculations of amounts due, computation of taxes, and terms and conditions which may govern your direct or indirect purchase of any Program Goods or Services. You are responsible to verify, inspect and accept or reject all deliveries within twenty (24) hours of receipt to timely reject any non-conforming deliveries. You shall notify us and the Originating Supplier immediately (and, in any event, within twenty (24) hours) of any rejected deliveries and provide the reason for such rejection.

b) **You shall provide us with proof of delivery and acceptance for each delivery subject to a Purchase within ten (10) days of the applicable Purchase Date. If satisfactory proof of delivery and acceptance is not received by Billd Exchange within such period, Billd Exchange may cancel the applicable Purchase Statement and do any of the following, in its sole discretion, to refund to Billd Exchange the full Purchase Amount: (i) initiate a charge to your Contractor Credit Card; (ii) initiate an ACH debit transaction against your Contractor Bank Account; or (iii) initiate an ACH debit transaction against the Originating Supplier's bank account.** If Billd Exchange elects to initiate an ACH debit transaction against the Originating Supplier's bank account, you shall be responsible for any amounts owing to Originating Supplier as a result. You will be solely liable for all charges, fees and costs associated with your Contractor Credit Card and/or your Contractor Bank Account and for all overcharges and/or overdrafts thereon (including any failed attempt to initiate an ACH entry), regardless of whether such overcharges and/or overdrafts (or such failed attempts) directly or indirectly result from the credit charges or ACH entries initiated by us. You agree to supply such additional written documentation with respect to the foregoing as we may request from time to time. For the avoidance of doubt, Billd Exchange will not initiate a charge to your Contractor Credit Card or initiate an ACH debit against your Contractor Bank Account except as authorized by the foregoing and other provisions of the Agreement or as otherwise authorized by you.

c) In addition, you shall obtain and provide to us upon request a proof of installation with respect to the applicable Program Goods or Services incorporated into the applicable construction project. Except as otherwise agreed by us in writing, all Program Goods or Services shall be delivered to the applicable project worksite, and you shall not move any Program Goods or Services to any other location without our prior written consent.

**12) Errors and Disputed Purchases.** You agree to promptly notify us of any errors, omissions, unauthorized Purchases and/or Purchases subject to an unresolved dispute with an Originating Supplier which appear on your Account, which notice shall be given to us via the Billd Portal and shall be submitted no later than the thirtieth (30th) day following the date of the relevant error, omission or Purchase first appeared on your Account, whichever occurs first. If you do not notify us of such error, omission or Purchase within such thirty (30) day period, the information we made available to you shall be considered accurate, authorized and undisputed. Disputes with an Originating Supplier do not relieve you of your responsibilities to us, and you remain responsible to pay for each Purchase despite any alleged error, omissions, unauthorized activity or dispute (including but not limited to the obligation to pay for each Purchase in full

by the Maturity Date (or, if applicable, the Modified Maturity Date)). Finance Charges will continue to accrue on errors, omissions, unauthorized Purchases and disputed Purchases until properly resolved by us.

**13) Billd Portal & Billd Website.**

a) We will make a variety of account-related functions available on the Billd Portal and/or our website, including allowing your Administrator and Users to: (i) submit Purchase Requests; (ii) appoint additional Users that may access the Billd Portal and/or our website and use Access Devices; and (iii) access Account information and complete various Purchases with respect to your Account. We may accept as authentic any instructions given to us using an Access Device assigned to any of your Administrator or Users. We are entitled to treat any Person using your Access Devices as authorized to act on your behalf, including but not limited to any Person that your Administrators or Users allow to access any Access Device.

b) Use of the Billd Portal and/or our website is subject to the additional Terms of Use and Privacy Policy posted on our website from time to time. You agree to our Terms of Use and Privacy Policy, as updated from time to time, and agree such Terms of Use and Privacy Policy are hereby incorporated by reference into the Agreement, provided that to the extent of any conflicts between the terms of the Agreement and such Terms of Use and Privacy Policy, the terms of the Agreement shall control.

c) We may monitor and/or record all communications and activity related to your Account in the Billd Portal and/or on our website, and we may require additional information and/or verification of all requested Purchases (for example, we may require written or other verification before we approve a Purchase Request). Our records will be final and conclusive in all questions concerning whether or not your Access Device(s) were used in connection with a particular Purchase.

