**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| Canaveral Crossroads, LLC and | ) | Case No. 6:26-bk-05426-GER |
| Sherwood Construction, Inc., | ) | Case No. 6:26-bk-05428-GER |
| | ) | |
| Debtors. | ) | Jointly Administered under |
| | ) | Case No. 6:26-bk-05426-GER |

**CANAVERAL CROSSROADS, LLC'S MEMORANDUM IN RESPONSE TO THE ORDER TO SHOW CAUSE (DOC. 16): THIS COURT SHOULD NOT ABSTAIN FROM OR REMAND THE REMOVED FORECLOSURE AND ASSOCIATION ACTIONS**

The two removed actions ask the questions this chapter 11 case exists to answer. The Foreclosure Action asks who holds what lien on the resort property Canaveral Crossroads must keep to reorganize, and in what order. The Association Action asks whether Canaveral Crossroads owes the two associations anything, and whether PEDIXON, LLC holds a valid lien on the common property. After this court entered its order to show cause, both associations and PEDIXON filed proofs of claim in this case on those same questions, and Canaveral Crossroads objected to PEDIXON's claim. The answers now run through the claims-allowance process, which belongs to this court. Remand would send two stayed cases to a state court that cannot act in them without this court's leave, and this court would still have to decide the same claims. This court should keep both actions.

**The associations and PEDIXON filed proofs of claim here after the court entered its order to show cause.**

On July 20, 2026, Horton S. Johnson, Jetton Investments, Inc., and Cape Crossing Vacation Rentals, LLC filed an involuntary chapter 7 petition against Canaveral Crossroads. (Doc. 1). On August 13, 2026, Canaveral Crossroads removed the Foreclosure Action and the Association Action from the Circuit Court for Brevard County. (Docs. 8, 9). On September 8, 2026, this court entered the order for relief and converted the case to chapter 11. (Doc. 15).

In July 2025, Paul Rene, Jr. sued to foreclose a mortgage recorded at Official Records Book 8176, Page 930, of the Public Records of Brevard County, alleging $1,468,484.37 in unpaid principal. (Doc. 8 ¶ 2). Besides Canaveral Crossroads, Mr. Rene named the holders of other interests in the property: Homemakers Real Estate LLC, IMQA Investments, Incorporated, Parke Financial LP, Cherry Village GP LLC, Mr. Johnson, the trustees of the Ponson trust, Cape Crossing Condominium Association, Inc., and Cape Crossing Resort Management, Inc. (Doc. 8 at 1). The state court entered no judgment and set no trial. (Doc. 8, Ex. A). Canaveral Crossroads designated the action core and consented to final orders. (Doc. 8 ¶¶ 9–10). The Plan classifies Mr. Rene's claim in Class 1 and provides for its payment. (Doc. 37).

On April 1, 2025, Cape Crossing Townhomes Homeowners Association, Inc. and Cape Crossing Condominium Association, Inc. sued Canaveral

Crossroads as developer, together with Martin C. Flynn, Jr., Mr. Johnson, and PEDIXON. (Doc. 9 ¶¶ 1–2). The associations' first amended complaint pleads breach of fiduciary duty, conspiracy, and aiding and abetting, and seeks a declaration on the validity of PEDIXON's lien on the common property. (Doc. 20 at 2). The action was in discovery when Canaveral Crossroads removed it, and no trial was set. (Doc. 9, Ex. A). Canaveral Crossroads designated the claims non-core, except as they bear on the allowance of claims against the estate, which it designated core. (Doc. 9 ¶ 10).

On September 10, 2026, this court ordered Canaveral Crossroads to show cause why the court should not abstain from and remand both actions. (Doc. 16 at 3). The court found both actions within its related-to jurisdiction and found that they "strictly involve matters of state law that do not need to be litigated in this Court." (Doc. 16 at 2). The next day, the associations filed a response supporting permissive abstention and equitable remand, and a statement refusing consent to final orders. (Docs. 20, 21). The associations expressly declined to seek mandatory abstention. (Doc. 20 at 2).

