# EXHIBIT 6

**This instrument Prepared By:**
**Record & Return to:**
**CURTIS R. MOSLEY, ESQUIRE**
**MOSLEY & WALLIS, P.A.**
**1221 East New Haven Avenue**
**Melbourne, FL 32901**

**INDEX TO**

**DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS**

**FOR**

**CAPE CROSSING RESORT AND MARINA LIVING**


| | | PAGE |
|---|---|---|
| I. | DEFINITIONS | 2 |
| II. | PROPERTY SUBJECT TO THIS DECLARATION | 3 |
| III. | MEMBERSHIP AND VOTING RIGHTS OF THE ASSOCIATION | 3 |
| IV. | COVENANT FOR MAINTENANCE ASSESSMENTS | 4 |
| V. | USE RESTRICTIONS | 7 |
| VI | SURFACE WATER OR STORMWATER MANAGEMENT SYSTEM | 8 |
| VII. | GENERAL PROVISIONS | 9 |

# DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

## FOR

## CAPE CROSSING RESORT AND MARINA LIVING

**THIS DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS** is made this ___ day of May, 2016, by CANAVERAL CROSSROADS, LLC, a Florida limited liability company, hereinafter referred to as "Developer".

## WITNESSETH:

**WHEREAS,** the Developer owns those certain lands located in Brevard County, Florida described in Exhibit "A" attached hereto (hereinafter referred to as the **"Cape Crossing Resort and Marina Living"**) and intends to create thereon a planned community consisting of a condominium development, a townhome development, a clubhouse and swimming pool, and other amenities; and

**WHEREAS,** Developer desires to provide for the preservation of the values and amenities of the condominium and townhomes of Cape Crossing Resort and Marina Living and for the maintenance of the common areas and common facilities to be used by the owners and occupants of the community, and to this end, desires to subject the Cape Crossing Resort and Marina Living property to the covenants, restrictions, easements, charges and liens, hereinafter set forth, each and all of which is and are for the benefit of the Cape Crossing Resort and Marina Living lands and each Owner thereof; and

**WHEREAS,** Developer has deemed it desirable, for the efficient preservation of the values and amenities in Cape Crossing Resort and Marina Living, to create an Association to which should be delegated and assigned the powers of maintaining and administering the community properties and facilities; administering and enforcing the covenants and restrictions; collecting and disbursing the assessments and charges hereinafter created; and

**WHEREAS,** Developer will incorporate the Association referred to in Article I (as a non-profit corporation) under the Laws of the State of Florida for the purpose of exercising the functions aforesaid;

**NOW THEREFORE,** the Developer declares that the property is and shall be held, transferred, sold, conveyed and occupied subject to the covenants, restrictions, easements, charges and liens of the covenants, (sometimes referred to as "covenants and restrictions") herein set forth.

## ARTICLE I.
## DEFINITIONS

**SECTION 1.** The foregoing words when used in this Declaration (unless the context shall prohibit) shall have the following meanings:

a. "Association" shall mean and refer to CAPE CROSSING RESORT MANAGEMENT, INC., a Florida not for profit corporation, and its successors and assigns.

b. "Common Property" or "Common Properties" shall mean all real property (including the improvements thereto) owned by the Association for the common use and enjoyment of the Owners of condominium units and townhomes located on the Property.

c. "Condominium" shall mean Cape Crossing, A Condominium.

d. "Condominium Association" shall mean the Cape Crossing Condominium Association, Inc. which is the Condominium Association for the Condominium. The Condominium Association is responsible in whole or part for the operation and maintenance of the Condominium property except as provided herein.

e. "Condominium Property" shall mean and refer to the thirty-five (35) residential units and one (1) commercial unit proposed condominium as shown on the plot plan of the Property, as described in Exhibit "C" attached hereto and made a part hereof.

f. "Developer" shall mean Canaveral Crossroads, LLC, a Florida limited liability company.

g. "Homeowners Association" shall mean and refer to Cape Crossing Townhomes Homeowners Association, Inc., a Florida not-for-profit corporation, which is the homeowner's association of Cape Crossing Townhomes.

h. "Lot" shall mean and refer to any of lots 1-47, inclusive, as shown on the plot plan of the Property, as described in Exhibit "C" attached hereto and made a part hereof.

i. "Master Association" shall mean and refer to Cape Crossing Resort Management, Inc., a Florida not-for-profit corporation, which is the Master Association of Cape Crossing Resort and Marina Living.

j. "Owner" shall mean and refer to the record Owner, whether one or more persons or entities, of the fee simple title to any condominium unit or townhome lot in the Property. Member shall mean a Member of the Association only. Owner shall not mean or refer to any mortgagee unless and until such mortgagee has acquired title pursuant to foreclosure or any proceeding in lieu of foreclosure.

