**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re:<br><br>CANAVERAL CROSSROADS, LLC,<br>SHERWOOD CONSTRUCTION, INC.,<br><br>Debtors.<br>______________________________/ | Case No. 6:26-bk-05426-GER<br>Chapter 11<br><br>Jointly Administered with<br>Case No. 6:26-bk-05428-GER |

# DEBTOR'S AMENDED OBJECTION TO CLAIM 13-1 OF PEDIXON LLC AS A REPAID AND CRIMINALLY USURIOUS DEBT, AND REQUEST FOR EVIDENTIARY HEARING

(Applies to Canaveral Crossroads, LLC, Case No. 6:26-bk-05426-GER, only)

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at George C. Young Federal Courthouse, 400 West Washington Street, Suite 5100, Orlando, Florida 32801 within thirty days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

PEDIXON LLC asks to be paid $500,000 out of land that belongs to Canaveral Crossroads. Canaveral Crossroads never borrowed that money. Sherwood Construction, Inc. did, and Canaveral Crossroads only pledged its land.

On September 13, 2023, the lenders folded Sherwood's note into an $11,075,000 consolidated loan, and the obligors repaid that loan many times over. Measured as part of that loan or by itself, the debt carried interest above 25 percent, and Florida forbids its courts to enforce it. *Fla. Stat. § 687.071(7)*. The Bankruptcy Code disallows a claim that applicable law will not enforce. *11 U.S.C. § 502(b)(1)*.

The Court overruled Canaveral Crossroads' original objection to allow this amended one, which restates the objection and corrects its service. (Docs. 66, 69).

Canaveral Crossroads objects to the following claim and concedes no amount of it. M.D. Fla. Bankr. L.R. 3007-1(a).

| | |
|---|---|
| Claim 13-1 — PEDIXON LLC (secured, mortgage) | $500,000.00 |
| Amount conceded | $0.00 |

**PEDIXON holds an interest in Canaveral Crossroads' land, not a debt of Canaveral Crossroads.**

1. The note runs from "Sherwood Construction, Inc." as "Borrower" to PEDIXON for $500,000 at one percent per month, with Martin C. Flynn, Jr. as guarantor. Canaveral Crossroads signed only a mortgage. (Ex. 1 at 7–11, 17–18). The lenders' own Schedule 1 to the September 13, 2023 loan agreement lists the "Resorts Common Area Loan" with "Sherwood Construction" as borrower and "Canaveral Crossroads as mortgagor." (Ex. 3, Sched. 1). That agreement names eleven guarantors, and Canaveral Crossroads is not among them. (Ex. 3 at 1).

2. A mortgage is a claim only because it carries a right to be paid from the property. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (the mortgage holder "retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property"). That interest reaches no further than the debt it secures, and it carries no unsecured or deficiency claim against Canaveral Crossroads. Section 1111(b) does not change the result, because it directs that the claim be "allowed or disallowed under section 502." *11 U.S.C. § 1111(b)(1)(A)*.

3. PEDIXON filed no claim in Sherwood's case, and the deadline passed on September 28, 2026. (Sherwood Docs. 19, 23). PEDIXON seeks the Sherwood debt solely from Canaveral Crossroads' land, so the enforceability of Sherwood's debt decides Claim 13-1. The Bankruptcy Code disallows a claim to the extent it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." *11 U.S.C. § 502(b)(1)*.

**On September 13, 2023, the lenders consolidated this loan with ten others, and the obligors repaid the consolidated loan.**

4. On September 13, 2023, PEDIXON, ZPD LLC, and the other lenders Kenneth G. Dixon controls consolidated eleven extensions of credit into one "Tiered Loan" of $11,075,000, with the Resorts Common Area Loan on Schedule 1. (Ex. 3 at 3 & Sched. 1). From that day the note existed only as part of the consolidated loan. Against $11,225,000 advanced, the lenders received

$26,970,988 in cash and in kind: the Holly Bluff and Nevamar land by deed, $2,603,595 cash at the River Fly In closing, the Homemakers membership units, and a $500,000 certificate of deposit, among others. Gary A. Moll, a certified public accountant, traced each payment from the lenders' own records. (Ex. 2, Moll Report ¶¶ 11, 14, 16, 33, 40). A lender that takes back mortgaged land receives payment, because "[t]he merger results in a discharge of the mortgage and a satisfaction of the debt." *Prigal v. Kearn*, 557 So. 2d 647, 648 (Fla. 4th DCA 1990).

