# EXHIBIT 1

Claim 13-1 of PEDIXON LLC, filed September 28, 2026, with its promissory note, recorded mortgage, and loan agreement.

**Fill in this information to identify the case:**

Debtor **Canaveral Crossroads, LLC**

United States Bankruptcy Court for the: MIDDLE DISTRICT OF FLORIDA

Case number **6:26-bk-05426-GER**

Official Form 410

# Proof of Claim

**04/25**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

**Pedixon LLC**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

■ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| **Jeffrey S. Ainsworth**<br>**Branson Ainsworth PLLC**<br>**Orlando, FL 32803** | **Pedixon LLC**<br>**1627 EAST VINE STREET**<br>**Kissimmee, FL 34744** |
| Name, Number, Street, City, State & Zip Code | Name, Number, Street, City, State & Zip Code |
| Contact phone **(407) 894-6834** | Contact phone |
| Contact email **jeff@bransonlaw.com** | Contact email |

Uniform claim identifier (if you use one):

**4. Does this claim amend one already filed?**

■ No
☐ Yes. Claim number on court claims registry (if known) Filed on

**5. Do you know if anyone else has filed a proof of claim for this claim?**

■ No
☐ Yes. Who made the earlier filing?



Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**
- ■ No
- ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ______

**7. How much is the claim?** $ **500,000.00**

**Does this amount include interest or other charges?**
- ☐ No
- ■ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Mortgage**

**9. Is all or part of the claim secured?**
- ☐ No
- ■ Yes. The claim is secured by a lien on property.

**Nature of property:**
- ■ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
- ☐ Motor vehicle
- ☐ Other. Describe: **The real property legally described in Exhibit A to the mortgage recorded at Official Records Book 9731, Page 1341.**

**Basis for perfection:** ______

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ ______

**Amount of claim that is secured:** $ **500,000.00**

**Amount of claim that is unsecured:** $ ______ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ ______

**Annual Interest Rate** (when case was filed) **12** %
- ■ Fixed
- ☐ Variable

**10. Is this claim based on a lease?**
- ■ No
- ☐ Yes. **Amount necessary to cure any default as of the date of the petition:** $ ______

**11. Is this claim subject to a right of setoff?**
- ■ No
- ☐ Yes. Identify the property: ______



Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

■ No

☐ Yes. *Check one:* **Amount entitled to priority**

| | |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ |

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

■ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date **September 28, 2026**
MM/ DD / YYYY

**/s/ Kenneth Dixon**
Signature

**Print the name of the person who is completing and signing this claim:**

Name **Kenneth Dixon**

Title **Manager**

Company **Pedixon LLC**
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address **1627 East Vine Street**
**Kissimmee, FL 34744**
Number, Street, City, State and Zip Code

Contact phone ______ Email ______

Canaveral Crossroads LLC ("**Debtor**")
Case No.: 6:26-bk-005426-GER
Chapter 11

Attachment to Proof of Claim of:
Pedixon LLC

**Supporting Documents:**

Exhibit A: Promissory Note;
Exhibit B: Recorded Mortgage (Instrument #2023043479, Official Records, Brevard County, Florida); and
Exhibit C: Loan, Security and Cross Collateralization Agreement

**Reservation of Rights:**

Creditor does not waive any of its rights to any and all such claims by not ascribing a specific dollar amount thereto at this time. Creditor expressly reserves the right to amend and/or supplement this Proof of Claim for additional costs or obligations that may become liquidated or due after the date of filing this Proof of Claim, including, but not limited to, interest and attorneys' fees. Creditor reserves all rights to (i) amend, clarify, modify, update or supplement this Proof of Claim at any time and in any respect, including without limitation to assert additional claims and requests for payment on additional grounds for its claims; (ii) file additional proofs of claim at any time and in any respect; (iii) file separate proofs of claim as: (a) permitted by any order entered in this case establishing a deadline to file proofs of claim; (b) required or permitted by law; or (c) otherwise ordered by the Bankruptcy Court; and/or (iv) file a request for payment of an administrative expense or priority claim in accordance with 11 U.S.C. §§ 503(b) and 507(a).

