**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

CANAVERAL CROSSROADS, LLC,
SHERWOOD CONSTRUCTION, INC.,

Debtors.
_______________________________/

Case No. 6:26-bk-05426-GER
Chapter 11

Jointly Administered with
Case No. 6:26-bk-05428-GER

# DEBTOR'S OBJECTION TO CLAIM 7-1 OF CHERRY VILLAGE GP, LLC ON A NOTE THAT ITS PARTNERSHIP'S DEBT TO SHERWOOD EXCEEDS

(Applies to Sherwood Construction, Inc., Case No. 6:26-bk-05428-GER, only)

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at George C. Young Federal Courthouse, 400 West Washington Street, Suite 5100, Orlando, Florida 32801 within thirty days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

Cherry Village GP, LLC asks to be paid $1,681,224.34 on a promissory note that, by its own terms, carries "no interest." The note allows interest after default only at "the highest lawful rate then in effect." Cherry Village says that rate was

12.50 percent per annum. It then charges more than that by counting a 360-day year. The note does not allow the excess, and the Bankruptcy Code disallows what the note does not allow. *11 U.S.C. § 502(b)(1).* What remains is less than what Cherry Village's own partnership owes Sherwood Construction, Inc. on the construction contract that the note financed. The owner ended that contract for its convenience in July 2024. It then kept Sherwood's last draw and retainage, and its lender drew the $1,008,673.80 letter of credit that Sherwood had furnished in place of a bond. Those sums come to $1,786,151.48. Recouped against the note, they leave nothing to allow.

Sherwood objects to the following claim and concedes no amount of it. *M.D. Fla. Bankr. L.R. 3007-1(a).*

| | |
|---|---|
| Claim 7-1 — Cherry Village GP, LLC (unsecured, note) | $1,681,224.34 |
| Most the note allows | $1,676,627.48 |
| Owed to Sherwood on the construction contract | $1,786,151.48 |
| Amount conceded | $0.00 |

**Cherry Village lent on a note that bears no interest until default.**

1. On January 24, 2024, Sherwood signed a Promissory Note for $1,345,726.29 payable to Cherry Village GP, LLC. (Ex. 1, Part 2 ¶ 7 & at 8). Martin C. Flynn, Jr. signed it as Sherwood's president. (*Id.* at 9). The note promises the principal "with no interest thereon," due in full on August 1, 2024. (*Id.* at 8). It then provides: "The whole of the Principal sum shall bear, after

default, interest at the highest lawful rate then in effect pursuant to applicable law." (*Id.*). Tennessee law governs. (*Id.*).

2. Cherry Village's counsel prepared the note. Its footer carries document number 4860-9222-9788, in the same form as the 4930-6570-3698 on the complaint that counsel filed. (*Id.* at 1, 8).

3. On November 6, 2025, Cherry Village sued Sherwood and Flynn on the note, and for fraud, unjust enrichment, and a declaration piercing Sherwood's corporate veil. *Cherry Village GP, LLC v. Sherwood Construction, Inc.*, No. 25-1562-I (Tenn. Ch. Ct. Davidson Cnty. 2025). (Ex. 1, Part 2 at 1–7). The complaint alleges that "the highest lawful interest rate in effect in Tennessee was 12.50% per annum, or at the rate of $467.27 per day." (*Id.* ¶ 23). Sherwood's petition stayed that action as to Sherwood. *11 U.S.C. § 362(a)(1).*

4. On July 20, 2026, the petition was filed. (Sherwood Doc. 1). Sherwood scheduled the note at $1,345,726.29 and marked it disputed. (Sherwood Doc. 28 at 21). On September 28, 2026, Cherry Village filed Claim 7-1 for $1,681,224.34 as "money loaned," stating that the amount includes interest. (Ex. 1, lines 7–8). The claim is the principal plus 718 days of interest at $467.27 a day, from the August 1, 2024 maturity to the petition date, within $1.81.

**The note allows no more than 12.50 percent a year, and Cherry Village charged more.**

5. The note states no rate of its own. It adopts the ceiling Tennessee law sets, and for a written contract signed by the party to be charged that ceiling is "the applicable formula rate." *Tenn. Code Ann. § 47-14-103(2).* Cherry Village pleads that the ceiling was 12.50 percent per annum at default. (Ex. 1, Part 2 ¶ 23). Sherwood accepts that figure for this objection only.

