In re Canaveral Crossroads, LLC and Sherwood Construction, Inc.

Case No. 6:26-bk-05426-GER, jointly administered with Case No. 6:26-bk-05428-GER

Debtor’s Objection to Claim 7-1 of Cherry Village GP, LLC

# EXHIBIT 6

Letter of Sherwood’s counsel to the owner’s counsel,
dated February 13, 2025.

PINO LAW GROUP

***From the Desk of***
*Miranda S. Ratcliffe, Esquire*

February 13, 2025

**SENT VIA E-MAIL:**
**tony@anthonywoodwardpa.com**

Anthony (Pierce) Woodward, Esq.
Woodward Law
14851 State Road 52
Unit 107 PMB #420
Hudson, Florida 34669

**Re: Construction Contract between Sherwood Construction, Inc. and Cherry Village, L.P.**

Dear Counselor,

Our law firm represents Sherwood Construction, Inc. in connection with the above-referenced matter and is in receipt of your *Notice of Termination for Cause* dated January 17, 2025.

As you know, Cherry Village, L.P. ("Owner") and Sherwood Construction, Inc. ("Contractor") entered into the *Construction Contract* on or about December 8, 2022 in connection with the Cherry Village rehabilitation project for the 147-unit apartment complex located at 411 NE 12th Avenue, Homestead, FL 33030 along with the common areas of the property (the "Project"). Contrary to the contents of your Notice, there is no contract to be terminated for cause, since, on July 10, 2024, the *Construction Contract* was terminated for convenience by the Owner.

Notably, your client's *Notice of Termination for Cause* dated January 17, 2025 purporting to terminate the *Construction Contract* has no effect since your client already terminated the *Construction Contract*:

- As per section 14.2.2, when any of the reason described in Section 14.2.1 exist, and upon certification by the Architect that sufficient cause exists to justify such action, the Owner may, without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' notice, terminate employment of the Contractor and may, subject to any prior rights of the surety: (1) exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and

DRAFT

machinery thereon owned by the Contractor; (2) accept assignment of subcontractors pursuant to Section 5.4; and (3) finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

- The Owner failed to comply with section 14.2.2., and instead, on July 10, 2024, verbally terminated the *Construction Contract* without any notice.

- Consequently, the Owner caused work on the Project to stop at the sole direction of the Owners' representatives.

Therefore, by the terms of the *Construction Contract*, the Owners caused a Termination by the Owner for Convenience:

- As per section 14.4.1, the Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

- Consequently, Contractor complied with section 14.4.2 and ceased operations as directed by the Owner and took actions necessary that the Owner directed.

- Pursuant to section 14.4.3, in the case of such termination for the Owner's convenience, the Owner shall pay the Contractor for Work properly executed; costs incurred by reason of the termination, including costs attributable to termination of Subcontracts; and the termination fee, if any, set forth in the Agreement.

In July of 2024, two of the Owner's representatives expressly told three of the Contractor's representatives that the Owner was going to pursue a different course on the *Construction Contract*. When asked what this meant, the Contractor's representatives were told that the Owners did not need the Contractor to finish the job, since the Owners were getting another contractor. The Contractor's representatives asked if anything needed to be done and when it would need to happen, to which the Owners' representatives stated no, and it needed to be done that day. The Owners stated that they may want some of the subcontractors to continue working, for example, the roofer. The Contractor's representatives said they would talk with the subcontractors to terminate their respective contracts and direct them to the Owners' representatives about potentially continuing working directly with the Owner. The Contractor's representatives said "thank you very much", the Contractor would follow the Owners' directions, stop work, end subcontractor work, and have workers off jobsite by the end of day. Consequently, the Owner terminated the *Construction Contract* for convenience.

Moreover, your client's statement made within its *Notice of Termination for Cause* dated January 17, 2025 that the Contractor failed to disclose liabilities in excess of $20,000,000 is false, ludicrous, and libelous. Therefore, our client demands that the Owners identify any alleged fraudulent statements made by the Contractor in the underwriting process.

Your client's statement that funds were misappropriated reveals a lack of knowledge on your part that the Contractor paid substantially more Cherry Village construction related costs

DRAFT

than it received in Cherry Village draw payments from the Owner. Consequently, there were no funds to be misappropriated. Please review interim job costing reports previously provided to your clients. Payments were made with the knowledge and collaboration of your clients.

In regards to progress statements made in your client's *Notice of Termination for Cause* dated January 17, 2025, the project faced severe challenges from labor and supply chain shortages from the COVID-19 pandemic which affected all construction projects similarly; in addition, delays had as much to do with the initial direction from ownership to do renovation work while tenants remained in their units as well as with a grossly underbudgeted project.

Again, we sincerely hope that this matter can be resolved through mediation. Nonetheless, our client reserves the right to proceed with arbitration as outlined in the Construction Contract. This letter does not constitute a complete statement of our client's claims, rights, or remedies with respect to this matter, all of which are hereby expressly reserved.

Thank you for your attention to this matter. Please feel free to contact our office if you have any questions or comments.

Respectfully,

Miranda S. Ratcliffe, Esq.
For the Firm

DRAFT