FILED ORL INTAKE- USBC
17 NOV 2026 PM1:20

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

CANAVERAL CROSSROADS, LLC,
and
SHERWOOD CONSTRUCTION,
INC.,

Debtors.
_______________________________/

Chapter 11

Case No. 6:26-bk-05426-GER
Case No. 6:26-bk-05428-GER

Jointly Administered under
Case No. 6:26-bk-05426-GER

Applies to Canaveral Crossroads, LLC only

**Frank L. Amodeo's Memorandum of Law in Support of Canaveral Crossroads, LLC's Motion to Approve Compromise of Controversy**

The Settlement Agreement is an eighty-four-page global compromise among twenty-six persons and entities. Crossroads is one of them, and so am I. (Settlement Agreement § 2.2(l), (q)). The Settlement Agreement ends the litigation among the Dixon Parties, the Pitkanen Parties, the Flynn-Johnson Parties, and Yaniv Amar in federal and state courts. (*Id.* § 8.1 & Ex. A). The matters the Settlement Agreement resolves include:

- ten state-court actions and proceedings in Osceola, Orange, and Brevard Counties;
- two adversary proceedings in this court;
- an appeal pending in the United States District Court for the Middle District of Florida;
- proofs of claim, objections, and motions in four bankruptcy cases, those of Homemakers Real Estate, LLC, Martin C. Flynn, Jr., Sherwood Construction, Inc., and Crossroads; and
- a civil theft demand.

The Settlement Agreement takes effect only after this court and the court in each of the other three bankruptcy cases approve the Settlement Agreement, and the approval orders become final. (*Id.* §§ 3.1, 14.2).

**The Proposed Settlement: Crossroads gives up a small claim for a clouded title and receives $30,000, a clear title, and Crossroads' exit from the litigation.**

Crossroads is not a borrower, a lender, a guarantor, or an obligor on any Dixon loan. Crossroads' only connection to the Dixon loans is that a small portion of Crossroads' property stands as surety for a $500,000 loan. On February 27, 2023, Crossroads gave PEDixon a mortgage on that portion of Crossroads' real property to secure $500,000. On March 3, 2023, PEDixon recorded the mortgage in Official Records Book 9731, Page 1341, Public Records of Brevard County, Florida (the "Crossroads Mortgage"). On September 28, 2026, PEDixon filed Claim 13-1 for $500,000, secured by the Crossroads Mortgage, and Crossroads objected. (Doc. 77).

Under the Settlement Agreement, Crossroads surrenders a cause of action against PEDixon, but that cause of action is relatively insignificant. The claim is that PEDixon clouded the title to a portion of Crossroads' property. The extent to which PEDixon clouded the title cannot be disputed. The parties do dispute the validity of the documents that created the security interest in the first place. The damages are not substantial. Crossroads suffered some loss because the property carried a false encumbrance, but no more than that.

What Crossroads receives under the Settlement Agreement is just about the best outcome possible:

- The Dixon Payor Parties pay Crossroads $30,000 in cash. (Settlement Agreement § 5.1).
- PEDixon withdraws Claim 13-1 with prejudice. (*Id.* § 8.4 & Ex. A).
- The Dixon Parties release the Crossroads Mortgage and every other lien and recorded interest any Dixon Party asserts against Crossroads' property, and deliver releases in recordable form. (*Id.* §§ 7.1, 7.2 & Ex. E).
- Crossroads and the Dixon Parties, and Crossroads and the Pitkanen Parties, release one another. (*Id.* §§ 9.1, 9.2, 9.9).

Crossroads receives cash, saves the considerable expense of clearing the title, and has the title cleared exactly as Crossroads wishes. Crossroads pays nothing.

With the title cleared, the state-court actions that involve the Dixon Parties, especially those involving Crescent Sound, Ltd. and IMQA Investments, Incorporated, are resolved from Crossroads' perspective. (*Id.* § 8.1 & Ex. A). Crossroads no longer has to participate in them, either as a plaintiff or as a defendant.

The Settlement Agreement also preserves what Crossroads must keep. No release benefits the Excluded Persons, and the Settlement Agreement releases no claim between Crossroads and Sherwood Construction, Inc. (*Id.* § 9.6(c), (e) & Sch. 2.4).

**This court approves a compromise that serves the estate, measured by the Justice Oaks four-part analysis, unless the compromise falls below the lowest point in the range of reasonableness.**

This court recognized the governing framework for approving a compromise and settlement proposed by a trustee or debtor-in-possession. *In re Huckleberry Partners, LLC*, 2023 WL 8453520, at *3 (Bankr. M.D. Fla. 2023) (quoting Fed. R. Bankr. P. 9019 and *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990)), *aff'd*, 2024 WL 4332610 (M.D. Fla. Sept. 27, 2024). A debtor-in-possession holds the trustee's power to seek that approval. *11 U.S.C. § 1107(a)*. This court articulated the four-part analysis:

1. probability of success in litigation;
2. difficulty in collection;
3. complexity and expense of litigation; and
4. deference to the reasonable views of creditors.