**14) Your Additional Obligations and Responsibilities; Contractor Personnel; No Originating Supplier Affiliations.**

a) In addition to all of your other obligations under the Agreement, you are responsible for:

i) The accuracy of each Purchase Request submitted by your Administrator and Users and the accuracy of each Purchase Statement approved and entered into by us;

ii) Your lien rights and/or bond claim rights for each Purchase;

iii) Ensuring that the Program Goods or Services purchased are used and incorporated into the specific project approved by us and not any other project;

iv) Your Administrator's and Users' compliance with all usage instructions posted on our website;

v) Following the instructions and procedures we establish for use of Access Devices from time to time, including the requirements that (A) Access Devices may not be used for purchases unless they are properly chargeable to an approved Account and Purchase, (B) Access Devices may not be used to make purchases for general business purposes or for materials that are not properly incorporated into the relevant construction project (for example, for tools that are not chargeable to that specific project), (C) Access Devices may not be used to purchase motor vehicles, boats or other similar property, and (D) you discontinue usage of all Access Devices when your account is closed or suspended, or earlier if we so request, and (E) assuring that your Account and your Access Devices are not used for any illegal purpose or in violation of your obligations to any third party;

vi) Monitoring your credit limits and balances and controlling use of your Access Devices to assure that credit limits are not exceeded;

vii) Monitoring usage of your Account and Access Devices by using the Billd Portal and promptly reviewing your monthly statements when made available;

viii) Not intentionally creating a credit balance on your Account or with respect to any Purchase;

ix) Submitting annual financial statements and other financial information as we request from time to time, including information regarding the status and stage of completion of each project subject of a Purchase;

x) Allowing us to conduct audits and on-site inspections as we consider necessary to verify compliance with the Agreement, any Purchase status and the coverage of the lien rights and/or bond claim rights for each Purchase; and

xi) All acts and omissions of your Contractor Personnel.

b) You agree we are entitled, without inquiry or investigation, to assume that the actions and omissions of your Contractor Personnel are appropriate and authorized by you. You are strongly advised to establish and maintain policies and procedures and accounting and auditing controls that will prevent (or at least allow the early detection of) fraud or other unauthorized activity by your Contractor Personnel. As between you and us, you accept sole responsibility for losses due to the acts or omissions of your Contractor Personnel. Your Administrator must immediately discontinue the access rights of any of your Contractor Personnel that leave your employment or service or are otherwise no longer permitted to use an Access Device.

c) As of the Effective Date and each Purchase Date, you represent, warrant and covenant that, except to the extent disclosed in advance in writing and approved by Billd Exchange, neither you nor any of your Related Parties has any relationship with or ownership or other financial interest in any Originating Supplier from which you are purchasing any Program Goods or Services (other than any commercial, arms-length relationship pursuant to which you or any of your Related Parties purchases goods or services in the ordinary course of business from such Originating Supplier).

**15) Title and Risk of Loss.**

a) To the extent required for purposes of our supplier's, mechanic's, materialman's and/or other similar lien rights or bond claims, you agree that title to all Program Goods or Services shall be deemed to pass from Originating Supplier to us immediately prior to you taking title to such Program Goods or Services in accordance with the Sales Documentation or as provided by applicable law. Notwithstanding the foregoing, unless we agree otherwise, you agree and shall require the Originating Supplier to ship and deliver all Program Goods or Services as "FOB Destination." We shall not be deemed to have accepted title to any Program Goods or Service unless you have accepted such Program Goods or Services.

b) Notwithstanding anything in the Agreement to the contrary, in no event will we bear any liability or risk of loss in connection with any Program Goods or Services or the shipment, transportation and/or delivery thereof, all of which liability and risks shall be borne by you and/or the Originating Supplier in accordance with the Sales Documentation or as provided by applicable law. We will not be responsible for any shipping, transportation, delivery or insurance charges.