On September 25, 2026, both associations filed proofs of claim in this case. The Townhomes Association rests its claim on "Breach of Fiduciary duty and Negligence see. 05−2025−CA−22944," which is the Association Action itself. (Claim 4-1 at 2). The Condominium Association rests its claim on its construction-

defect action against Canaveral Crossroads, Case No. 05-2026-CA-035316. (Claim 3-1 at 2). On September 28, 2026, PEDIXON filed a $500,000 secured claim on a mortgage recorded at Official Records Book 9731, Page 1341. (Claim 13-1 at 2). The associations seek to invalidate that mortgage and the lien PEDIXON placed on the common property through it. The Plan treats PEDIXON's claim as disputed in full, and Canaveral Crossroads objected to it. (Docs. 37, 66). After the clerk overruled that objection for its form of service, Canaveral Crossroads refiled it with corrected service on October 12, 2026. (Doc. 69).

**1. Abstention is the exception, and nothing in this record makes it the rule.**

A federal court's duty to decide a case within its jurisdiction is the starting point. "It is axiomatic . . . that 'abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). Abstention "rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Id.* (quoting *Colorado River*, 424 U.S. at 817). Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821)). The Eleventh Circuit holds that "[o]nly the clearest of justifications merits abstention." *Tokyo Gwinnett, LLC*

*v. Gwinnett Cnty.*, 940 F.3d 1254, 1267 (11th Cir. 2019) (quoting *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013)).

The bankruptcy abstention statute carries the same presumption. "It is now generally accepted that both abstention provisions should be narrowly construed and the abstention should be exercised sparingly and cautiously." *In re Hillsborough Holdings Corp.*, 123 B.R. 1004, 1010 (Bankr. M.D. Fla. 1990). Permissive abstention fits "only if the interests of the entities seeking abstention will be promoted by abstention and when they override the court's presumptive duty to hear and resolve matters which are properly before it." *Id.* at 1013. A bankruptcy court may raise permissive abstention on its own. *Carver v. Carver*, 954 F.2d 1573, 1579 (11th Cir. 1992). Even in a field as distinctly local as family law, the Eleventh Circuit held that the court "need not abstain" when the Bankruptcy Code's purposes are served and the court "would not be required to delve too deeply into family law." *Id.* at 1580.

Mandatory abstention is not before the court. Section 1334(c)(2) operates only "[u]pon timely motion of a party," and only in a proceeding "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." *28 U.S.C. § 1334(c)(2)*. No party moved, and the associations expressly declined to ask. (Doc. 20 at 2).

**2. The Foreclosure Action is a contest over liens on estate property, which only this court can resolve.**

Core proceedings include the "allowance or disallowance of claims against the estate," "determinations of the validity, extent, or priority of liens," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." *28 U.S.C. § 157(b)(2)(B), (K), (O)*. Congress barred any finding that a proceeding is non-core "solely on the basis that its resolution may be affected by State law." *28 U.S.C. § 157(b)(3)*. The Eleventh Circuit asks "whether [the matter] stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Wortley v. Bakst*, 844 F.3d 1313, 1319 (11th Cir. 2017). And "[t]he dependence of the merits of an action on state law . . . does not, in and of itself, mean that the action is non-core." *Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1349 (11th Cir. 1999).

The Foreclosure Action seeks to enforce a first mortgage against property of this estate and to fix the priority of every other interest in that property. It therefore asks this court to allow Mr. Rene's claim and to determine "the validity, extent, or priority of liens." *28 U.S.C. § 157(b)(2)(B), (K)*. Congress gave the district court, and this court by reference, "<u>exclusive jurisdiction</u> of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." *28 U.S.C. § 1334(e)(1)* (emphasis added).