k. "Property" shall mean and refer to the real property located in Brevard County, Florida described in Exhibit "A" attached hereto and made a part hereof.

l. "Surface Water or Stormwater Management System" means a system which is designed and constructed or implemented to control discharges which are necessitated by rainfall events, incorporating methods to collect, convey, store, absorb, inhibit, treat, use or reuse water to prevent or reduce flooding, overdrainage, environmental degradation, and water pollution or otherwise affect the quantity and quality of discharges.

m. "Townhome Property" shall mean and refer to the forty-seven (47) lots as described in Exhibit "B" attached hereto and made a part hereof.

n. "Unit" or "Condominium Unit" shall mean a part of the Condominium Property which is subject to exclusive ownership.

## ARTICLE II.
## PROPERTY SUBJECT TO THIS DECLARATION: ADDITIONS THERETO

**SECTION 1. Property.** The real property which is and shall be held, transferred, sold, conveyed, and occupied subject to this Declaration is located in the Brevard County, Florida, and is more particularly described in Exhibit "A" to this Declaration.

**SECTION 2. Additional Property.** The Developer may add such additional property as Developer, its successors or assigns, may from time to time designate as being subject to this Declaration by the placing of record an instrument executed with formalities of a deed, making such designation.

## ARTICLE III.
## MEMBERSHIP AND VOTING RIGHTS OF THE ASSOCIATION

**SECTION 1. Membership.** Cape Crossing Condominium Association, Inc. and Cape Crossing Townhomes Homeowners Association, Inc. will not be members of Cape Crossing Resort Management, Inc., the Master Association. The members of Cape Crossing Condominium Association, Inc. and Cape Crossing Townhomes Homeowners Association, Inc. will not be entitled

to attend regular meetings of the Association. The Condominium Association and the Homeowners Association will be entitled to have one member each to attend special meetings of the Association which, if the action is approved, will have a material effect on the condominium and/or townhome owners, excluding special assessments on the Condominium Association, the Homeowners Association or both Associations. If the subject of the Association's meeting will have a material effect on the Condominium Association, Homeowners Association, or both Associations then the Association shall provide the Condominium Association and the Homeowners Association with written notice of the date, time and place of the meeting and the agenda of the meeting a minimum of ten (10) days prior to the meeting. The member of the Condominium Association and the member of the Homeowners Association will be permitted to speak at the meeting.

## ARTICLE IV.
## COVENANT FOR MAINTENANCE ASSESSMENTS

**SECTION 1. Creation of the Lien and Personal Obligation of Assessments.** Each Owner of a townhome or condominium unit by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, including any purchaser at a judicial sale, shall be deemed to covenant and agree to pay to the Association (1) annual assessments or charges; and (2) special assessments for capital improvements, such assessments to be fixed, established, and collected from time to time as hereinafter provided. The annual and special assessments, together with such interest thereon and costs of collection thereof as hereinafter provided, shall be a charge on the townhome lot or condominium unit and shall be a continuing lien upon the townhome lot or condominium unit against which such assessment, together with such interest thereon and the cost of collection thereof as hereinafter provided, is owing and shall also be the personal obligation of the person who was the Owner of such townhome lot or condominium unit at the time when the assessment became due. If not paid when due, the annual and special assessments, together with interest, costs, and reasonable attorney fees, may be collected by the Association by an action at law in the courts in Brevard County, Florida. A lot or unit Owner, jointly and severally, is liable with the previous lot or unit Owner for all unpaid assessments that came due up to the time of transfer. This liability is without prejudice to any right the present lot or unit owner may have to recover any amounts paid by the present owner from the previous owner. The Association shall bill all assessments, including special assessments, to the Homeowners' Association and Condominium Association, and each association shall pay the assessments when due to the Association.

**SECTION 2. Purpose of Assessments.** The assessments levied by the Association shall be used exclusively to promote the recreation, health, safety and welfare of the residents in the Property and for the improvement and maintenance of the Common Property and facilities for the common benefit of the residents, including, but not limited to:

a. Payment of operating expenses of the Association including, but not limited to, professional management fees;

b. Maintenance, landscaping, improvement and operation of Common Property, open space, easement areas, streets, parking spaces, sidewalks, driveways and greenbelt areas;

c. Maintenance, landscaping, and improvement of entrance areas to the Common Property;

d. Maintenance, landscaping, and improvement of lands dedicated to the public which are located within or adjacent to the Property such as landscape berms along any dedicated right-of-way.