5. Credited when received, those payments extinguished the consolidated principal no later than February 1, 2024, on every valuation in the record, including the lenders' own. (Ex. 2, Moll Report ¶¶ 11, 95).[1] From February 2024 through May 2025, the lenders billed $2,997,242 against a principal balance of zero. (Ex. 2, Moll Report ¶ 72). Claim 13-1 nonetheless seeks the full face of the note and attaches no payment history and no copy of the consolidated loan agreement. (Ex. 1). A claim that omits the writing it rests on loses its prima facie weight. Fed. R. Bankr. P. 3001(c)(1), (f). The burden then rests where Florida law places it. *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21 (2000).

---

1 Even taken at their highest contract rates — every stated rate and fee, and 25 percent from January 2024 to August 2, 2026 — the lenders' own terms could never have produced more than $17,006,795.06:

| | |
|---|---|
| Received by the lenders, cash and in kind | $26,970,988.41 |
| Most ever owed, on the lenders' own terms | (17,006,795.06) |
| **Overpayment** | **$9,964,193.35** |

**As one consolidated loan, the debt is criminally usurious, and Florida will not enforce it.**

6. Florida draws the criminal line at 25 percent, whatever the size of the loan. *Velletri v. Dixon*, 44 So. 3d 187, 189 (Fla. 2d DCA 2010). The statute adds every advance or forbearance, spread over the stated term, to the stated rate. *Fla. Stat. § 687.03(3)*; *St. Petersburg Bank & Trust Co. v. Hamm*, 414 So. 2d 1071, 1073 (Fla. 1982). Moll applied that method to the lenders' own documents and computed these rates:

| | |
|---|---|
| Consolidated loan, 18-month term | 69.13% |
| Consolidated loan, 12-month term | 96.73% |
| From January 2024, with a 25 percent stated rate: | |
| Homemakers forbearance fee, book value | 87.26% |
| Homemakers forbearance fee, recited value | 106.10% |
| With renewal fees and late charges, 2024 only | 26.77% |

Every calculation exceeds 25 percent. (Ex. 2, Moll Report ¶¶ 12, 62, 77, 96). Four exceed the 45 percent felony line. *Fla. Stat. § 687.071(3)*. The consolidation did not cleanse the eleven loans; it joined them. "[T]he taint of usury follows through and becomes a part of any new or substituted contract." *Rollins v. Odom*, 519 So. 2d 652, 658 (Fla. 1st DCA 1988).

7. The Florida Legislature withdrew such a debt from its courts: "No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state." *Fla. Stat. § 687.071(7)*. The lender forfeits principal as well as interest. *Jersey Palm-Gross, Inc. v. Paper*, 658

So. 2d 531, 534 (Fla. 1995). A lender “cannot seek to recover the unpaid principal on a criminally usurious loan, whether by proof of claim, set-off, counterclaim or otherwise.” *Stein v. Lavay (In re Omni Capital Group, Ltd.)*, 157 B.R. 712, 720 (Bankr. S.D. Fla. 1993). The lenders acted “willfully and knowingly”: they recited the consolidated total themselves, took the Homemakers units as the price of forbearance, and chose the January 2024 rate described next. *Fla. Stat. § 687.071(2)*.

**Taken alone, the Resorts Common Area Loan became criminally usurious in January 2024, when Dixon imposed the stated default rate.**

8. An extension of credit need not be a new loan. It includes any renewal and “any agreement for forbearance to enforce the collection of such loan.” *Fla. Stat. § 687.071(1)(d)*. The note let the lender raise the rate on default only to “the maximum rate permitted by applicable law.” (Ex. 1 at 8, ¶ 3). For a $500,000 loan that maximum is 18 percent. *Fla. Stat. §§ 687.02(1), 687.03(1)*. In January 2024, Dixon could have charged any rate below 25 percent. He chose 25 percent, the <u>stated default rate</u>, on the original contracted rates and on the accelerated interest rate, plus he added renewal fees, late charges, and closing and broker fees. (Ex. 2, Moll Report ¶¶ 37, 60, 75). At a 25 percent stated rate, any additional fee carries the effective rate over the line. (*Id.* ¶ 76).