By virtue of the filing of this Proof of Claim, Creditor does not waive, and hereby expressly reserves its right to pursue any and all rights, claims and requests for payment, including, without limitation: (i) default interest at the at the highest lawful rate of interest per annum in accordance with the Note; (ii) the claims and requests for payment described herein against Debtor based on the facts and circumstances giving rise to the claims asserted in this Proof of Claim; and (iii) any other alternative legal theories.

The execution and filing of this Proof of Claim is not and shall not be deemed or construed as: (a) a waiver or release of Creditor's rights against any person, entity, or property, which may be liable for all or any part of the claims asserted herein; (b) a consent by Creditor to the jurisdiction or venue of the Bankruptcy Court with respect to proceedings, if any, commenced in Debtor's chapter 11 case against or otherwise involving it; (c) a waiver or release of Creditor's right to trial by jury in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a waiver or release of Creditor's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (e) a waiver of the right to move or to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may

be commenced in Debtor’s chapter 11 case against or otherwise involving Creditor; (f) an election of remedies; or (g) a waiver or limitation of any procedural or substantive rights or defenses to any claim that may be asserted against Creditor by Debtor, trustee or examiner appointed in this case or any subsequent case, or any other party.

# <u>Exhibit A</u>
# Promissory Note

**THIS IS A BALLOON NOTE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $500,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS NOTE.**

## PROMISSORY NOTE

**Loan:** $500,000.00
**Effective Date:** February ____, 2023

**FOR VALUE RECEIVED**, **Sherwood Construction, Inc., a Florida corporation** (referred to herein as the the "Borrower"), promises to pay to **PEDIXON LLC** (referred to herein as the "Lender"), in the manner hereinafter specified, the interest and principal based on the outstanding sum of **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)** (the "Loan").

Martin C. Flynn, Jr., individually, hereby join in the execution of this Note and agrees to the terms and conditions hereof as guarantors of the Loan in further accordance with the terms of the Loan Agreement executed of even date herewith.

**INTEREST RATE:**

*The interest rate on this Note shall be fixed at the rate of ONE PERCENT (1%) PER MONTH.*

**PAYMENT SCHEDULE**:

The Borrower hereby agrees to repay the indebtedness as follows:

*Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable in monthly installments.*

*The first payment shall be due on April 1, 2023, and shall continue to be paid in equal consecutive monthly installments on the 1st day of every month thereafter for eleven (11) months.*

*A final balloon installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on March 1, 2024 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

### Additional Terms of the Promissory Note

1. **Prepayment**. Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2. **Late Charge**. If a payment is 11 days or more late, Borrower will be charged the greater of (a) 5.000% of the unpaid portion of the regularly scheduled payment (up to a maximum of $250.00); or (b) $35.00.

3. **Interest After Default**. Upon default, including failure to pay upon final maturity, Lender, at its option, may increase the interest rate on this Note to the maximum rate allowed by law, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

4. **Default**. Each of the following shall constitute an event of default ("Event of Default") under this Note:

    4.1. Payment Default. Borrower fails to make, as and when due, any payment due under this Note, and such failure continues for 15 days after written notice thereof from Lender.

    4.2. Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant, or condition contained in this Note or in any of the other documents executed by Borrower in connection with this Note or this transaction including, without limitation, the Loan Agreement executed of even date herewith and all other instruments, agreements, and documents, whether now or hereafter existing (the "Related Documents"), and such failure continues for 15 days after written notice thereof from Lender.

    4.3. Notice of Default. Upon default, Lender shall provide written notice to Borrower via certified mail, return receipt requested, and Borrower shall have an opportunity to cure said default within 15 days of receipt of said notice.