6. A rate per annum is a charge for a year, and a year has 365 days. Cherry Village's per-diem divides the annual charge by 360:

| | |
|---|---|
| Principal | $1,345,726.29 |
| 12.50 percent ÷ 360 days (claimed per day) | $467.27 |
| 12.50 percent ÷ 365 days (per day) | $460.87 |
| Annual rate the claimed per-diem yields | 12.67% |

7. A rate stated per annum fixes the interest charge for a year. Whether a lender may count that charge over 360 days turns on what the parties intended, and a lender may use a 360-day year where the borrower agreed to it. *First Am. Nat'l Bank of Nashville v. Hunter*, 581 S.W.2d 655, 659 (Tenn. Ct. App. 1978). Sherwood agreed to no such thing. The note says nothing about a 360-day year, and the rate it adopts comes from the statute, not from any bargain over days. Any doubt runs against Cherry Village, whose counsel wrote the note. "An ambiguous provision in a contract generally will be construed against the party drafting it." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 612 (Tenn. 2006).

8. The 360-day count does more than stretch a phrase. The note grants interest at the highest lawful rate and at nothing above it. Interest at 12.67 percent, on Cherry Village's own premise, exceeds the highest lawful rate, so the note does not provide for it. A claim is disallowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." *11 U.S.C. § 502(b)(1)*. Measured at 365 days, the note allows no more than this:

| | |
|---|---|
| Principal | $1,345,726.29 |
| Interest, 8/1/24 to 7/20/26, 718 days at $460.87 | 330,901.19 |
| Most the note allows | $1,676,627.48 |
| Claim 7-1 | $1,681,224.34 |
| Overstatement | $4,596.86 |

9. That is the most the claim can be, not what it is. The note's rate is the ceiling "then in effect," and the Tennessee formula rate moves weekly with the prime rate. It stood at 11.00 percent per annum on September 29, 2026. (Ex. 2). Read against its drafter, the note carries the ceiling in effect as each day's interest accrued, not the ceiling on the day of default. Sherwood objects to the fixed 12.50 percent rate and holds Cherry Village to proof of the rate in effect for each period it claims.

**The note and the construction contract are one transaction, and Cherry Village's general partner answers for the contract.**

10. On December 8, 2022, Cherry Village, L.P., a Florida limited partnership, contracted with Sherwood to rehabilitate its 147-unit apartment

development in Homestead. (Ex. 3, preamble; Ex. 1, Part 2 ¶ 9). The contract incorporates the AIA A201-2017 General Conditions, except their provisions for binding arbitration. (Ex. 3, art. 2). Cherry Village GP, LLC is the partnership's general partner. (Ex. 1, Part 2 ¶ 9). It pleads that Sherwood borrowed the money to complete that renovation, and that it would not have lent it for any other purpose. (*Id.* ¶¶ 13, 17). To be sure, its agents made other representations, but this is what Cherry Village pleaded. By the claimant's own account, the note and the construction contract are one transaction.

11. A general partner is liable "jointly and severally for all obligations of the limited partnership unless otherwise agreed by the claimant or provided by law." *Fla. Stat. § 620.1404(1).* Cherry Village GP, LLC answers for its partnership's debt to Sherwood under the construction contract.

**The owner ended the contract for its own convenience, and the contract required it to pay for the work done.**

12. The contract gives the owner two ways to end it. To terminate for cause, the owner needs the architect's certification "that sufficient cause exists" and must give the contractor "seven days' notice." (Ex. 3, A201 § 14.2.2). To terminate for convenience, it needs no cause at all; it "may, at any time, terminate the Contract for the Owner's convenience and without cause." (*Id.*, A201 § 14.4.1). The

contractor then must “cease operations as directed by the Owner” and “terminate all existing subcontracts and purchase orders.” (*Id.*, A201 § 14.4.2).

13. In July 2024, the owner’s representatives told Sherwood by telephone that the owner would finish the project with another contractor, that Sherwood was to stop work that day, and that Sherwood was to end its subcontracts. (Ex. 6). Sherwood did exactly that. (*Id.*). The owner gave no architect’s certification and no seven days’ notice. Its own later notice fixes July 10, 2024 as the day the work stopped and the subcontractors were told to stop. (Ex. 5 at 1). That notice, dated January 27, 2025, purported to terminate for cause six months after the owner had sent Sherwood off the job. (*Id.* at 1–2). A contract the owner had already ended could not be terminated again. What the owner did in July 2024 is what A201 § 14.4 describes: it ended the contract without cause and directed Sherwood to stop work and end its subcontracts.