*Huckleberry*, 2023 WL 8453520, at *3.

This court explained that these considerations assist it in determining "the fairness, reasonableness, and adequacy of a proposed settlement agreement." This court explicated further that a "bankruptcy court should decline to approve a proposed compromise only when the compromise falls 'below the lowest point in the range of reasonableness.'" *Id.* at *3 (citing *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007)).

The district court affirmed this court's approval of the *Huckleberry* settlement. *In re Huckleberry Partners LLC*, 2024 WL 4332610, at *1 (M.D. Fla. Sept. 27, 2024). The bankruptcy court need not decide the merits of the Crossroads-Dixon claims but only consider the probability that those claims would succeed. *Id.* at *6 ("To do so, the bankruptcy judge has only to canvass the issues."). Within the range of reasonableness, a court must "make a pragmatic decision based on all [of the] equitable factors." *In re BAMC Development Holding, LLC*, 2025 WL 770521, at *22 (M.D. Fla. Mar. 11, 2025) (quoting *Huckleberry*, 2024 WL 4332610, at *5).

Measured against the four-part analysis, this settlement does not approach the lowest point in the range of reasonableness. The settlement sits near the top of it.

**1. Probability of success: Crossroads would likely show the cloud on Crossroads' title, but PEDixon holds colorable defenses and the damages would be small.**

The first part of the analysis is the probability of success in the litigation. Crossroads would likely establish that the Crossroads Mortgage clouded Crossroads' title. The extent of the cloud cannot be disputed. Crossroads also objected to Claim 13-1 on the ground that the obligation the Crossroads Mortgage secures is unenforceable under the Florida usury statutes. (Doc. 77).

Florida law allows exemplary damages against a party that slanders title. *Glusman v. Lieberman*, 285 So. 2d 29, 31 (Fla. 4th DCA 1973). The Florida statute permits those damages only on proof of intentional misconduct or gross negligence. *Fla. Stat. § 768.72(2)*. PEDixon, however, holds colorable arguments that PEDixon did not cloud the title, that any cloud was not improper, and that any error resulted from the advice of PEDixon's counsel. The parties also dispute the validity of the documents that created the security interest. The likelihood is that any damage award from a Crossroads action against PEDixon would be relatively small.

**2. Difficulty in collection: Any small award would arrive only after judgment and appeal.**

The second part of the analysis is the difficulty to be encountered in collection. Collection would begin only at the conclusion of the litigation. Mr. Dixon could easily bond any judgment for appeal. A small award, collected years from now, is worth less to the estate than $30,000 in cash and a clear title today.

**3. Complexity: Clearing the title through litigation would cost Crossroads more than the claim is worth.**

The third part of the analysis is the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it. The Crossroads claim sits inside the same web of litigation that binds the other estates: ten state-court actions and federal proceedings in four bankruptcy cases. Already, the parties have spent an estimated $2,000,000 in professional costs, expenses, and fees, and the extant litigation is not even halfway through discovery.

Without the settlement, Crossroads would have to prosecute the objection to Claim 13-1, with competing expert testimony on usury, and then litigate the validity of the documents behind the Crossroads Mortgage. The Settlement

Agreement accomplishes the same result without that cost: PEDixon withdraws Claim 13-1 and releases the Crossroads Mortgage of record.

**4. Paramount interest of creditors: Removing a $500,000 secured claim and clearing the title serves every creditor of Crossroads.**

The fourth part of the analysis is the paramount interest of the creditors and a proper deference to their reasonable views. The withdrawal of Claim 13-1 removes a $500,000 secured claim that would otherwise stand ahead of every unsecured creditor of Crossroads. The release of the Crossroads Mortgage clears Crossroads' real property of that lien. The $30,000 payment adds cash to the estate.

Crossroads' creditors gain a clear title, a smaller secured debt, and an estate freed from litigation that would consume the estate's resources for years. No creditor gains anything from Crossroads spending those resources to recover a small award for a clouded title.

## Conclusion

The ultimate test for approving a compromise is not what is best, but what is reasonable. This compromise and settlement is very reasonable. This court should approve it.

Respectfully submitted this 17th day of November, 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

## Certificate of Service

I certify that on November 17, 2026, I filed this memorandum with the Clerk of Court, who will serve it through the CM/ECF system on every registered CM/ECF recipient in this case.

Frank L. Amodeo