**16) Our Disclaimer of Warranties and Your Exclusive Recourse; Limitations of Our Liability.**

a) **Disclaimer of Warranties; Exclusive Recourse.** Billd Exchange does *NOT* provide any warranty for the Program Goods or Services you purchase. You agree that all Program Goods or Services are sold AS-IS, WHERE-IS and WITH ALL FAULTS. Notwithstanding such limitation, we agree to pass through to you any transferable original manufacturer's or original service provider's standard warranties, or any warranties from the Originating Supplier, with respect to Program Goods or Services purchased hereunder, but only to the extent such warranties are available and we are permitted to transfer them to you without any additional consideration from

us. YOU AND ANY PERSON CLAIMING THROUGH YOU SHALL SEEK RECOURSE EXCLUSIVELY FROM ORIGINAL MANUFACTURERS, ORIGINAL SERVICE PROVIDERS OR ORIGINATING SUPPLIERS IN CONNECTION WITH ANY DEFECTS IN OR FAILURES OF ANY GOODS OR SERVICES, AND THIS SHALL BE THE EXCLUSIVE RECOURSE OF YOU AND ANY PERSON CLAIMING THROUGH YOU FOR DEFECTIVE GOODS OR SERVICES, WHETHER THE CLAIM SHALL SOUND IN CONTRACT, TORT, WARRANTY, INDEMNITY, STRICT LIABILITY, PURSUANT TO STATUTE, FOR NEGLIGENCE OR OTHERWISE. WE EXCLUDE AND DISCLAIM ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. You shall pass these terms to subsequent buyers and users of Program Goods or Services.

b) **Limitations of Liability.** You waive all claims against us for any loss, claim, demand, penalty, action, delay, cost or expense (including reasonable attorneys' fees) of any kind unless you provide us with written notice of the occurrence that gave rise to the alleged liability within thirty (30) days of when you knew or should have known of the occurrence. IN NO EVENT, WHETHER IN CONTRACT, TORT, WARRANTY, INDEMNITY, STRICT LIABILITY, PURSUANT TO STATUTE, FOR NEGLIGENCE OR OTHERWISE, WHETHER ARISING DIRECTLY OR INDIRECTLY OUT OF OUR PERFORMANCE OR BREACH OF THE AGREEMENT OR OTHERWISE, SHALL WE BE LIABLE FOR (A) ANY INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL, CONSEQUENTIAL OR SIMILAR DAMAGES SUCH AS LOSS OF USE, LOST PROFITS, ATTORNEYS' FEES OR DELAY DAMAGES, EVEN IF SUCH DAMAGES WERE FORESEEABLE OR CAUSED BY OUR BREACH OF THE AGREEMENT, (B) ANY CLAIM THAT PROPERLY IS A CLAIM AGAINST THE ORIGINAL MANUFACTURER, ORIGINAL SERVICE PROVIDER OR ORIGINATING SUPPLIER OR (C) ANY AMOUNT EXCEEDING THE AMOUNT OF FINANCE CHARGES AND FEES PAID TO BILLD EXCHANGE BY CONTRACTOR FOR THE SPECIFIC PROGRAM GOODS OR SERVICES FURNISHED TO CONTRACTOR WHICH ARE THE SUBJECT OF SUCH CLAIMS(S). All claims must be brought within one (1) year of accrual of a cause of action. The preceding limitations of liability apply regardless of whether any limited remedy fails of its essential purpose.