Courts keep a removed action of this kind. *Redstone Advance, Inc. v. Big Daddy Guns, Inc. (In re Big Daddy Guns, Inc.)*, 651 B.R. 817, 823–24 (Bankr. N.D. Fla. 2023). There, competing creditors sued in state court over liens on property the debtors claimed, and the debtors removed the action. The court held the action core and refused both remand and abstention, because deciding the liens' validity and priority would "go to the heart of administration of Debtors' estates and will undoubtedly cross over into allowance or disallowance of claims against the estate." *Id.* at 825. The court concluded that the debtors filed in that court "to reorganize their financial affairs and deal with multiple creditors in one forum where all parties' rights may be considered and adjudicated," and that "[t]he court best suited to do so is this one." *Id.* at 829.

The same is true here. The non-debtor defendants in the Foreclosure Action hold junior or competing interests in the same property. Their priority is a claims contest, resolved in this court through the order of distribution. None of those interests can be enforced against estate property without this court's leave. *11 U.S.C. § 362(a)(3), (4)*. One of those defendants is itself a debtor before this court. *In re Homemakers Real Estate, LLC*, No. 6:25-bk-05570-GER (Bankr. M.D. Fla. 2025). Confirmation will fix Mr. Rene's treatment, and a state foreclosure judgment would either duplicate or contradict it. No party to the Foreclosure Action asked this court to remand it.

The Foreclosure Action also carries a settlement only this court can complete. Mr. Rene's mortgage encumbers, among other parcels, Condominium Units 100 and 506. Canaveral Crossroads conveyed Unit 506 to IMQA Investments, Incorporated by quitclaim deed in 2021, and Unit 100 by warranty deed in 2022, each for $10. (Official Records of Brevard County, Book 9222, Page 793, Ex. 1; Book 9606, Page 2323, Ex. 2). Mr. Rene recorded his lis pendens against Unit 100 when he filed the Foreclosure Action. (O.R. Book 10384, Page 880, Ex. 3). Those units were the subject of a dispute among Canaveral Crossroads, Jetton Investments, Inc., IMQA, and the Ponson trust, all parties to the Foreclosure Action. On January 12, 2026, those parties signed a settlement agreement that requires title to Unit 506 to pass to the Ponson trust. (O.R. Book 10662, Page 1513, Ex. 4). Two intervening acts prevented its consummation. In October 2025, Parke Financial LP, a company Kenneth Dixon owns, created a deed in lieu of foreclosure for both units, and it did so without consulting IMQA. (O.R. Book 10449, Page 419, Ex. 5). Both units secured a $300,000 Parke Financial loan to IMQA, and that loan was paid off on November 17, 2023, under the agreed settlement statement for the River Fly-In, LLC transaction, which Mr. Dixon signed for Parke Financial. (Settlement Statement, Nov. 17, 2023). Parke Financial took the units without right, and they will be recovered.[1] An unrecorded

1 Even before that payment, Parke Financial's own July 2022 mortgage on the two units set a $150,000 release price for Unit 100, half the loan, so the instrument contemplated that Parke Financial would hold one unit, not both. (O.R. Book 9606, Page 2325, ¶ 11). Parke Financial took both units anyway, in

deed to Langenhoff, LLC, a company owned by Alison Pitkanen's husband, also stands in the way. Before the petition, the Ponson trust moved in the state court to enforce the settlement, and in June 2026 it recorded a lis pendens on Unit 506 seeking specific performance. (Doc. 8, Ex. A; O.R. Book 10662, Page 1513, Ex. 4). The settlement documents remain in escrow with Pino Law Group. Releasing them now, without this court's approval, would risk an avoidable postpetition transfer of estate property. *11 U.S.C. § 549(a)*.