e. Maintenance, landscaping, and improvement of screening walls and fences, if any, located within or adjacent to the Property;

f. Payment of taxes, hazard and general liability insurance for the Common Property, and errors and omissions insurance for Directors and Officers, labor and equipment for the Common Properties;

g. Repayment of funds and interest thereon that have been or may be borrowed by the Association for any of the aforesaid purposes;

h. Establishment of reserve funds for capital expenditures and deferred maintenance, to maintain, replace or repair any portion of the Common Properties, including painting, fencing, masonry walls, street and driveway resurfacing and any other items as designated by the Board;

i. The Association shall have a perpetual non-exclusive easement over all areas of the surface water or stormwater management system for access to operate, maintain or repair the system. By this easement, the Association shall have the right to enter upon any portion of any parcel which is a part of the surface water or stormwater management system, at a reasonable time and in a reasonable manner, to operate, maintain or repair the system.

j. Assessments shall also be used for the maintenance and repair of the surface water or stormwater management systems, including, but not limited to work within retention areas, drainage structures and drainage easements.

k. Doing any other thing necessary or desirable in the judgment of the Association, acting through its Board of Directors, to keep the Common Property neat and attractive or to preserve or enhance the value of the properties therein, or to eliminate fire, health or safety hazards.

l. Maintenance, landscaping, and improvements of all lands outside of the building pads, including townhome lots and the Condominium Property;

m. Maintenance and repairs required for the reuse water system central irrigation systems, if any.

n. The Association shall be responsible for the maintenance, operation and repair of the surface water or stormwater management system. Maintenance of the surface water or stormwater system(s) shall mean the exercise of practices which allow the systems to provide drainage, water storage, conveyance or other surface water or stormwater management capabilities. The Association shall be responsible for such maintenance and operation.

**SECTION 3. <u>Initial Assessment.</u>** The Initial Assessment for each townhome lot owner and condominium unit owner will be equal to two (2) monthly assessments payable at the time of closing. The Initial Assessment shall be a one-time assessment, and shall be due in addition to the Annual Assessments as provided herein.

**SECTION 4. <u>Uniform Rate of Assessments.</u>** Both Annual and Special Assessments shall be fixed at a uniform rate for the Owners of townhome lots and condominium units based upon the number of units within the Homeowners Association and the Condominium Association. The amount of each annual or special assessment to be levied against each Association shall be equal to the total of the annual and special assessments to the Associations multiplied by a fraction, the numerator of which shall be one (1), and the denominator of which shall be the total of lots in the Homeowners Association and the total number of units in the Condominium Association. For purposes of determining the uniform rate of assessments neither a lot nor a unit shall be considered in the total number of lots and units until the lot or unit has been completed as evidenced by the issuance of a certificate of occupancy by the applicable governmental agency for the townhome or condominium unit. No assessment shall be due and payable to the Association by a lot or unit owner until the lot or unit has been completed and a certificate of occupancy has been issued for the lot or unit and the lot or unit has been conveyed to a purchaser by the Developer.

The Developer will pay all costs and expenses of the Association not generated by assessments until the Developer has transferred control of the Homeowners' Association and Condominium Association to the Owners of the townhomes and condominium units other than the Developer.

**SECTION 5. Date of Commencement of Annual Assessments; Due Dates.** The annual assessments provided for herein shall commence on that date (which shall be the first day of the month) fixed by the Board of Directors of the Association to be the date of commencement. One-twelfth (1/12) of the annual assessment is due and payable on the first day of each month.

The due date of any special assessment shall be fixed in the resolution authorizing such assessment.

**SECTION 6. Special Assessments for Capital Improvements.** In addition to the annual assessments authorized herein, the Association may levy in any assessment year, a special assessment, applicable to that year only, for the purpose of defraying, in whole or in part, the cost of any construction or reconstruction, unexpected repair or replacement of a described capital improvement upon the Common Property, including the necessary fixtures and personal property related to the Common Properties provided that such assessment shall have the assent of a majority of the members of the Association who are present, in person or by proxy, at a meeting duly called for that purpose, at which a quorum is present, written notice of which shall be sent to all Members at least ten (10) days in advance and shall set forth the purpose of the meeting. Notwithstanding any other provision in this Declaration, the Association may levy a special assessment not exceeding One Thousand and No/100 ($1,000.00) Dollars against each townhome lot or condominium unit for the purposes stated herein without the approval of the Condominium Association and Homeowners Association and without notice of the special assessment to the Condominium Association, the Homeowners Association, or their members.

**SECTION 7. Duties of the Board of Directors.** In addition to such other duties vested in the Board of Directors of the Association in the Articles of Incorporation and the By-Laws of the Association, the Board of Directors of the Association shall fix the date of commencement and the amount of the assessment against the Homeowners Association, the Condominium Association and their members for each assessment period at least thirty (30) days in advance of such date or period and shall, at that time, prepare a separate record of the assessments and payments for each Association which records shall be kept in the office of the Association shall be open to inspection by a designated representative of the Homeowners Association and the Condominium Association.