9. The lenders will answer that the statute measures the rate as though the debt were paid as agreed. That language is an anti-manipulation provision. Section 687.03(3) computes the rate “upon the assumption that the debt will be paid according to the agreed terms,” over the loan’s “stated maturity date, without regard to early maturity in the event of default.” *Fla. Stat. § 687.03(3)*. It keeps an intentional default from shortening the term over which the rate is measured. And the rate is calculated at inception. The January 2024 forbearance was a new extension of credit with its own inception, and the 25 percent rate and the 2024 fees belong to it. *Fla. Stat. § 687.071(1)(d)*.

10. Allocated by this note’s share of the consolidated principal — $500,000 of $11,075,000, or 4.51 percent — the 2024 charges alone carry it past 25 percent:

| | | |
|---|---|---|
| Stated default rate, from January 2024 | | 25.00% |
| Renewal fees, 4/15/24 and 7/15/24, share of $171,500 | $7,742.66 | 1.55% |
| Late charges, April–July 2024, share of $24,675 | 1,114.00 | 0.22% |
| **Effective rate, Resorts Common Area Loan** | **$8,856.66** | **26.77%** |

The figure omits charges Moll identified but did not count: a $121,093.17 “interest reserve” and a $5,000 extension fee the lenders paid themselves at the River Fly In closing, and $44,786 of consolidation closing costs. (Ex. 2, Moll Report ¶¶ 84, 90). Allocated the same way, they add 1.54 points more. If the court declines to find the criminal statute’s elements, the 25 percent rate still exceeded

the 18 percent ceiling, and the lender "shall forfeit the entire interest so charged" and repay or credit double the interest it took. *Fla. Stat. § 687.04*. That remedy is an alternative, not an addition. *Velletri*, 44 So. 3d at 192. And the double-interest forfeiture alone would leave the debt overpaid by at least $3 million.

**The loan became part of a scheme that began with the Holly Bluff and River Fly In loans and ended in a forged trustee's deed.**

11. The scheme began with underfunding. The Holly Bluff agreement recited a $3,000,000 loan, but the lenders placed $2,754,031.59 and paid themselves $93,750 of "Lender fees" from the closing. The closing attorney covered the $339,718.41 gap with Sherwood's construction draws. (Ex. 2, Moll Report ¶¶ 45–48). At River Fly In, the lenders kept $2,000,000 in an account "owned and controlled by Lender" and released the units that secured the loan without the obligors' consent. Through August 2024, they billed $25,000 a month on the money they kept in their own bank account. (*Id.* ¶ 88). Those unilateral acts cost the obligors more than $500,000.

12. The land trust covered the fraud trail. The September 13, 2023 agreement required the parties to execute the Tiered Land Trust Agreement and to execute and record a trustee's deed to Crescent Sound, Ltd., a Dixon entity. (Ex. 3 §§ 9.3–9.4). The drafters told the obligors the trust would protect them through subrogation. No one recorded a deed in September 2023, and the trust was never

formed. On February 14, 2024, someone recorded a trustee's deed as CFN 2024031262, OR Book 9992, Page 2830.

13. That deed is not the instrument Horton S. Johnson signed. On September 13, 2023, Johnson signed through DocuSign a three-page instrument with no witnesses, no notarial certificate, and a blank exhibit page captioned "(26 UNITS)." The recorded deed adds witnesses and a certificate reciting the signer's physical presence, removes the third page, and then adds six pages describing twenty-seven units. Thomas Vastrick, a forensic document examiner, found Johnson's signature entries "font-generated" and the witness addresses "written after the notary entries were entered." (Ex. 4 at 2). "The recording of a void or forged deed is legally insufficient to create a legal title, and affords no protection to those claiming under it." *McCoy v. Love*, 382 So. 2d 647, 648 (Fla. 1979). A claimant that built its position this way does not come to this court as an ordinary creditor, and "a sufficient consideration may be simply the violation of rules of fair play and good conscience by the claimant." *Pepper v. Litton*, 308 U.S. 295, 310–11 (1939).