    4.4. Lender's Rights. If Borrower fails to cure said default within said 15-day period, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

5. **Costs of Collection; Attorney's Fees**. If Borrower fails to make any amount due hereunder, or if any dispute arises hereunder (whether or not suit be brought); or if any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which arises out of, concerns, or relates to this Note, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Note, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover all costs of collection including, without limitation, reasonable attorney's fees, court costs, all expenses (even if not taxable as court costs), and all collection agency expenses, commissions or charges, incurred in connection with the dispute, action or proceeding, in addition to any other relief to which such party or parties may be entitled.

6. **Notices.** Any notice, demand, or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below each signatory line below.

7. **Governing Law**. This Note will be governed by, construed, and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

8. **General Provisions**.

8.1. If any part of this Note cannot be enforced, this fact will not affect the enforceability of any other section of the Note.

8.2. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

8.3. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

8.4. This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

PRIOR TO SIGNING THIS NOTE, BORROWER HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.
BORROWER AGREES TO THE TERMS OF THE NOTE.

**BORROWER: SHERWOOD CONSTRUCTION, INC.**

DocuSigned by:
Martin C. Flynn, Jr.
8788014E49D94EA...
By: Martin C. Flynn, Jr., Individually and as President

Borrower address for Notice:
5526 Hansel Ave., Edgewood FL 32809

Check the appropriate language:

_____ Florida documentary Stamp required by law in the amount of ________has been paid or will be paid directly to the Department of Revenue.

__X__ Florida Documentary Stamps required to be paid on the indebtedness evidenced hereby have been paid and affixed to the original mortgage executed herewith.

# Exhibit B

## Recorded Mortgage (Instrument #2023043479, Official Records, Brevard County, FL)

DocuSign Envelope ID: 552A93C0-01F7-411A-9EC7-E2E8C684A6FC

**THIS IS A BALLOON MORTGAGE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $500,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

This instrument prepared by:
Prepared By and Return To:
Alison Pitkanen, Esquire
1980 N. Atlantic Avenue, Ste. 328
Cocoa Beach, FL 32931

Recording costs - __________
Documentary Excise Tax - $________
Intangible Taxes - $________

# MORTGAGE

THIS AGREEMENT (referred to hereafter as the "Agreement"), made effective as of the 27th day of February 2023 ("Effective Date"), by and between CANAVERAL CROSSROADS, LLC, a Florida limited liability company (referred to as the "Mortgagor") and PEDIXON LLC, a Florida limited liability company (the "Mortgagee").

WITNESSETH:

That in consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement of even date herewith between Mortgagor and Mortgagee, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following:

> That property is situated in Brevard County, Florida, and more particularly identified on Exhibit "A" attached hereto, which shall be collectively referred to herein as the "Mortgaged Property" or the "Property".

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee, its successors, and assigns, forever.

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property, and has full power and lawful authority to sell, convey, transfer, and mortgage the same; that the Mortgaged Property is free, clear, and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement executed of even date herewith in the amount FIVE HUNDRED THOUSAND DOLLARS AND NO/CENTS ($500,000.00), subject only to any extensions or future advances made thereunder (the "Loan Amount")

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc

DocuSign Envelope ID: 552A93C0-01F7-411A-9EC7-E2E8C684A6FC

AND Mortgagor does hereby expressly covenant and agree as follows:

1. Payment of Loan. Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of the Loan Agreement, and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2. Taxes, Assessments, Liens, and Charges. Mortgagor shall pay all taxes, assessments, and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach. In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

3. Preservation and Maintenance. Mortgagor shall keep all fixtures, improvements, and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4. Interest on Delinquent Sums. Any sums which shall not be paid when due, whether maturing by lapse of time or by reason of acceleration under the provisions of said Real Property Participation Agreement, and whether principal, interest, or money owing for advancements by the holder pursuant to the terms of this Mortgage, shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

5. Reimbursement of Legal Fees and Costs. In the event, the Loan Agreement is placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents.