14. On a termination for convenience, “the Owner shall pay the Contractor for Work properly executed; costs incurred by reason of the termination, including costs attributable to termination of Subcontracts; and the termination fee, if any.” (Ex. 3, A201 § 14.4.3). Every dollar Sherwood earned through the date of termination became due.

**The owner kept $1,786,151.48 that belongs to Sherwood, more than the note can be worth.**

15. Sherwood's last application for payment, No. 16, for the period ending June 25, 2024, showed $118,586.29 due for work completed and $658,891.39 of retainage withheld on work completed and materials stored. (Ex. 4). The owner paid neither.

16. The contract required Sherwood to furnish assurance running to the owner and its lender. (Ex. 3, art. 8). In place of a bond, Sherwood caused First State Bank of the Florida Keys to issue its Irrevocable Unconditional Letter of Credit No. 154-1214 for $1,008,673.80 to the owner's HUD lender, Walker & Dunlop, LLC, for FHA Project No. 066-35381, the Cherry Village rehabilitation. (Ex. 8, Composite Ex.). A certificate of deposit at First State Bank secured the letter. The certificate was issued in the name of Kenneth G. Dixon, who pledged it to the bank to secure Sherwood's reimbursement obligation. (*Id.*). Dixon made a $1,000,000 loan to Sherwood by means of that certificate. (Adv. No. 6:26-ap-00198, Doc. 1 ¶¶ 36(d), 100–03). On February 20, 2024, Sherwood assigned its interest in the certificate to Trent Development Group as security for the Cherry Village and Austin Commons notes, and the assignment provides that the interest reverts to Sherwood when the notes are satisfied. (Ex. 8). On August 15, 2024, five weeks after the owner ended the contract for convenience, Walker & Dunlop drew the letter of credit for its full face, and the bank applied the certificate to

Sherwood's reimbursement obligation. (Ex. 7). The letter stood in place of a bond securing Sherwood's obligations under the contract. A termination for convenience is not a failure by the contractor, and nothing in A201 § 14.4 lets the owner side keep the contractor's security when the owner chooses to end the job. Sherwood funded that security with money it borrowed, which the lender contends Sherwood still owes. (Sherwood Doc. 28 at 25 (PEDixon, LLC, $2,100,000, disputed)). Those funds belong to Sherwood.

| | |
|---|---|
| Application No. 16 — unpaid | $118,586.29 |
| Retainage withheld | 658,891.39 |
| Certificate of deposit funds (letter of credit drawn 8/15/24) | 1,008,673.80 |
| Owed to Sherwood | $1,786,151.48 |
| Most Claim 7-1 can be | $1,676,627.48 |
| Excess owed to Sherwood | $109,524.00 |

**Recoupment extinguishes Claim 7-1.**

17. Recoupment is "the setting off against asserted liability of a counterclaim arising out of the same transaction." *Reiter v. Cooper*, 507 U.S. 258, 264 (1993). Cherry Village lent on the note to fund the construction contract, and Sherwood's claims arise from that same contract. The certificate of deposit was also security for this very note. Its proceeds went to the owner's lender for the owner's benefit, and they must be credited against the note. Recouped against the note, Sherwood's claims exceed the most the claim can be, and nothing remains to allow.

18. This objection seeks only to determine the claim. What the owner kept is only part of what ending the contract cost Sherwood, which also lost its costs beyond its billings, the cost of the loan that funded its security, and the value of extra work the owner asked for. Sherwood does not ask the court here to award it any of those sums, or the $109,524.00 by which its contract claims exceed Claim 7-1. It reserves those claims, including recovery of the certificate-of-deposit funds paid to Walker & Dunlop, LLC, for an adversary proceeding. *Fed. R. Bankr. P. 3007(b).* If Cherry Village disputes a fact, an evidentiary hearing will resolve it. *Fed. R. Bankr. P. 9014.*

**Claim 7-1 asserts the note alone, and nothing else may be added to it.**

19. Claim 7-1 states its basis as "money loaned." (Ex. 1, line 8). The complaint attached to it also pleads fraud, unjust enrichment, and veil-piercing, but those counts seek recovery from Flynn, and the claim assigns no amount to them. (Ex. 1, Part 2 ¶¶ 26–38). The note provides for "reasonable attorneys' fees" on collection, and the claim asserts none. (*Id.* at 8). Sherwood denies the fraud allegations and objects to any amendment that adds fraud damages, fees, or costs.