**17) Your Indemnification Obligations.** To the fullest extent permitted by law, you shall absolutely and unconditionally indemnify, defend, protect and hold us and our respective officers, directors, members, managers, employees, agents, consultants, contractors, affiliates, successors and assigns harmless for, from and against any and all claims, losses, liabilities, damages, fees, expenses, penalties, fines, causes of action and costs whatsoever (including reasonable attorneys' fees, arbitrators' fees and court and/or arbitration costs) (collectively, "***Indemnifiable Claims***") arising from or in any way relating to: (i) your breach or non-fulfillment, or the breach or non-fulfillment of any of your Contractor Personnel, of any of your obligations, representations, warranties, covenants or agreements in the Agreement; (ii) your negligent or more culpable acts or omissions (including any recklessness or willful misconduct), or the negligent or more culpable acts or omissions of your Contractor Personnel (including any recklessness or willful misconduct); (iii) any bodily injury, death of any individual or damage to real or tangible personal property caused by the acts or omissions of you or your Contractor Personnel or by the Program Goods or Services purchased on your Account; (iv) any defects in, or failures of, the Program Goods or Services you purchased, whether such claims are brought by you, your Contractor Personnel, the original manufacturer, original service provider, the Originating Supplier, any subsequent purchaser, any user of Program Goods or Services or any other Person. Notwithstanding any provision to the contrary contained in the Agreement, your obligations and indemnity set forth in this Section 17 shall survive the closure of your Account, the closure and/or repayment of any amounts owed to us and/or the termination of the Agreement.

**18) Contacting You.** We may contact you from time to time in any manner not prohibited by law. For example, we may: (a) contact your Contractor Personnel by mail, telephone, email, fax, recorded message, text message or personal visit; (b) use an automated dialing or similar device; (c) contact your Contractor Personnel at home, at work and/or on mobile phones; (d) make contact at any time, including weekends and holidays, and with any frequency; (e) leave pre-recorded and other messages on answering machines/services and with others; and (f) identify ourselves and our relationship with you even if others might hear or read it. Our contacts shall not be considered unsolicited. We may monitor and record all communications we have with you or any of your Contractor Personnel. Unless prohibited by

law, we may modify or suppress caller ID and similar services and identify our self on these services in any manner we choose. You also agree that we may contact you via notice provided on our website and/or in the Billd Portal. You agree to notify us of any change in your contact information or address at least ten (10) days before it changes. Paper notices that we send will be considered given when we include the notice on or with any statement or when we deposit the notice in the United States mail addressed to the most recent address we have for you.

19) **Contractor Information; Communications with Others.** You agree to promptly provide us with any information, financial statements, bank statements, tax returns and/or other documents that we may request from you in connection with our underwriting, establishing, maintaining, servicing and collecting on your Account and the trade credit extended under the Agreement. You agree we may share this information and/or these documents with any current or prospective Originating Supplier or other supplier of goods or services, any general contractor, subcontractor or other contractors, any property owner, developer or manager or any credit bureau or reporting agency, and we may request and receive any such information and/or documents from any of the foregoing (including your credit details and payment history with any of the foregoing). We may report information about your Account to credit bureaus or other reporting agencies and may respond to requests from others about our Purchases and experiences with you. Late payments, missed payments or other Events of Defaults on your Account may be reflected on your credit report. You authorize us to run credit reports and/or background checks against you and any of your Contractor Personnel to the extent reasonably necessary for establishing, maintaining and collecting on your Account. If you wish to dispute credit information we are reporting about you, you may notify us at 2700 W. Anderson Lane, Suite 206, Austin, TX 78757. We may also make inquiries of third parties in connection with establishing, maintaining and collecting on your Account. You authorize third parties to release information about you and your Contractor Personnel to us.

20) **Important Notice about Changes to the Agreement.** We may unilaterally change the terms of the Agreement at any time. This includes, but is not limited to, the Program Defined Terms and the Purchase Statement Form, which may be updated and posted in the Billd Portal and/or on our website, from time to time, and deemed effective upon such posting. We will give you notice of any other changes as required by law. Changes will be effective on the date we specify and without the necessity of any additional consent from you. Use of your Account is not necessary for a change in terms to be effective. Changed terms will apply to all outstanding balances and future Purchases. **If you disagree with a change, you should stop using your Account and pay off its outstanding balance.**