The estate also holds its own claims to these units. Canaveral Crossroads conveyed both units to IMQA for $10. (O.R. Book 9222, Page 793, Ex. 1; O.R. Book 9606, Page 2323, Ex. 2). Any claim to avoid and recover those transfers belongs to the estate, and a proceeding to determine it is core. *11 U.S.C. §§ 544(b), 548, 550*; *28 U.S.C. § 157(b)(2)(H)*. A state court deciding title to Units 100 and 506 among Mr. Rene, IMQA, Parke Financial, and the Ponson trust would be deciding title to property the estate may recover. Canaveral Crossroads can carry out the settlement, or recover the units, only with this court's approval, through the Plan or a motion to approve a compromise. *Fed. R. Bankr. P. 9019(a)*. Embroiling Canaveral Crossroads in a state-court action would waste estate resources, and without Canaveral Crossroads the dispute cannot be resolved.

---

contravention of its own arguable title. No officer of IMQA signed the deed in lieu. An attorney-in-fact signed it under an unrecorded power of attorney dated July 25, 2022, and the same person prepared the deed. (O.R. Book 10449, Page 419).

**3. The associations converted their action into a claims-allowance proceeding when they filed proofs of claim here.**

The associations chose this forum for their claims against Canaveral Crossroads. "[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990).

Last year the Eleventh Circuit applied that rule to a Florida homeowners' association dispute that began in state court and came before this court's Orlando Division. *Guan v. Ellingsworth Residential Cmty. Ass'n, Inc. (In re Ellingsworth Residential Cmty. Ass'n, Inc.)*, 125 F.4th 1365, 1382 (11th Cir. 2025). The homeowner argued that her state-law claims were non-core and belonged in state court. *Id.* The Eleventh Circuit disagreed: "By filing a proof of claim, Guan consented to the Court's equitable jurisdiction for all matters tied to the allowance or disallowance of her claim." *Id.* Her state-law claims became "integral to the resolution of her proof of claim," and "the adjudication of her proofs of claim was a core proceeding over which the Court had jurisdiction." *Id.*

The associations stand where the homeowner stood. The Townhomes Association's claim rests on the Association Action by case number. (Claim 4-1 at 2). The Condominium Association's claim rests on its construction-defect action. (Claim 3-1 at 2). This court must now decide whether Canaveral Crossroads owes

either association anything, because it must allow or disallow their claims. The lien count is the same. PEDIXON filed a secured claim on the lien the associations attack, and Canaveral Crossroads objected. (Claim 13-1; Doc. 66). Deciding that objection decides "the validity, extent, or priority" of the lien. *28 U.S.C. § 157(b)(2)(K)*.

The Association Action concerns only Canaveral Crossroads' property. At its center is the associations' demand that Canaveral Crossroads place its property in the master association. No document, recorded or unrecorded, requires that transfer. The recorded Master, Townhome, and Condominium Declarations impose no duty on Canaveral Crossroads to convey anything to any association. (O.R. Book 7626, Page 1609, Ex. 6; O.R. Book 7626, Page 1747, Ex. 7; O.R. Book 8418, Page 1832, Ex. 8). That demand is core in its own right. The Eleventh Circuit reads every category of core proceeding to carry "an overarching requirement that property of the estate under [11 U.S.C. § 541] be involved." *Toledo*, 170 F.3d at 1348. *Toledo* was non-core because the land belonged to a non-debtor partnership, not to the estate. *Id.* Here the land belongs to Canaveral Crossroads. A demand that the debtor convey its own property out of the estate asks this court to decide what the estate holds and whether it must give it up, a matter "concerning the administration of the estate" and "affecting the liquidation of the assets of the estate." *28 U.S.C. § 157(b)(2)(A), (O)*.

The associations' claims against Mr. Flynn and Mr. Johnson seek the same result by another route: that they vote their positions to make Canaveral Crossroads turn over its property to the master association without compensation. A transfer of that kind, made for no value, is one the Bankruptcy Code treats as constructively fraudulent. *11 U.S.C. § 548(a)(1)(B)*. Relief against the individual defendants would therefore operate on estate property. Those damages claims are not core, but they are related to this case, because their outcome "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . in any way impacts upon the handling and administration of the bankrupt estate." *Wortley*, 844 F.3d at 1318–19 (quoting *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990)). Mr. Johnson is also a petitioning creditor, the holder of two secured claims under the Plan, and the Plan's proposed holder of the reorganized debtor's equity. (Docs. 1, 37).