**SECTION 8. Effect of Nonpayment of Assessment: The Personal Obligation of the Owner; The Lien; Remedies of Association.** If an assessment is not paid on the date when due (being the dates specified in Section 5 hereof), then such assessment shall become delinquent and shall, together with such interest thereon, late charges and costs of collection, including reasonable attorneys' fees, thereof as hereinafter provided, will become a continuing lien on the townhome lot or condominium unit to which such assessment relates.

The Homeowners Association and Condominium Association each shall be responsible for paying all assessments levied by the Association against the Owners of townhome lots and condominium units. It shall be the responsibility of the Homeowners Association and the Condominium Association to collect assessments from their members as provided in the HOA documents and the condominium documents and to pay the assessments to the Association.

If the assessment is not paid within fifteen (15) days after the delinquency date, the assessment shall bear interest from the date of delinquency at the rate of eighteen percent (18%) per annum.

To be valid, a claim of lien must state the description of the townhome lot or condominium unit, the name of the record owner, the name and address of the Association, which is Cape Crossing Resort Management, Inc. and whose address is the mailing address set forth in the annual report of the Association filed with the Florida Department of State Division of Corporations, which is available to all members on Sunbiz, the assessment amount due and the due date. The claim of lien shall secure all unpaid assessments that are due and that may accrue subsequent to the recording of

the claim of lien and before entry of a certificate of title, as well as interest, late charges and reasonable costs and attorney fees incurred by the Association incident to the collection process. The person making the payment is entitled to a satisfaction of lien upon payment in full.

A lot or condominium unit owner, regardless of how his or her title to property has been acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure is liable for all assessments that come due while he or she is the lot or condominium unit owner. The lot or condominium unit owner's liability for assessments may not be avoided by waiver or suspension of the use or enjoyment of any common areas or by abandonment of the lot or condominium unit upon which the assessments are made.

A lot or condominium unit owner is jointly and severally liable with the previous lot or condominium unit owner for all unpaid assessments that came due up to the time of transfer. This liability is without prejudice to any right the present lot or condominium unit owner may have to recover any amounts paid by the present owner from the previous owner.

Any payment received by the Association and accepted shall be applied first to any interest accrued, then to any administrative late fees, then to any costs and reasonable attorney fees incurred in collection, and then to the delinquent assessments. This paragraph applies notwithstanding any restrictive endorsement, designation, or instruction placed on or accompanying payment. A late fee is not subject to provisions of Chapter 687, Florida Statutes, and is not a fine.

The Association may not file a lien against a townhome lot or condominium unit for unpaid assessments unless thirty (30) days written notice or demand for past due assessments as well as any other amounts owed to the Association has been made by the Association to the delinquent Townhome Lot Owner or Condominium Unit Owner.

The Association may bring an action in its name to foreclosure a lien for unpaid assessments secured by a lien in the same manner that a mortgage of real property is foreclosed and may also bring an action to recover a money judgment for the unpaid assessments without waiving any claim of lien.

The Association may recover any interest, late charges, costs and reasonable attorney fees incurred in a lien foreclosure action or in an action to recover a money judgment for the unpaid assessments.

The time limitations in this Section 8 do not apply if the lot is subject to a foreclosure action or forced sale of another party, or if an owner of the lot or condominium unit is a debtor in a bankruptcy proceeding.

## ARTICLE V.
## USE RESTRICTIONS

**SECTION 1.** **Compliance with Zoning Ordinances.** No use may be made of the Cape Crossing Townhomes Property or the Cape Crossing, a Condominium Property or the Common Property that violates any applicable zoning ordinance or resolution in the final approved development plan of the Cape Crossing Resort and Marina Living.

**SECTION 2.** **Rules and Regulations.** No persons shall use the Common Property or any part thereof in any manner contrary to the rules and regulations adopted by Board of Directors of the Association.

**SECTION 3.** **Offensive Conduct.** No behavior or practice shall be permitted on the Common Property that endangers or unreasonably annoys lot or condominium unit Owners or other authorized users of the Common Property or that might cause the premiums for insurance on the Common Property to be increased, and no immoral or unlawful use shall be made of any part of the Common Property.

**SECTION 4.** **Animals.** No animal owned by or in the custody of a lot or condominium unit Owner or their tenants, guests or invitees shall be permitted on the Common Property, except when it

is leashed or carried by hand and is either in an area that the Association has specifically designated for walking pets or is being walked or transported directly to and from such area or directly off the Common Property. The Board may order temporary or permanent bans from the Common Property for any animal that is dangerous or that becomes obnoxious by reason of aggressive or intimidating behavior, barking, littering or otherwise. No animal may be kept on the Cape Crossing Resort Property for commercial or breeding purposes.