**PEDIXON submitted its claim to this court, and an evidentiary hearing will resolve the facts.**

14. Claim 13-1 reserves a jury trial and withdrawal of the reference. (Ex. 1 at 4–5). A creditor that files a claim "triggers the process of 'allowance and

disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990). The rate, the crediting of payments, and the lenders' intent are questions of fact for a contested hearing. Fed. R. Bankr. P. 9014. The same lenders and report are before this court in *In re Homemakers Real Estate, LLC*, No. 6:25-bk-05570-GER (Bankr. M.D. Fla. 2025). (Homemakers Doc. 339). Canaveral Crossroads asks that the hearings be coordinated.

15. This objection seeks only disallowance, and a lien securing a disallowed claim is void to that extent. *11 U.S.C. § 506(d)*. Canaveral Crossroads reserves every claim that requires an adversary proceeding, including avoidance of the mortgage, its priority behind the 2018 Jetton mortgage, the authority of "JLALF Incorporated" to sign it, and recovery of the lenders' overpayment. Fed. R. Bankr. P. 3007(b).

## RELIEF REQUESTED

Florida forbids its courts to enforce this debt, and the Bankruptcy Code forbids this court to allow it. The law requires the court to:

a. sustain this objection;

b. determine that PEDIXON holds no claim against Canaveral Crossroads beyond its interest in Canaveral Crossroads' land, and that the obligors repaid the consolidated loan before the petition date;

c. determine that the extension of credit underlying Claim 13-1, as made, consolidated, and renewed, is not an enforceable debt in the courts of this state;

d. disallow Claim 13-1 in its entirety under *11 U.S.C. § 502(b)(1)*;

e. in the alternative, allow Claim 13-1 only against Canaveral Crossroads' land, with no unsecured or deficiency claim, in an amount fixed after crediting every payment the lenders received and forfeiting interest under *Fla. Stat. § 687.04*;

f. if PEDIXON timely files a response, set a preliminary hearing to fix a schedule for discovery, expert disclosure, and an evidentiary hearing.

Respectfully submitted this 12th day of October, 2026.

/s/ Christopher L. Smith
Christopher L. Smith, Esq.
Florida Bar No. 367461
Fromang & Smith, P.A.
4767 New Broad Street
Orlando, Florida 32814
(407) 999-9739
chris@fromangsmith.com
Counsel for the Debtors in Possession

EXHIBITS

| | |
|---|---|
| Exhibit 1. | Claim 13-1 of PEDIXON LLC, filed September 28, 2026, with its promissory note, recorded mortgage, and loan agreement. |
| Exhibit 2. | Expert Report of Gary A. Moll, MBA, CPA, ASA, Ferguson-Moll Consulting, LLC, dated August 18, 2026. |
| Exhibit 3. | Loan Agreement among PEDIXON LLC, ZPD LLC, Tiered Capital, Inc., and the guarantors, dated September 13, 2023, with Schedule 1. |
| Exhibit 4. | Forensic Document Examination Report of Thomas Vastrick, dated August 25, 2026. |

## CERTIFICATE OF SERVICE

I certify that on October 12, 2026, I filed this amended objection with the clerk of court through the CM/ECF system, which served it electronically on every party registered for electronic notice in this case and in Case No. 6:26-bk-05428-GER, including the United States Trustee. Counsel for the Debtors in Possession filed it, and no trustee has been appointed in either case. On the same day, I served this amended objection, its notice, and its exhibits by first-class United States mail, postage prepaid, on the person who signed Claim 13-1 for PEDIXON LLC and on the person PEDIXON LLC designated in Part 1, box 3, of the claim to receive notices, at the addresses stated in the claim. I thereby served this amended objection and its notice on every person Fed. R. Bankr. P. 3007(a) and M.D. Fla. Bankr. L.R. 3007-1(b) require to be served.

*Signer of Claim 13-1, for the claimant (Part 3):*
PEDIXON LLC
Attn: Kenneth Dixon, Manager
1627 East Vine Street
Kissimmee, Florida 34744

*Notice party designated on Claim 13-1, Part 1, box 3 (the claim states "Orlando, FL 32803" without a street address):*
Jeffrey S. Ainsworth, Esq.
Branson Ainsworth PLLC
1501 East Concord Street
Orlando, Florida 32803

/s/ Christopher L. Smith
Christopher L. Smith, Esq.