6. Acceleration Upon Default. Mortgagor agrees that: (a) if payment of the Loan under said Loan Agreement is not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in this Mortgage (or the Loan Agreement secured hereby) and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of the Loan Agreement and this Mortgage, become due and payable, anything herein or in the Loan Agreement to the contrary notwithstanding.

7. Compliance With Laws and Regulations. Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows: Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8. Future Advances. That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.



Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc

9. Security. The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10. Severability. If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or the Loan Agreement, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Agreement shall remain operative and in full force and effect.

11. Satisfaction of Mortgage. Upon payment to Mortgagee of all sums due under the Loan Agreement and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Brevard County, Florida at the expense of Mortgagor.

12. Changes, Modifications, and Discharges; Enforceability. This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

13. Forbearance by Mortgagee Not a Waiver. Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Agreement. No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant.

14. Notices. Any notice, demand, or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

As to Mortgagee:

PEDIXON LLC
1627 East Vine Street, Suite E
Kissimmee, FL 34744

As to Mortgagor:

CANAVERAL CROSSROADS, LLC
5526 Hansel Avenue
Edgewood, FL 32809

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address. Any such notices properly sent by mail shall be deemed received: (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15. Parties Bound, Construction of Language. The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title and shall inure to the benefit of Mortgagee and its successors and assigns. Wherever used herein, the singular shall include the plural, the plural the singular, and one gender shall include all genders.

DocuSign Envelope ID: 552A93C0-01F7-411A-9EC7-E2E8C684A6FC

IN WITNESS WHEREOF, the Mortgagor has caused this instrument to be executed and delivered and has intended the same to be and become effective as of the day and year first above written.

SIGNED, SEALED, AND DELIVERED
IN THE PRESENCE OF:

MORTGAGOR:

CANAVERAL CROSSROADS, LLC

JLALF INCORPORATED, ITS MANAGER

DocuSigned by:
David Ruiz
5DAEE21F9FA4494...

By: David Ruiz as authorized agent
Of JLALF INCORPORATED

WITNESSES:

Printed name: [illegible]

Printed name: Amy Stevenson

STATE OF FLORIDA,
COUNTY OF ORANGE

The foregoing instrument was sworn to and subscribed before me by means of [ ] physical presence or [ ] online notarization, this 27 day of February 2023 by David Ruiz who [ ] is personally known or [✓] has produced a driver's license as identification.

SEAL

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public-State of Florida



Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc

DocuSign Envelope ID: 552A93C0-01F7-411A-9EC7-E2E8C684A6FC

**EXHIBIT A**

**A parcel of land lying in Section 11, Township 24 South, Range 36 East, Brevard County, Florida being more particularly described as follows:**

**Commence at the Southwest corner of said Section 11; thence North 00 degrees 27 minutes 47 seconds West along the West line of said Section 11 a distance of 126.39 feet to the North right-of-way line of State Road No. 528 as shown on the State of Florida Department of Transportation right-of-way map section 70070-2502, being a non-tangent curve concave to the North having a radius of 1120.92 feet and a radial bearing of South 05 degrees 42 minutes 53 seconds East, being the Point of Beginning of the parcel of land described herein; thence North 00 degrees 27 minutes 47 seconds West, continuing along the said West line of Section 11 a distance of 347.44 feet to the South right-of-way line of the Canaveral Port Authority Barge Canal; thence North 82 degrees 14 minutes 39 seconds East along said South right-of-way line a distance of 588.61 feet to the West right-of-way line of Tingley Drive, a 50 foot right-of-way; thence South 04 degrees 35 minutes 05 seconds East along said West right-of-way line a distance of 258.73 feet to the said North right-of-way line of State Road No. 528; thence South 71 degrees 54 minutes 35 seconds West along said North right-of-way line a distance of 383.61 feet to the point of curvature of said curve concave to the North having a radius of 1120.92 feet; thence Southwesterly along the arc of said curve through a central angle of 12 degrees 22 minutes 32 seconds an arc distance of 242.11 feet to the said West line of Section 11 and the Point of Beginning.**