RELIEF REQUESTED

The note does not allow the interest Cherry Village claims, and its partnership owes Sherwood more than the rest. The law requires the court to:

a. sustain this objection;

b. determine that Claim 7-1 can be no more than $1,676,627.48, the principal plus interest at no more than 12.50 percent per annum on a 365-day year from August 1, 2024 to July 20, 2026;

c. determine that Sherwood's claims under the construction contract, for $1,786,151.48, are recouped against Claim 7-1;

d. disallow Claim 7-1 in its entirety under *11 U.S.C. § 502(b)(1)*; and

e. if Cherry Village timely files a response, set a preliminary hearing to fix a schedule for any evidentiary hearing.

Respectfully submitted this 13th day of October, 2026.

/s/ Christopher L. Smith

Christopher L. Smith, Esq.

Florida Bar No. 367461

Fromang & Smith, P.A.

4767 New Broad Street

Orlando, Florida 32814

(407) 999-9739

chris@fromangsmith.com

Counsel for the Debtors in Possession

EXHIBITS

| | |
|---|---|
| Exhibit 1. | Claim 7-1 of Cherry Village GP, LLC, filed September 28, 2026, with the complaint in No. 25-1562-I, the Promissory Note, and the balance sheets attached to the complaint (Part 2). |
| Exhibit 2. | Tennessee Department of Financial Institutions, Announcement of Maximum Effective Formula Rate of Interest and Historical Listing |

of Formula Rates under Tenn. Code Ann. § 47-14-103(2), July 30, 2024 through October 6, 2026.

Exhibit 3. Construction Contract (HUD-92442M) between Cherry Village, L.P. and Sherwood Construction, Inc., dated December 8, 2022, with the AIA A201-2017 General Conditions (excerpts).

Exhibit 4. Application and Certificate for Payment No. 16 (AIA G702–G703), period ending June 25, 2024.

Exhibit 5. Notice of Termination for Cause from the owner’s counsel, dated January 27, 2025, with the architect’s certification.

Exhibit 6. Letter of Sherwood’s counsel to the owner’s counsel, dated February 13, 2025.

Exhibit 7. First State Bank of the Florida Keys, Notice and Demand for Payment, dated August 19, 2024, and Notice of Application of Account Proceeds to Indebtedness, dated August 27, 2024.

Exhibit 8. Assignment of Beneficial Interest in Certificate of Deposit from Sherwood Construction, Inc. to Trent Development Group, dated February 20, 2024, with the resolution of Sherwood’s board of directors of the same date and the composite exhibits attached to the assignment, including First State Bank’s Irrevocable Unconditional Letter of Credit No. 154-1214 dated December 14, 2022, the certificate of deposit receipt and the Assignment of Deposit Account (personal identifiers and account numbers redacted under Fed. R. Bankr. P. 9037).

CERTIFICATE OF SERVICE

I certify that on October 13, 2026, I filed this objection with the clerk of court through the CM/ECF system, which served it electronically on every party registered for electronic notice in this case and in Case No. 6:26-bk-05428-GER, including the United States Trustee. Counsel for the Debtors in Possession filed it, and no trustee has been appointed in either case. Fed. R. Bankr. P. 3007(a)(2)(B). On the same day, I served this objection, its notice, and its exhibits by first-class United States mail, postage prepaid, on Joseph R. Prochaska, who signed Claim 7-1 as attorney in fact for Cherry Village GP, LLC and is the person Part 1, box 3, of the claim designates to receive notices, at the address stated there, and on Cherry Village GP, LLC itself at its address on the Court's mailing matrix. Fed. R. Bankr. P. 3007(a)(2)(A); M.D. Fla. Bankr. L.R. 3007-1(b).

Signer of Claim 7-1 and notice party designated on it:
Cherry Village GP, LLC
c/o Joseph R. Prochaska
Reno & Cavanaugh, PLLC
424 Church Street Suite 2910
Nashville, TN 37219

The claimant, at its address on the Court's mailing matrix (the matrix lists it as "Trent - Cherry Village Note"):
Cherry Village GP, LLC
Attn: Robert Kyle Trent, Managing Member
c/o Cherry Village, L.P.
421 NE 12th Avenue
Homestead, Florida 33030

/s/ Christopher L. Smith

Christopher L. Smith, Esq.