21) **Confidentiality.**

a) From time to time during the Term, we may disclose or make available to you information about our business affairs, the Program, our intellectual property, trade secrets and other sensitive or proprietary and confidential information, whether orally or in written, electronic, or other form or media, and whether or not marked, designated or otherwise identified as "confidential" ("***Confidential Information***").You agree to keep all Confidential Information strictly confidential and not disclose Confidential Information to any other Person or otherwise use Confidential Information for any purpose other than as contemplated by the Agreement, in each case, without our prior written consent. You shall be responsible for any breach of such obligations by any of your Contractor Personnel. The confidentiality obligations of this Section 21 shall survive termination of the Agreement.

b) Notwithstanding the foregoing, such confidentiality obligation shall not apply to information that, at the time of disclosure and as established by documentary evidence, (i) is or becomes generally available to and known by the public other than as a result of, directly or indirectly, your breach or any breach of your Contractor Personnel, (ii) is or becomes available to you on a non-confidential basis from a third-party source, provided that such third party is not and was not prohibited from disclosing such Confidential Information, (iii) was known by you or in your possession before being disclosed by us, or (iv) was or is independently developed by you without reference to or use of, in whole or in part, any Confidential Information. In addition, you shall be permitted to disclose Confidential Information (x) to your Contractor Personnel who need to know such information for purposes of the Agreement (provided such Contractor Personnel are subject to substantially similar confidentiality obligations) and/or (y) pursuant to applicable federal, state, or local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction, provided that you have first provided notice to us of such

requirement so we may seek, at our cost and expense, a protective order or other remedy and that you shall provide us reasonable assistance, at our sole cost and expense, in opposing such disclosure or seeking a protective order or other limitations on disclosure.

**22) Assignments; Our Third-Party Beneficiaries.**

a) We may transfer any or all of our rights under the Agreement to another Person, including all or part of the balance due on your Account and/or any Purchase, without your approval. You may not transfer your rights or obligations under the Agreement in any manner. You may *NOT* transfer, assign or in any way waive your lien rights and/or bond claim rights regarding Purchases without our advance consent.

b) You acknowledge and agree that we have entered into and will enter into certain financing arrangements for the funds required to be advanced in connection with each Purchase from certain third-party lenders and investors (collectively, "***Billd Third Party Beneficiaries***"). You agree that all Billd Third Party Beneficiaries shall be deemed third party beneficiaries under all applicable laws and shall have the right to enforce the terms of the Agreement against you and collect all sums due and owing to Billd Exchange pursuant to the Agreement.

**23) Governing Law and Venue.** The Agreement shall become effective on the Effective Date that we have accepted and agreed to this MCA. The interpretation and enforcement of the Agreement shall be governed by the laws of the State of Arizona, regardless of conflict of law principles. Subject to the arbitration provisions below, any action against us arising out of the Agreement shall be commenced and maintained exclusively in the state or federal courts located in the State of Arizona. You consent to the non-exclusive jurisdiction of the federal and state courts located in the State of Arizona in any action or proceeding relating to the Agreement.

**24) Waiver of Jury Trial.** EACH PARTY TO THE AGREEMENT WAIVES ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THE AGREEMENT OR ANY DEALINGS BETWEEN THE PARTIES TO THE AGREEMENT RELATING TO THE SUBJECT MATTER OF THE PURCHASES CONTEMPLATED BY THE AGREEMENT OR ANY RELATED PURCHASES. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THE AGREEMENT. IN THE EVENT OF LITIGATION, THE AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**25) Mandatory Binding Arbitration**. Notwithstanding the foregoing, on our election, you agree that any dispute, controversy or claim between you and us arising out of or in any way related to the Agreement, including but not limited to contract claims, tort claims, breach of duty claims and all other common law and statutory claims between us, shall be fully and finally determined by submission of the dispute to mandatory binding arbitration pursuant to the Commercial Rules of the American Arbitration Association in front of one (1) arbitrator selected pursuant to such Commercial Rules. Each party to the Agreement further agrees with respect to any proceeding initiated pursuant to this provision: (a) any claim or claims a party may bring pursuant to this provision may not be consolidated with the claim(s) of any other Person not identified herein, and each party waives any right to the consolidation of claims; (b) no party may initiate a proceeding in a representative capacity or as a putative class action; (c) any hearing conducted shall be held in Phoenix, Arizona or another city where we have a principal office, or in such place as we may otherwise agree in writing; (d) the arbitrator(s) shall have no authority to award punitive or exemplary damages as part of any award; and (e) the non-prevailing party will be responsible for the costs of any such proceeding, including attorneys' fees, forum and arbitrator fees.