Whatever label attaches, only this court can decide the associations' demand. This court holds exclusive jurisdiction over the property. *28 U.S.C. § 1334(e)(1)*. The automatic stay bars the action against Canaveral Crossroads and "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." *11 U.S.C. § 362(a)(1), (3)*. The Plan provides for Canaveral Crossroads' continued ownership and use of that property as the core of

its reorganization, and confirmation will resolve the associations' demand. (Doc. 37).

**4. Every consideration that carries weight here favors keeping both actions.**

Courts in this district weigh fourteen considerations, and none controls. *Orlando Gateway Partners, LLC v. Good Gateway, LLC (In re Orlando Gateway Partners, LLC)*, 555 B.R. 848, 853 n.27 (Bankr. M.D. Fla. 2016) (quoting *E.S. Bankest, LLC v. United Beverage Fla., LLC (In re United Container LLC)*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002)). The considerations that matter on this record all point the same way.

**Administration of the estate**

The resort property is the reorganization. The Plan pays creditors from the revenue the property produces, and the Foreclosure Action seeks to sell it. (Doc. 37). The Association Action and the proofs of claim decide how much the estate owes and to whom. Remand would split one set of claims between two courts.

**State law**

Florida mortgage, lien, and fiduciary law is settled, and bankruptcy courts apply it every day. *Hillsborough* recounted the sponsor's explanation of the abstention provision: "Bankruptcy Courts have ruled on state law issues for over 100 years, and the abstention provision should not be invoked just because some of the issues are based on state law." 123 B.R. at 1010.

**Severance and inconsistent results**

The claims cannot be severed. The associations' lien count and Canaveral Crossroads' objection to PEDIXON's claim present one question about one mortgage. If a state court and this court each answered it, they could answer it differently, and the estate would be bound by both. *Big Daddy Guns* weighed duplication, waste, the effect on the estate, and the risk of inconsistent results against remand. 651 B.R. at 828.

**Forum shopping and jury trial**

No one shopped for this forum. Rule 9027 authorized the removals, and the associations came to this court with their own proofs of claim. Those claims also end any jury right on the matters that resolve them. *Langenkamp*, 498 U.S. at 45; *Ellingsworth*, 125 F.4th at 1382–83.

**Non-debtor parties**

The non-debtors weigh for retention. PEDIXON is a claimant here. Mr. Johnson is a petitioning creditor and the Plan's proposed equity holder. Homemakers is a debtor before this court. The junior interest holders in the Foreclosure Action can be bound to one ruling on priority only in the court that controls the property.

**Comity and prejudice**

Comity carries little weight where Congress gave this court exclusive jurisdiction over the property. *28 U.S.C. § 1334(e)(1)*. The associations suffer no

prejudice from litigating their claims in the court where they filed them. The estate would suffer from litigating the same claims twice.

The cases in which courts abstained show the contrast. In *Orlando Gateway*, the parties had consented to stay relief, state-court jury verdicts were on appeal, appellate briefing was nearly complete, and every party was before the state appellate court. 555 B.R. at 853. In *Ivankovich*, the disputed interests were not property of the estate. *In re Ivankovich Family LLC*, 668 B.R. 505, 512 (Bankr. S.D. Fla. 2025). In *Ohlsson*, the estate had no assets and the mortgage's validity would "not impact distribution." *Ohlsson v. U.S. Bank Nat'l Ass'n (In re Ohlsson)*, 565 F. Supp. 3d 1235, 1242 (M.D. Fla. 2021). In *McAnally*, the trustee had abandoned the property, the debtor had her discharge, and "there [was] nothing left to do." *McAnally v. Specialized Loan Servicing, LLC (In re McAnally)*, No. 8:19-ap-00546-RCT, 2020 WL 7333589, at *7 (Bankr. M.D. Fla. Nov. 30, 2020). Here no state court reached trial, the stay remains in force, the property is the estate's principal asset, and the claims are pending in this court.