**SECTION 5. Children.** Children must observe the rules and regulations adopted by the Association for the use of the Common Property to the same extent as adults, lot and condominium unit Owners and their tenants, guests, and invitees.

**SECTION 6. Damage.** The Association may levy a special assessment on the lot or condominium unit of any Owner whose negligence or willful misconduct causes damage to the Common Property or increased insurance premiums with respect thereto, in the amount of the expense attributable to the damage or increased insurance premiums. "Owner" shall include the lot or condominium owner, their tenants, guests and invitees.

**SECTION 7. Garbage.** Garbage or rubbish shall not be dumped or allowed to remain on the Common Property.

**SECTION 8. Billboards.** No billboards, signboards or advertising devices shall be placed on the Common Property without the prior written consent of the Association.

**SECTION 9. Burning.** No burning of leaves, trash, rubbish, garbage or other waste materials of any type shall be permitted or conducted on the Common Property.

## ARTICLE VI.
## SURFACE WATER OR STORMWATER MANAGEMENT SYSTEM

**SECTION 1. Definitions.** Surface Water or Stormwater Management System means a system which is designated and constructed or implemented to control discharges which are necessitated by rainfall events, incorporating methods to collect, convey, store, absorb, inhibit, treat, use or reuse water to prevent or reduce flooding, overdrainage, environmental degradation, and water pollution or otherwise affect the quantity and quality of discharges from the systems.

**SECTION 2. Duties of Association.** The Association shall be responsible for the maintenance, operation and repair of the surface water or stormwater management system. Maintenance of the surface water or stormwater management system(s) shall mean the exercise of practices which allow the systems to provide drainage, water storage, conveyance or other surface water or stormwater management capabilities as permitted by the St. Johns River Water Management District. The Association shall be responsible for such maintenance and operation. Any repair or reconstruction of the surface water or stormwater management systems shall be as permitted, or, if modified, as approved by the St. Johns River Water Management District.

**SECTION 3. Easement for Access and Drainage.** The Association shall have a perpetual non-exclusive easement over all areas of the surface water or stormwater management system for access to operate, maintain or repair the system. By this easement, the Association shall have the right to enter upon any portion of any lot or the condominium property which is a part of the surface water or stormwater management system, at a reasonable time and in a reasonable manner, to operate, maintain or repair the surface water or stormwater management system as required by the St. Johns River Water Management permit. Additionally, the Association shall have a perpetual non-exclusive easement for drainage over the entire surface water or stormwater management system. No person shall alter the drainage flow of the surface water or stormwater management system, including buffer areas or swales, without the prior written approval of the St. Johns River Water Management District.

**SECTION 4. Amendment.** Any amendment to the Covenants and Restrictions which alters any provisions related to the surface water or stormwater management system, beyond maintenance in its original condition, including the water management portions of the Common Properties, must have the prior approval of the St. Johns River Water Management District.

**SECTION 5. Enforcement.** St. Johns River Water Management District shall have the right to enforce, by a proceeding at law and equity, the provisions contained in the Covenants and Restrictions which relate to the maintenance, operation and repair of the surface water and stormwater management system.

**SECTION 6. Swale Maintenance (if applicable).** The Developer has constructed a Drainage Swale upon each lot and the condominium property for the purpose of managing and containing the flow of excess surface water, if any, found upon such lot or condominium property from time to time. Each lot or condominium unit owner, including Builders, shall be responsible for the maintenance, operation and repair of the swales on the lot or condominium property. Maintenance, operation or repair shall mean the exercise or practices, such as mowing and erosion repair, to provide drainage, water storage, conveyance or other stormwater management capabilities as permitted by the St. Johns River Water Management District. Filling, excavation, construction of fences or otherwise obstructing surface water flow in the swales is prohibited. No alteration of the Drainage Swale shall be authorized and any damage to any Drainage Swale, whether caused by natural or human induced phenomenon, shall be repaired and the Drainage Swale returned to its former condition as soon as possible by the Owners of the lots and the Condominium Association as owners of the land upon which the Drainage Swale is located.

**SECTION 7. Powers of the Association.** The Association shall operate, maintain and manage the surface water or stormwater management system(s) in a manner consistent with the St. Johns River Water Management District Permit No. ______________________ requirements and applicable District rules and shall assist in the enforcement of the Declaration of Covenants and Restrictions which relate to the surface water or stormwater management system.

**SECTION 8. Dissolution.** In the event of termination, dissolution or final liquidation of the Association, the responsibility for the operation and maintenance of the surface water or stormwater management system must be transferred to and accepted by an entity which will comply with Section 62-330.310 of the Florida Administrative Code (Operation and Maintenance) and be approved by the St. Johns River Water Management District prior to such termination, dissolution or liquidation.