LESS AND EXCEPT:

**All of Cape Crossing Condominium, a Condominium according to the Declaration of Condominium thereof recorded in Official Records Book 8418, Page 1832, as amended by First Amendment to Declaration recorded in Official Records Book 8802, Page 1136, of the Public Records of Brevard County, Florida.**

ALSO LESS AND EXCEPT:

**All Units of Buildings 3, 4, 5, and 6, described in the Declaration of Covenants, Conditions and Restrictions for Cape Crossing Townhomes recorded in Official Records Book 7626, Page 1747, as amended by First Amendment to Declaration of Covenants, Conditions and Restrictions for Cape Crossing Townhomes recorded in Official Records Book 7735, Page 928, and Second Amendment recorded in Official Records Book 8894, Page 127, of the Public Records of Brevard County, Florida.**

ALSO LESS AND EXCEPT:

**All Units of Buildings 7, 8, 9, 10, and 11, described in Warranty Deed recorded in Official Records Book 8062, Page 189; Special Warranty Deed recorded in Official Records Book 8078, Page 1771; Warranty Deed recorded in Official Records Book 8325, Page 2933; Warranty Deed recorded in Official Records Book 8327, Page 920; Warranty Deed recorded in Official Records Book 8338, Page 1119; Warranty Deed recorded in Official Records Book 8360, Page 353; Warranty Deed recorded in Official Records Book 8371, Page 809; Warranty Deed recorded in Official Records Book 8437, Page 1276; Warranty Deed recorded in Official Records Book 8438, Page 1379; Warranty Deed recorded in Official Records Book 8443, Page 888; Warranty Deed recorded in Official Records Book 8450, Page 382; Warranty Deed recorded in Official Records Book 8512, Page 1154; Warranty Deed recorded in Official Records Book 8579, Page 1626; General Warranty Deed recorded in Official Records Book 8643, Page 1478; Quit Claim Deed recorded in Official Records Book 8918, Page 1204; Quit Claim Deed recorded in Official Records Book 8918, Page 1208; Quit Claim Deed recorded in Official Records Book 8918, Page 1216; and Quit Claim Deed recorded in Official Records Book 9424, Page 466; of the Public Records of Brevard County, Florida.**



Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc

# Exhibit C
# Loan, Security and Cross Collateralization Agreement

# LOAN,
# SECURITY AND
# CROSS COLLATERALIZATION
# AGREEMENT

THIS LOAN, SECURITY, and CROSS COLLATERALIZATION AGREEMENT is made on this 27th day of February 2023, by and between the following:

**PEDIXON LLC, a Florida limited liability company**
("Lender"),

**SHERWOOD CONSTRUCTION, INC., a Florida corporation**
("Borrower").

**CANAVERAL CROSSROADS, LLC**
("Company")

Lender, Borrower, and Guarantors may be referred to as the "Parties."

For good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the Parties agree to the following terms and conditions.

1. **Loan Accommodation.** Borrower has requested a loan accommodation from Lender, and Lender has agreed to extend credit to Borrower a new loan in the amount of **$500,000** ("Current Loan").

2. **Existing Indebtedness.** The Parties agree and acknowledge that as a condition precedent of the Current Loan, HOMEMAKERS REAL ESTATE, LLC and CAPE CROSSING VACATION RENTALS, LLC shall guarantee the following existing indebtedness as of the date hereof: Option and Cross Collateral Loan dated October 7, 2022, evidenced by a promissory note in the amount of $500,000 and an option agreement securing an option to purchase and right of first refusal on several properties. Separate guarantee agreements must be executed by each guarantor prior to making the loan accommodation to Borrower.

3. **Security for the Current Loan** (the "Security Documents").

   **a.** The obligations of the Borrower to repay the Current Loan shall be secured by the Land is described on Exhibit A, and shall be represented by a mortgage recorded in the public records of Brevard County, Florida (the "Mortgage").