**26) Miscellaneous.**

a) The Agreement, including this MCA, the Program Defined Terms, each Purchase Statement (including each Modified Purchase Statement, if applicable) and any additional terms and conditions referred to herein and therein or as posted on the Billd Portal and/or on our website, constitute the entire agreement between you and us regarding the subject matter of the Agreement.

b) The Agreement cannot be amended or modified, in any respect, except with our prior written consent or as provided in Section 20 of this MCA.

c) The Agreement shall be binding upon and for the benefit of the parties hereto and their respective successors and assigns, subject to Section 22 of this MCA.

d) If any provision of the Agreement is held to be invalid or unenforceable, that invalidity or unenforceability shall not affect any other term of the Agreement.

e) It is the intention of the parties hereto to comply with applicable usury laws. If it should be determined that any usury law is applicable, the parties agree that (i) all Finance Charges, fees, accruals and calculations shall be limited as required by law, (ii) nothing in the Agreement is intended to create a contract for payment of Finance Charges at a rate in excess of the maximum rate permitted by applicable law, and (iii) your obligations shall be reduced to so that you are not obligated for more than the maximum amount permitted by applicable law. Any sums collected in excess of the maximum extent permitted by law shall be credited to the payment of other sums due.

f) No course of dealing shall operate as a waiver of any terms of the Agreement. We may delay in exercising our rights without waiving them. No waiver by us will be effective unless signed by one of our authorized officers. Any waiver will not affect our right to enforce our rights regarding later Purchases and will not modify the Agreement on a going forward basis.

g) We may use such agents, contractors, service providers, networks and other third parties as we deem appropriate.

h) We may maintain a copy of the Agreement and any and all other documentation related to your Account in electronic form and we may destroy the originals. You agree that a copy produced from our electronic form or by any other reliable means (for example, photocopy, .pdf, scanned image or facsimile) shall be considered equivalent to an original and you waive any objection to our use of such copy.

i) You agree that we may, at our discretion, disclose your financial information, any information relating to a project subject of a Purchase or the parties involved in such project and all other non-public personal information about you and your Contractor Personnel that we may obtain in connection with your Account to any Originating Supplier, to any government agency or clerk for purposes of our lien rights and/or bond claims, and/or to any of our Associated Persons, partners or other entities associated with our underwriting, establishing, maintaining, servicing and collecting on your Account and the trade credit extended under the Agreement.

**27) Personal Guaranty.** To secure your payment and other obligations under the Agreement, we may require, in our sole discretion, that each of your shareholders, members, partners or other principal owners execute and deliver a Personal Guaranty in favor of Billd Exchange, an example of which is attached as Exhibit C, prior to establishing your Account or authorizing and accepting any Purchase for your Account.

**28) Contractor Binding Authority.** The individual signing below on behalf of Contractor is: (a) certifying that the Agreement has been authorized by all necessary corporate or similar actions on behalf of Contractor and that the Agreement is not in conflict with the articles, bylaws, operating or partnership agreement or similar governing documents of Contractor; (b) certifying that he or she is authorized to sign on behalf of and to contractually obligate Contractor; and (c) certifying that Contractor's legal name and jurisdiction of incorporation, organization or formation is as set forth below and that Contractor is a validly existing business entity that is in good standing in such jurisdiction and any other jurisdiction where it may be required by applicable to register to do business.

**29) Electronic Signatures.** The version of this Agreement retained electronically by us (which may be executed in counterpart and with Electronic Signatures) will constitute the original. Each party agrees that the Electronic Signatures, whether digital or encrypted, of the parties included in the Agreement are intended to authenticate such writing(s) and to have the same force and effect as manual signatures.

*[Signature page follows.]*

IN WITNESS WHEREOF, the duly authorized representatives of the parties have executed this MCA electronically as of the Effective Date set forth below.