**5. Remand would return two stayed cases to a court that cannot act in them.**

The automatic stay bars continuation of both actions against Canaveral Crossroads and any act to enforce a lien against estate property. *11 U.S.C. § 362(a)(1), (3), (4)*. The associations concede the point. They ask that remand be "without

prejudice to the Plaintiffs seeking any stay relief that may be required for further prosecution of claims against the Debtor." (Doc. 20 at 4). Remand therefore produces a state case that cannot move against Canaveral Crossroads, a stay-relief motion in this court, and claim objections in this court on the same facts.

The Eleventh Circuit affirmed the denial of stay relief in *Ellingsworth* because the bankruptcy court was "already familiar with the facts" of the state-law claims and "could have a trial on the merits before a state court could." 125 F.4th at 1381. This court is in the same position. It already has the claims, the claim objections, and the Plan before it.

**6. The associations' refusal to consent does not support abstention.**

The associations' statement refusing consent limits this court's power to enter final orders on non-core claims. (Doc. 21). It supplies no reason to abstain. Core matters need no consent: "If a matter is a core proceeding . . . then the bankruptcy court can enter final judgment absent consent by the parties." *Wortley*, 844 F.3d at 1318. The allowance of the associations' and PEDIXON's claims is core. For any non-core claim that remains, the statute supplies the path: this court hears it and submits proposed findings of fact and conclusions of law to the district court. *28 U.S.C. § 157(c)(1)*. A district court may even treat an unauthorized final order as such a report and review it de novo. *Wortley*, 844 F.3d at 1321.

The associations filed their refusal on September 11, 2026. Fourteen days later, they filed their proofs of claim in this court. (Doc. 21; Claims 3-1, 4-1). Canaveral Crossroads withdraws the statement of non-consent in its notice of removal and consents to entry of final orders in the Association Action. (Doc. 9 ¶ 11).

**7. The form of removal is a curable procedural defect.**

The order to show cause notes that Canaveral Crossroads should have filed each removal as an adversary proceeding, and that it did not file the state-court papers Local Rule 9027-1 calls for. (Doc. 16 at 3). Canaveral Crossroads acknowledges both. Neither defect goes to jurisdiction. The Eleventh Circuit treats a defect in the manner of removal as procedural and curable. *Kachkar v. Bank of Am. Corp. (In re Kachkar)*, 769 F. App'x 673, 677 n.1 (11th Cir. 2019) (citing *In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1410 n.2 (11th Cir. 1997)). The associations seek no relief on either ground. (Doc. 20 at 4). This court deferred the Local Rule 9027-1 filings pending further order. (Doc. 16 at 3 n.11). Canaveral Crossroads will pay the filing fees and docket the state-court papers in each adversary proceeding within seven days after the clerk opens it.

**Conclusion**

This court should decline to abstain, decline to remand, and keep both actions. It should direct the clerk to open an adversary proceeding for each

removed action and set the time for Canaveral Crossroads to file the state-court papers in each. Both actions belong where the claims, the liens, and the property already are.

Respectfully submitted this 12th day of October, 2026.

/s/ Christopher L. Smith
Christopher L. Smith, Esq.
Florida Bar No. 367461
Fromang & Smith, P.A.
4767 New Broad Street
Orlando, Florida 32814
Telephone: (407) 999-9739
chris@fromangsmith.com
Counsel for Canaveral Crossroads, LLC

## CERTIFICATE OF SERVICE

I certify that on October 12, 2026, I filed this memorandum with the clerk of court through the CM/ECF system, which served it electronically on every party registered for electronic notice in this case and in Case No. 6:26-bk-05428-GER.

/s/ Christopher L. Smith
Christopher L. Smith, Esq.
Florida Bar No. 367461
Fromang & Smith, P.A.
4767 New Broad Street
Orlando, Florida 32814
Telephone: (407) 999-9739
chris@fromangsmith.com
Counsel for Canaveral Crossroads, LLC