## ARTICLE VII.
## GENERAL PROVISIONS

**SECTION 1. Duration of Covenants and Restrictions.** The covenants and restrictions of this Declaration shall run with and bind the land, and shall inure to the benefit of and be enforceable by the Association, or the Owner of any lot or condominium unit subject to this Declaration, their representatives, legal representatives, heirs, successors and assigns, for a term of thirty (30) years from the date this Declaration is recorded, after which time the covenants may be extended as provided by the Marketable Record Title Act, Chapter 712, Florida Statutes or any applicable Florida Statute.

**SECTION 2. Notices.** Any notice, including notice of delinquent assessments, required to be sent to any lot or condominium unit Owner, the Homeowners Association or the Condominium Association under the provisions of this Declaration shall be deemed to have been properly sent when mailed, postpaid, to the last known address of the person who appears as Member or Owner on the records of the Association at the time of such mailing.

**SECTION 3. Enforcement.**

a. In the event of a violation of or failure to comply with the provisions of the Declaration of Covenants, Conditions and Restrictions, and the failure of the Owner of the affected lot or condominium unit Owner, within ten (10) days following written notice by the Association of such violation or non-compliance and the nature thereof, to cure or remedy such violation, then the Developer, its successors or assigns and licensees, and/or the Association (acting through its Board of Directors) or its duly appointed employees, agents or contractors, shall have and are specifically granted the right and privilege of an easement and license to enter upon the affected lot or condominium unit or any portion or portions thereof or Improvements thereon, without being guilty of any trespass therefor, for the

e

purpose of undertaking such acts or actions as may be reasonably necessary to cure or eliminate such violation, including injunctive relief; all at the sole cost and expense of the Owner of the affected lot or condominium unit. Such costs and expenses, together with an overhead expense to the Association of fifteen percent (15%) of the total amount thereof shall be assessed by the Association as an Individual Lot or Condominium Unit Assessment as provided in this Declaration to the affected lot or condominium unit and the Owner thereof. Any such individual lot or condominium unit assessment shall be payable by the Owner of the affected lot or condominium unit to the Association within ten (10) days after written notice of the amount thereof. Any such individual assessment not paid within said ten (10) day period shall become a lien on the affected lot or condominium unit in accordance with the provisions of this Declaration

b. The Association, acting through its Board of Directors, and/or the Developer shall have the right to enforce, by a proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens, and other changes now or hereinafter imposed by the provisions of this Declaration. Failure by the Association to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

**SECTION 4.** **Easement Reserved Unto Developer Over Lots and Condominium Property.** The Developer hereby reserves unto itself an easement of ingress and egress over, upon, under and across all Lots and the Condominium Property as shown on any recorded plot plan or survey of the Property and such easement shall include, but shall not be limited to the right to use the said Common Property area to erect, maintain and use electric powerlines, wires, cables, conduits, sewers, water mains and other suitable underground electric power lines, wires, cables and equipment for the conveyance and use of electricity, telephone equipment, gas, sewer, water or other public conveniences or utilities and the right to cut any trees, bushes or shrubbery, make any gradings of the soil, or take any other similar action reasonably necessary to provide economical and safe utility installation and to maintain reasonable standards of health, safety and appearance and the right to locate wells, pumping stations and tanks; provided, however, that said reservation and right shall not be considered an obligation of the Developer to provide or maintain any such utility or service.

**SECTION 5.** **Severability.** Invalidation of any one of these covenants or restrictions by Judgment or Court Order shall in no wise affect any other provisions which shall remain in full force and effect.

**SECTION 6.** **Subdivision of Lots.** No Lot shall be subdivided, or boundaries changed except with the written consent of the Association and as provided by rules, ordinances and regulations of applicable governmental agencies.

**SECTION 7.** **Amendment by Developer.**

a. So long as the Developer owns one lot, condominium unit or other parcels of land in CAPE CROSSING RESORT AND MARINA LIVING, notwithstanding anything to the contrary contained herein, Developer shall have the right to amend this Declaration without the consent, approval or joinder of any other person or Owner.

b. The amendment of this Declaration need be signed and acknowledged only by the Developer and need not be approved by the Association or lot or unit Owners or lienors or mortgagees of lots or units, whether or not elsewhere required for an amendment.

c. All amendments hereto will be recorded in the Public Records of Brevard County, Florida.

**SECTION 8.** **Amendments by Association.** This Declaration of Covenants, Conditions and Restrictions may be altered by a majority vote of the Board of Directors of the Association and any such amendment shall thereafter be recorded in the Public Records of Brevard County, Florida, and shall thereupon become a part of this Declaration of Covenants, Conditions and Restrictions as though the same were first set out herein, unless otherwise specified in this document.