   **b.** Company shall execute the Mortgage, and any other documents Lender may require to perfect its security interest.

   **c.** Any documents contemplated hereunder that may be required to perfect the security interest of the Current Loan shall be executed contemporaneously herewith, or from time to time, as the Lender may reasonably request. The Parties shall cooperate to fulfill all of the obligations hereunder, and this covenant shall survive this Agreement.

4. **Note.** Interest shall be charged and repaid in accordance with the Note, which shall include but not be limited to the following terms:

   a. The Current Loan in the amount $500,000

   b. The Interest Rate shall be 12% per annum. Monthly payments based on the outstanding principal balance of the Loan shall be due on the 1st of each consecutive month.

   c. The Loan Fee of TWO PERCENT (2%) shall be paid at closing.

   d. The Term of the Loan shall be twelve (12) months.

5. **Representations and Warranties**. Borrower and Company hereby represents and warrants to the Lender as follows:

   a. Compliance and Authority. It is in compliance with all laws, regulations, ordinances and have the full power and authority to consummate the transactions herein.

   b. Organizational Documents. All documents reflecting its organization have not been modified or amended and the organizational documents will not be in any manner materially changed, modified, or altered without the prior written consent of Lender.

   c. Other Agreements. It is not a part of any agreement or instrument adversely affecting, to a material degree, its present or proposed business, properties, assets, operation, or condition, financial or otherwise, and neither party is in default of the performance, observance, or fulfillment of any of the material obligations, covenants or conditions set forth in any agreement or instrument.

   d. Other Financing. It shall not obtain any additional financing for the Land, and shall not allow any liens or encumbrances of any kind to be filed against the Land.

   e. No Event of Default. No Event of Default exists under this Agreement and no event has occurred and is continuing which, with notice or the passage of time or either, would constitute a default under any provision thereof.

   f. Existing Indebtedness. The mortgage recorded in the Official Records of Brevard County, Florida, Book 8176 Page 930 ("Jetton Mortgage") currently exists as an encumbrance on the Land; and the Jetton Mortgage shall be subordinated to the Current Loan and Mortgage.

6. **Affirmative Covenant.** Borrower and Company hereby covenant and agree to abide by the following covenants from the date hereof and until all indebtedness and obligations incurred in connection with the Current Loan shall have been paid, performed, and discharged in full:

   a. Payment of Costs and Taxes. Promptly pay all costs and taxes incurred in connection with the Land when the same become due and payable.

   b. Performance of Obligations. Duly pay, perform, and discharge all of its obligations hereunder.

c. Compliance with Laws. Promptly and faithfully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations, and requirements of every governmental authority.

d. Existence. Do all things necessary to preserve and maintain in full force and effect the existence as a company under the laws of the State of Florida.

e. Hold Harmless. Defend, at its own cost, and hold Lender harmless from any action, proceeding, or claim affecting the Land.

7. **Negative Covenant.** Borrower and Company further covenant and agree that, from the date hereof and so for long as the Current Loan shall not have been paid in full, as to both principal and interest, it will not:

a. Other Financing. Obtain other financing in connection with the Land without the prior consent of Lender.

b. Security Documents. Create, incur, assume, or permit any assignment, lien, pledge, or other encumbrance upon any of the Security Documents or any interest or equity therein, other than to Lender.

c. Breach of Any Contract. Commit any act, suffer, or permit any act to occur which would, in any manner, give rise to the material breach of any term, covenant, or condition on Borrower's part to be performed under any contract to which it is bound.

d. Judgments. Permit any judgment obtained against Borrower or Company or MTF to remain unpaid for a period of thirty (30) days following the entry thereof.