By signing this MCA electronically, Contractor certifies that the information Contractor provided is true, correct and complete, that the below-named individual is authorized to sign on behalf of and contractually obligate Contractor to this MCA and that all of the obligations of Contractor with respect to this MCA, including the incurrence of the trade credit as contemplated hereby, have been duly authorized by all requisite action on the part of Contractor.

**CONTRACTOR**:

SHERWOOD CONSTRUCTION, INC.,
a Florida corporation

DocuSigned by:

By: Martin Flynn (signature) *(UNDER SEAL)*

780CF1A5AC30431...

Name: MartIn Flynn

*Contractor Contact Information:*

Mailing Address: 5526 Hansel Ave.
Orlando, FL 32809

Phone: (321) 418-8841
Email: martyf@sherwoodconstruction.net

TIERED CAPITAL, INC.,
a Florida corporation

DocuSigned by:

By: Martin Flynn (signature) *(UNDER SEAL)*

780CF1A5AC30431...

Name: MartIn Flynn

*Contractor Contact Information:*

Mailing Address: 5526 Hansel Ave.
Orlando, FL 32809

Phone: (321) 418-8841
Email: martyf@sherwoodconstruction.net

**Accepted and agreed, as of September 21, 2023 (the "*Effective Date*"), by:**

**BILLD EXCHANGE**:

BILLD EXCHANGE, LLC

By: (signature)
Name: Jesse Weissburg
Title: SVP Business Development

Case 25-00399-jw Doc 18-2 Filed 04/01/26 Page 17 of 23

## <u>Exhibit A</u>

**Program Defined Terms**

https://billd.com/program-defined-terms/

**Exhibit B**

**Form of Purchase Statement**

(See attached)

billd

## PURCHASE STATEMENT

This PURCHASE STATEMENT is being executed and delivered pursuant to Contractor's Master Contractor Agreement (the "***MCA***") with BILLD EXCHANGE, LLC, a Delaware limited liability company ("***Billd Exchange***").

By signing below, (a) Contractor agrees to purchase the Program Goods or Services described below (and in the Originating Supplier's invoice or quote attached hereto as Exhibit A) on trade credit from Billd Exchange, and (b) Contractor confirms this Purchase Statement and the incurrence of trade credit by Contractor has been duly authorized and that all information is true, correct and complete. Contractor promises to pay to Billd Exchange the Purchase Amount and Finance Charge as set forth below, on the terms, conditions and provisions set forth below and in the Agreement (as defined in the MCA), which terms, conditions and provisions are incorporated by reference herein. Capitalized terms used herein and not defined herein shall have the meanings set forth in the Agreement, including the Program Defined Terms incorporated therein.

This Purchase Statement supersedes and replaces any other Purchase Statement, if any, that has been previously executed for the specific project identified below. Contractor acknowledges and agrees that Billd Exchange may amend or terminate this Purchase Statement if the Originating Supplier notifies Billd Exchange of any discrepancy with or objection to the terms set forth below. In addition, in the event Billd Exchange determines that the Originating Supplier of the Program Goods or Services purchased hereunder is an eligible Partner Supplier (and not a Merchant Supplier), the Purchase Fee included in the Purchase Amount applicable to such Purchase may be reduced, depending on the terms available for such Purchase from such Partner Supplier, and if so, Billd Exchange will adjust the amounts set forth below accordingly in the Billd Portal.

Project Name: ____________________________
Project Address: ____________________________

Purchase Amount: ____________________________
Weekly Payment Amount: ____________________________
Term: 120 days
Maturity Date: ____________________________
Purchase Date: ____________________________
Program Goods or Services: ____________________________

Contractor agrees to make seventeen (17) weekly payments. On the Maturity Date, Contractor will make a final payment of the full Purchase Amount. The daily Contract Rate used to calculate the Finance Charge for this Purchase is _________ per day

**Contractor Information:**

Contractor Legal Name: ___________________________
Phone Number: ___________________________
E-mail: ___________________________

* * * * *

This Purchase Statement is being executed and delivered electronically to authenticate such writing and shall have the same force and effect as if manually signed.