**SECTION 9.** **Indemnification.** Every Board member and every officer of the Association, including Board members and/or officers appointed by the Developer, shall be indemnified by the Association against all expenses and liabilities, including counsel fees, reasonably incurred by or imposed upon him or her in connection with any proceeding to which he or she may be a party, or in which he or she may become involved by reason of his or her being or having been a Board member or officer of the Corporation, whether or not he or she is a Board member or officer of the Corporation at the time such expenses are incurred, except in such cases wherein the Board member or officer is adjudged guilty of willful misfeasance or malfeasance in the performance of his or her duties.

**IN WITNESS WHEREOF,** the undersigned, being the Developer herein, has hereunto set its hand and seal the 27 day of May, 2016.

Signed, Sealed and Delivered
In the Presence of:

"Developer"

CANAVERAL CROSSROADS, LLC,
a Florida limited liability company

BY: HOMEMAKERS MANAGEMENT CORPORATION, a Florida Corporation, its Manager

BY: [signature]
Print Name: Martin Flynn
Title: Manager

[signature]
Print Name: J. McPhillips

[signature]
Print Name: Beth Marques

STATE OF FLORIDA
COUNTY OF BREVARD

The foregoing instrument was acknowledged before me this 27 day of May, 2016, by Martin Flynn, Manager of **Homemakers Management Corporations, a Florida corporation as Manager of Canaveral Crossroads, LLC, a Florida limited liability company** on behalf of the company, who is personally known to me or has produced ________ as identification.

[signature]
NOTARY PUBLIC
My commission expires: 4/14/18

Notary Public State of Florida
Jessica McPhillips
My Commission FF 102354
Expires 04/14/2018

Exhibit "A"

Legal Description

PARCEL ONE:

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Brevard County, Florida being more particularly described as follows:

Commence at the Southwest corner of said Section 11; thence N.00°27'47"W. along the West line of said Section 11 a distance of 126.39 feet to the North right-of-way line of State Road No. 528 as shown on the State of Florida Department of Transportation right-of-way map section 70070-2502, being a non-tangent curve concave to the North having a radius of 1120.92 feet and a radial bearing of S.05°42'53"E., being the point of beginning of the parcel of land described herein; thence N.00°27'47"W. continuing along the said West line of Section 11 a distance of 347.44 feet to the South right-of-way line of the Canaveral Port Authority Barge Canal; thence N.82°14'39"E. along said South right-of-way line a distance of 588.61 feet to the West right-of-way line of Tingley Drive, a 50 foot right-of-way; thence S.04°35'05"E. along said West right-of-way line a distance of 258.73 feet to the said North right-of-way line of State Road No. 528; thence S.71°54'35"W. along said North right-of-way line a distance of 383.61 feet to the point of curvature of said curve concave to the North having a radius of 1120.92 feet; thence Southwesterly along the arc of said curve through a central angle of 12°22'32" an arc distance of 242.11 feet to the said West line of Section 11 and the point of beginning.

PARCEL TWO:

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Brevard County, Florida being more particularly described as follows:

Commence at the Southwest corner of said Section 11; thence N.00°27'47"W. along the West line of said Section 11 a distance of 126.39 feet to the North right-of-way line of State Road No. 528 as shown on the State of Florida Department of Transportation right-of-way map section 70070-2502, being a non-tangent curve concave to the North having a radius of 1120.92 feet and a radial bearing of S.05°42'53"E.; thence N.00°27'47"W. continuing along the said West line of Section 11 a distance of 347.44 feet to the South right-of-way line of the Canaveral Port Authority Barge Canal; thence N.82°14'39"E. along said South right-of-way line a distance of 638.69 feet to the East right-of-way line of Tingley Drive, a 50 foot right-of-way, and the point of beginning of the parcel of land described herein; thence N.82°14'39"E. continuing along said South right-of-way line a distance of 50.42 feet to a point of intersection; thence N.79°57'47"E., continuing along said South right-of-way line a distance of 152.43 feet to the West right-of-way line of State Road No. 3 as shown on the State of Florida Department of Transportation right-of-way map section 70140-2514; thence S.04°32'31"E. along said West right-of-way line a distance of 80.00 feet; thence N.79°57'47"E. continuing along said West right-of-way line a distance of 4.02 feet; thence S.04°32'31"E. continuing along said West right-of-way line a distance of 120.01 feet to the said North right-of-way line of State Road No. 528; thence S.79°57'47"W. along said North right-of-way line a distance of 186.82 feet to the said East right-of-way line of Tingley Drive; thence N.04°35'05"W. along said East right-of-way line a distance of 201.21 feet to the said South right-of-way line of the Canaveral Port Authority Barge Canal and the point of beginning.
Bearings based on the assumption that the West line of Section 11 bears N.00°27'47"W. per the State of Florida Department of Transportation right-of-way map section 70140-2514.