8. **Default.** Events of Default. The occurrence of any of the following shall constitute an Event of Default hereunder:

a. Default in Payment. Borrower shall fail to make any payment required by the Note executed herewith or any Security Documents, without notice or demand.

b. Performance of Covenants. Borrower and/or Company shall default in the due observance or performance of any covenant or agreement made by Borrower hereunder or under any other agreement between Borrower and Lender related to the Loan, including the Security Documents (other than payment of money) and such default shall continue for a period of fifteen (15) days after written notice thereof from the Lender to Borrower; or

c. Breach of Warranty. Any representation or warranty made by Borrower and/or Company under any statement, instrument, or certificate delivered by Borrower and/or Company, to Lender pursuant to the provisions hereof, under any other agreement between the Borrower and Lender, including the Security Documents, or otherwise, shall be determined by Lender to have been false or misleading in any material respect as of the date on which the same was made; or



Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc

d. Failure to Pay Other Debts. The Borrower fails to pay any other debt to the Lender in a timely manner; or

9. **Remedies.** If an Event of Default shall occur and be continuing, Lender may, at its option:

a. Acceleration. Declare all amounts previously advanced to Borrower hereunder and under the Note, and all interest accrued and unpaid thereon, and all other amounts due under the Note and this agreement to be immediately due and payable without presentment, demand, protest or further notice of any kind (all of which hereby are expressly waived) and Lender may thereupon institute proceedings to collect the same and/or foreclose the 650 Mortgage.

b. Enforcement of Security. Exercise its rights and remedies under the Note, and any other agreement between Borrower and Lender, including the Security Documents, in accordance with the respective terms thereof.

**10. ADDITIONAL TERMS**

**a.** Loan Expenses. Borrower shall pay all costs and expenses in connection with the Loan including, but not limited to, broker's fees and commissions, attorneys' fees, documentary, intangible and other taxes, recording costs, and expenses.

**b.** Further Assurances. Borrower and Lender agree that at any time, and from time and time, after the execution and delivery of this Agreement, it shall, execute and deliver such further documents and do such further acts and things in order to more fully effectuate the purposes of this Agreement.

**c.** Governing Law. This Agreement shall be governed by and be construed in accordance with the laws of the State of Florida.

**d.** Severability. In case any one or more of the provisions of this Agreement shall be invalid, illegal, or unenforceable in any respect, the validity of the remaining provisions shall be in no way affected, prejudiced, or disturbed thereby.

**e.** Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one agreement.

**f.** Entire Agreement. This Agreement contains the entire agreement between Lender and Borrower with respect to the subject matter hereof and supersedes and cancels any prior understandings and agreements among Lender and Borrower with respect to the subject matter hereof.

**g.** Gender. The use of any gender shall include all other genders. The singular shall include the plural and vice versa.

**h.** Survival of Provisions. All covenants, agreements, representations, and warranties made in this Agreement and the documents delivered in support of the Loan shall be deemed to have been material and relied on by the Lender and shall survive the execution and

delivery to the Lender of the Note, the Security Documents and the disbursement and advance of funds pursuant to the Loan.

i. Exhibits. The following exhibits annexed hereto are incorporated herein by reference and form a part of this Agreement: **Exhibit A:** Land

j. Headings. The headings of the articles, sections, and subsections of this Agreement are for convenience and reference only and shall not be considered a part hereof nor shall they be deemed to limit or otherwise affect any of the terms or provisions hereof.

The Parties hereto have executed this Agreement as of the day and year first above written.

**SHERWOOD CONSTRUCTION, INC.**

DocuSigned by:
Martin C. Flynn, Jr.
8788014E49D94EA...

By: Martin C. Flynn, Jr., President

**CANAVERAL CROSSROADS, LLC**

**JLALF INCORPORATED, ITS MANAGER**

DocuSigned by:
David Ruiz
5DAEE21F9FA4494...

By: David Ruiz, as authorized agent OF
JLALF INCORPORATED

ACKNOWLEDGED AND AGREED BY LENDER

**LENDER: PEDIXON LLC**

DocuSigned by:
5B0B99603253463...