**CONTRACTOR**: Legal Name:______________________

By: ______________________- in cursive
*This agreement was digitally signed on (current date)*
Name: ______________________

***ACCEPTED AND AGREED, AS OF*** **_____________________.**

**BILLD EXCHANGE**: BILLD EXCHANGE, LLC

By: ______________________
Name: ______________________
Title: ______________________

Exhibit A

Originating Supplier Invoice

*(see attached)*

**<u>Exhibit C</u>**

**Personal Guaranty**

(See attached)

billd.

## PERSONAL GUARANTY

This PERSONAL GUARANTY (this "***Guaranty***") is being executed and delivered by the undersigned ("***Guarantor***") in favor of BILLD EXCHANGE, LLC, a Delaware limited liability company, and its successors, assigns and creditors ("***Billd Exchange***"), in connection with that certain Master Contractor Agreement, dated effective as of September 21, 2023 (the "***MCA***"), by and among Billd Exchange, on the one hand, and SHERWOOD CONSTRUCTION, INC. and. TIERED CAPITAL, INC. (collectively "***Contractor***"), on the other hand, which are business entities that have purchased and desire to purchase Program Goods or Services from Billd Exchange pursuant to the Agreement (as defined in the MCA). Capitalized terms used herein and not otherwise defined herein have the meanings provided therefor in the Agreement. Guarantor is a shareholder, member, partner or other principal owner of each of the Contractor entities identified above and is required to execute and deliver this Guaranty before Billd Exchange will accept and approve the Agreement or any Purchase with Contractor thereunder. Accordingly, Guarantor acknowledges and agrees that he, she or it will receive substantial benefits in the event Billd Exchange accepts and approves the Agreement or any such Purchase.

NOW, THEREFORE, as a primary inducement to Billd Exchange to accept and approve the Agreement and, from time to time, any Purchase with Contractor thereunder, Guarantor, jointly and severally, guarantees the continuing full and faithful performance and payment by Contractor of each of its duties and obligations pursuant to the Agreement, as the same may now exist or as the same may be amended from time to time, and whether or not Guarantor has received notice of any amendment. This Guaranty is an irrevocable, continuing, absolute and unconditional Guaranty of payment and performance. Billd Exchange may proceed directly against Guarantor without first exhausting its remedies against Contractor or any other person or entity or any security held by Billd Exchange. Guarantor shall remain obligated notwithstanding any discharge of Contractor in a bankruptcy or similar proceeding or any other circumstance whatsoever. This Guaranty shall not be affected by any release, extension, modification or other disposition of Contractor's obligations, by the validity or enforceability of those obligations or the Agreement, by the validity, enforceability, or perfection of any lien or bond claim, or by any other fact or circumstance which might otherwise constitute a defense to the obligations of Guarantor. Guarantor waives any and all defenses including, without limitation, suretyship defenses, that it may now or hereafter have related to the foregoing.

By signing below, Guarantor: (1) agrees that Billd Exchange may, now and from time to time in the future, obtain a personal credit report on Guarantor for purposes of evaluating current and future dealings with Contractor and/or any guarantees thereof and for later purposes related to such dealings and such guarantees (such as reviewing, updating, renewing and taking collection action with regard thereto); (2) authorizes Billd Exchange to contact any source necessary to verify Guarantor's creditworthiness and authorizes any such source to provide any information that Billd Exchange may request; and (3) consents to and ratifies Contractor's application with Billd Exchange and Contractor's execution, delivery and performance in all respects of the Agreement.

This Guaranty shall be governed by, and interpreted and enforced in accordance with, the laws of the State of Arizona, regardless of conflict of law principles.

DocuSigned by:

By: Martin Flynn (UNDER SEAL)

780CF1A5AC30431...

| | |
|---|---|
| Guarantor Name: | Martin Flynn |
| Mailing Address: | 14556 St. Georges Hill Dr. |
| | Orlando, FL 19025 |
| Phone: | (321) 418-8841 |
| Email: | martyf@sherwoodconstruction.net |