Exhibit "B"


( 500 FOOT RIGHT-OF-WAY )
CANAVERAL PORT AUTHORITY BARGE CANAL
RESTAURANT
CUTLASS POINT LANE
MARINE HARBOR DRIVE
RETENTION AREA A
BOTTOM ELEVATION 8.0 FT
RETENTION AREA C
LAGOON WAY
IVORY CORAL LANE
TINGLEY DRIVE
PARROTFISH LANE
RETENTION AREA B
STATE ROAD NO. 528
TOTAL = 31 SLIPS
COQUINA REVETMENT
SCALE: 1"= 30'
NORTH COURTENAY PARKWAY
PLATA ENGINEERING, INC
ENGINEERS—PLANNERS—CONSTRUCTION MANAGEMENT
3700 N. HARBOR CITY BLVD— SUITE 2F
MELBOURNE, FLORIDA 32935
TEL (321) 259-7528 FAX (321) 256-6305
CROSSROADS RESORT AND MARINA
SITE PLAN
MERRITT ISLAND
BREVARD COUNTY
ISSUED FOR:
PRELIMINARY
PERMIT
BIDDING
CONSTRUCTION
REVISION
JANUARY 13, 2015
SCALE: 1"= 30'
PROJECT 201436

a

Exhibit "C"

# CAPE CROSSING CONDOMINIUM

## A CONDOMINIUM

PRELIMINARY DOCUMENTS

## BOUNDARY SURVEY LEGAL DESCRIPTION

A PARCEL OF LAND LYING IN SECTION 11, TOWNSHIP 24 SOUTH, RANGE 36 EAST, TALLAHASSEE BASE MERIDIAN, BREVARD COUNTY, FLORIDA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT A 5/8 INCH IRON BAR MARKING THE INTERSECTION OF THE WESTERLY RIGHT-OF-WAY LINE OF TINGLEY DRIVE (A 50 FOOT RIGHT-OF-WAY, AS PRESENTLY LOCATED) AND THE SOUTH PROPERTY LINE OF THE CANAVERAL PORT AUTHORITY; THENCE S82° 14'00"W, ALONG SAID SOUTH LINE OF THE CANAVERAL PORT AUTHORITY, A DISTANCE OF 32.64 FEET TO THE POINT-OF-BEGINNING; THENCE CONTINUE S82° 14'00"W, ALONG SAID LINE, A DISTANCE OF 221.00 FEET; THENCE S07° 46'00"W, A DISTANCE OF 106.78 FEET; THENCE N82° 14'00"E, PARALLEL TO SAID SOUTH LINE OF THE CANAVERAL PORT AUTHORITY, A DISTANCE OF 157.33 FEET; THENCE N07° 46'00"E, A DISTANCE OF 18.50 FEET; THENCE N82° 14'00"E, A DISTANCE OF 63.67 FEET; THENCE N07° 46'00"E, A DISTANCE OF 88.28 FEET TO THE POINT-OF-BEGINNING.

CONTAINING 22,419.8 SQUARE FEET, MORE OR LESS.

## SURVEYOR'S NOTES

1. THIS SITE LIES IN FLOOD ZONE "X" ACCORDING TO F.E.M.A. FLOOD INSURANCE RATE MAP NO. 12009C0340 G, COMMUNITY NO. 125092, DATED MARCH 17, 2014.
2. NO ENCROACHMENTS EXIST ON THIS SITE.
3. SUBJECT TO ANY EASEMENTS AND/OR RIGHTS-OF-WAY OF RECORD.
4. BEARINGS REFER TO THE UNITED STATES ARMY CORPS. OF ENGINEERS BEARING STRUCTURE WITH THE SOUTH LINE OF THE CANAVERAL PORT AUTHORITY PROPERTY BEARING S 82° 14'00" W (CANAVERAL HARBOR LAYOUT PLAN DRAWING NO. 11-15.648, DATED MARCH, 1950.
5. MASTER BENCH MARK: UNITED STATES ARMY CORPS. OF ENGINEERS, JACKSONVILLE DISTRICT, STANDARD BRONZE DISC SET IN 6" X 6" CONCRETE POST ABD STAMPED CH - 17 HAVING A PUBLISHED ELEVATION OF 8.923 FEET BASED ON NATIONAL GEODETIC VERTICAL DATUM OF 1929.
6. FIELD SURVEY PERFORMED APRIL 09, 2015.

KUGELMANN LAND
SURVEYING, INC.
30 NORTH TROPICAL TRAIL
SUITE B
MERRITT ISLAND, FL. 32953
(321) 459-0930
L.B. NO. 6575
e-mail: klsinc@cfl.rr.com

DATE : 04/09/15

JOB NAME: CROSSROADSCONDO