By: Kenneth G. Dixon, Manager



Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc

EXHIBIT A – LAND
(Brevard County)

**A parcel of land lying in Section 11, Township 24 South, Range 36 East, Brevard County, Florida being more particularly described as follows:**

**Commence at the Southwest corner of said Section 11; thence North 00 degrees 27 minutes 47 seconds West along the West line of said Section 11 a distance of 126.39 feet to the North right-of-way line of State Road No. 528 as shown on the State of Florida Department of Transportation right-of-way map section 70070-2502, being a non-tangent curve concave to the North having a radius of 1120.92 feet and a radial bearing of South 05 degrees 42 minutes 53 seconds East, being the Point of Beginning of the parcel of land described herein; thence North 00 degrees 27 minutes 47 seconds West, continuing along the said West line of Section 11 a distance of 347.44 feet to the South right-of-way line of the Canaveral Port Authority Barge Canal; thence North 82 degrees 14 minutes 39 seconds East along said South right-of-way line a distance of 588.61 feet to the West right-of-way line of Tingley Drive, a 50 foot right-of-way; thence South 04 degrees 35 minutes 05 seconds East along said West right-of-way line a distance of 258.73 feet to the said North right-of-way line of State Road No. 528; thence South 71 degrees 54 minutes 35 seconds West along said North right-of-way line a distance of 383.61 feet to the point of curvature of said curve concave to the North having a radius of 1120.92 feet; thence Southwesterly along the arc of said curve through a central angle of 12 degrees 22 minutes 32 seconds an arc distance of 242.11 feet to the said West line of Section 11 and the Point of Beginning.**

**LESS AND EXCEPT:**

**All of Cape Crossing Condominium, a Condominium according to the Declaration of Condominium thereof recorded in Official Records Book 8418, Page 1832, as amended by First Amendment to Declaration recorded in Official Records Book 8802, Page 1136, of the Public Records of Brevard County, Florida.**

**ALSO LESS AND EXCEPT:**

**All Units of Buildings 3, 4, 5, and 6, described in the Declaration of Covenants, Conditions and Restrictions for Cape Crossing Townhomes recorded in Official Records Book 7626, Page 1747, as amended by First Amendment to Declaration of Covenants, Conditions, and Restrictions for Cape Crossing Townhomes recorded in Official Records Book 7735, Page 928, and Second Amendment recorded in Official Records Book 8894, Page 127, of the Public Records of Brevard County, Florida.**

**ALSO LESS AND EXCEPT:**

**All Units of Buildings 7, 8, 9, 10, and 11, described in Warranty Deed recorded in Official Records Book 8062, Page 189; Special Warranty Deed recorded in Official Records Book 8078, Page 1771; Warranty Deed recorded in Official Records Book 8325, Page 2933; Warranty Deed recorded in Official Records Book 8327, Page 920; Warranty Deed recorded in Official Records Book 8338, Page 1119; Warranty Deed recorded in Official Records Book 8360, Page 353; Warranty Deed recorded in Official Records Book 8371, Page 809; Warranty Deed recorded in Official Records Book 8437, Page 1276; Warranty Deed recorded in Official Records Book 8438, Page 1379; Warranty Deed recorded in Official Records Book 8443, Page 888; Warranty Deed recorded in Official Records Book 8450, Page 382; Warranty Deed recorded in Official Records Book 8512, Page 1154; Warranty Deed recorded in Official Records Book 8579, Page 1626; General Warranty Deed recorded in Official Records Book 8643, Page 1478; Quit Claim Deed recorded in Official Records Book 8918, Page 1204; Quit Claim Deed recorded in Official Records Book 8918, Page 1208; Quit Claim Deed recorded in Official Records Book 8918, Page 1216; and Quit Claim Deed recorded in Official Records Book 9424, Page 466; of the Public Records of Brevard County, Florida.**



Doc ID: f0893610439a85746c09b31b2bd52d249b9d3bdc