FILED ORL INTAKE- USBC
17 NOV 2026 PM1:19

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re: Chapter 11

CANAVERAL CROSSROADS, LLC, and SHERWOOD CONSTRUCTION, INC.,

Debtors.
_______________________________/

Case No. 6:26-bk-05426-GER
Case No. 6:26-bk-05428-GER

Jointly Administered under
Case No. 6:26-bk-05426-GER

Applies to Sherwood Construction, Inc. only

**Frank L. Amodeo's Memorandum of Law in Support of Sherwood Construction, Inc.'s Motion to Approve Compromise of Controversy**

The Settlement Agreement is an eighty-four-page global compromise among twenty-six persons and entities. Sherwood is one of them, and so am I. (Settlement Agreement § 2.2(k), (q)). The Settlement Agreement ends the litigation among the Dixon Parties, the Pitkanen Parties, the Flynn-Johnson Parties, and Yaniv Amar in federal and state courts. (*Id.* § 8.1 & Ex. A). The matters the Settlement Agreement resolves include:

- ten state-court actions and proceedings in Osceola, Orange, and Brevard Counties, among them the guaranty suit against Sherwood;
- two adversary proceedings in this court, one of them Sherwood's own suit against PEDixon and the other removed from Monroe County;
- an appeal pending in the United States District Court for the Middle District of Florida;
- proofs of claim, objections, and motions in four bankruptcy cases, those of Homemakers Real Estate, LLC, Martin C. Flynn, Jr., Sherwood, and Canaveral Crossroads, LLC; and
- a civil theft demand.

The Settlement Agreement takes effect only after this court and the court in each of the other three bankruptcy cases approve the Settlement Agreement, and the approval orders become final. (*Id.* §§ 3.1, 14.2).

**The Proposed Settlement: Sherwood gives up an uncertain share of a distant judgment and receives cash, the release of every Dixon lien, and the end of a $2,100,000 debt.**

Under the Settlement Agreement, Sherwood surrenders a share of a possible judgment against the Dixon Parties. That judgment could be significant. Sherwood's problem is not liability. Sherwood's problem is the portion of the damages a court would allocate to Sherwood at the end of the litigation. The four estates, the Flynn-Johnson Parties, and Yaniv Amar all press claims against the same lenders, arising from the same loans and the same transactions. (*Id.* § 5.1). Any judgment would be divided among all of them, and Sherwood would bear the burden of proving which part of the harm fell on Sherwood rather than on Sherwood's affiliates.

That litigation would not resolve itself for four or five years. The disputes involve numerous parties and run in numerous courts:

- PEDixon and ZPD sued Sherwood as a guarantor in state court. *PEDixon LLC v. Flynn*, No. 2025-CA-002359-CI (Fla. 9th Cir. Ct. 2025).
- PEDixon counterclaimed against Sherwood in a Monroe County action now removed to this court. *650 85th, LLC v. PEDixon LLC*, No. 6:26-ap-00068-LVV (Bankr. M.D. Fla. 2026).
- Sherwood sued PEDixon and others in a separate adversary proceeding. *Sherwood Construction, Inc. v. PEDixon LLC*, No. 6:26-ap-00198-GER (Bankr. M.D. Fla. 2026).
- The same disputes are pending in two other bankruptcy cases. *In re Homemakers Real Estate, LLC*, No. 6:25-bk-05570-GER (Bankr. M.D. Fla. 2025); *In re Flynn*, No. 6:26-bk-00399-LVV (Bankr. M.D. Fla. 2026).

Every one of those proceedings would have to run to judgment, and through appeal, before Sherwood collected a dollar.

Sherwood also stands on weak ground in equity. Directly or indirectly, Sherwood received a substantial portion of the money the Dixon Parties lent. The Dixon Parties made the $2,100,000 loan to Sherwood itself, and Sherwood scheduled that debt as a disputed claim of PEDixon. (Sherwood Doc. 28). A

borrower that received a substantial share of the money has an uphill path in equity to recover damages from a lender that exceed the amount the lender lent or the borrower received.

What Sherwood receives under the Settlement Agreement is significant and substantial:

- The Dixon Payor Parties pay Sherwood $10,000 in cash. (Settlement Agreement § 5.1).
- The Dixon Parties release every lien, mortgage, security interest, financing statement, and lis pendens, colorable or not, that any Dixon Party holds or asserts against Sherwood or Sherwood's property. (*Id.* § 7.1 & Ex. E).
- The Dixon Parties release every claim against Sherwood, including the $2,100,000 in loans. (*Id.* § 9.1).
- The parties dismiss with prejudice the guaranty suit, PEDixon's counterclaims against Sherwood, and Sherwood's adversary proceeding. (*Id.* § 8.1 & Ex. A).

In effect, the Settlement Agreement discharges the $2,100,000 loan and cancels the security interest that stood behind it. Sherwood pays nothing.

The cancellation of that debt and security interest, together with the new cash, gives Sherwood the resources to proceed against the customers that owe Sherwood money. Since 2024, Sherwood has not operated, and Sherwood holds no real property. The receivables are Sherwood's estate. Sherwood holds five major receivables and a smattering of smaller ones.

The Settlement Agreement releases none of the obligors on those receivables. (*Id.* § 9.6(e) & Sch. 2.4). The Settlement Agreement also preserves every claim between Sherwood and Canaveral Crossroads, LLC. (*Id.* § 9.6(c)). Collection of those debts, even at a substantial discount, will far exceed the known claims of Sherwood's non-insider creditors.

The settlement lets Sherwood focus on the entities that actually owe Sherwood money, in amounts far greater than the debts Sherwood must pay. Without the settlement, Sherwood would spend the receivables defending a

guaranty suit and a Dixon counterclaim and prosecuting an adversary proceeding, and a $2,100,000 Dixon claim would share in every dollar Sherwood collected. With the settlement, the Dixon litigation ends and the Dixon claim disappears. Sherwood's interest holders benefit. Sherwood's creditors benefit more, because every dollar Sherwood collects is a dollar that no longer shares with PEDixon.

**This court approves a compromise that serves the estate, measured by the Justice Oaks four-part analysis, unless the compromise falls below the lowest point in the range of reasonableness.**

This court recognized the governing framework for approving a compromise and settlement proposed by a trustee or debtor-in-possession. *In re Huckleberry Partners, LLC*, 2023 WL 8453520, at *3 (Bankr. M.D. Fla. 2023) (quoting Fed. R. Bankr. P. 9019 and *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990)), *aff'd*, 2024 WL 4332610 (M.D. Fla. Sept. 27, 2024). A debtor-in-possession holds the trustee's power to seek that approval. *11 U.S.C. § 1107(a)*. This court articulated the four-part analysis:

1. probability of success in litigation;
2. difficulty in collection;
3. complexity and expense of litigation; and
4. deference to the reasonable views of creditors.

*Huckleberry*, 2023 WL 8453520, at *3.

This court explained that these considerations assist it in determining "the fairness, reasonableness, and adequacy of a proposed settlement agreement." This court explicated further that a "bankruptcy court should decline to approve a proposed compromise only when the compromise falls 'below the lowest point in the range of reasonableness.'" *Id.* at *3 (citing *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007)).

The district court affirmed this court's approval of the *Huckleberry* settlement. *In re Huckleberry Partners LLC*, 2024 WL 4332610, at *1 (M.D. Fla.

Sept. 27, 2024). The bankruptcy court need not decide the merits of the Sherwood-Dixon claims but only consider the probability that those claims would succeed. *Id.* at *6 ("To do so, the bankruptcy judge has only to canvass the issues."). Within the range of reasonableness, a court must "make a pragmatic decision based on all [of the] equitable factors." *In re BAMC Development Holding, LLC*, 2025 WL 770521, at *22 (M.D. Fla. Mar. 11, 2025) (quoting *Huckleberry*, 2024 WL 4332610, at *5).

Measured against the four-part analysis, this settlement does not approach the lowest point in the range of reasonableness. The settlement sits near the top of it.

**1. Probability of success: Sherwood would likely prevail on liability, but Sherwood's share of the damages is uncertain and any award lies years away.**

The first part of the analysis is the probability of success in the litigation. Sherwood would likely succeed against PEDixon, at least in canceling any obligation Sherwood owes. The expert analysis and the arithmetic show that the Dixon loans charged interest above the rates Florida law allows. (Homemakers Doc. 339, Ex. A ¶¶ 91–93). A lender that charges more than the lawful rate forfeits the entire interest. *Fla. Stat. § 687.04*. The principal would likely be forfeited as well, because the Florida statute makes an extension of credit at more than 25% per annum unenforceable. *Fla. Stat. § 687.071(2), (7).*

That success would likely generate a loss for PEDixon, but only to the extent the judgment cancels PEDixon's claim against Sherwood and returns the interest Sherwood itself paid. The amount of interest Sherwood paid, as opposed to the interest third parties paid, is indeterminate at this stage. The amount is something, but fixing it will require further analysis. That analysis may also require parsing the debt over time. The original Sherwood loan likely did not violate the statute.

On September 14, 2023, the Loan Agreement consolidated that loan with the others, and the consolidated debt violated the statute.

Sherwood is therefore likely to win on liability, but the actual amount of Sherwood's damages will be difficult to determine. In the aggregate, Sherwood's portion of the damages, exemplary damages included, is uncertain, problematic, and not likely to exceed the amount putatively owed to PEDixon.

Any award, regardless of its size, also lies a number of years down the line. Sherwood lacks the financial resources even to defend the suits pending against Sherwood, which is part of the reason Sherwood is in Chapter 11 today. A judgment Sherwood cannot afford to pursue to its end has little present value to the estate. The probability of success on liability is good, but the amount of damages is uncertain, and collection is deferred to some far date in the future.

**2. Difficulty in collection: Sherwood would collect only after final judgment, after years of appeal, and perhaps only after piercing the veil to reach Mr. Dixon.**

The second part of the analysis is the difficulty to be encountered in collection. Collection would begin only at the conclusion of the litigation. To the extent the entities that made the loans lack resources, Sherwood would have to pierce the corporate veil to reach Mr. Dixon, who is himself a financial behemoth. Mr. Dixon could easily bond the judgment for appeal. Any recovery for Sherwood's creditors could well arrive, if at all, seven years from now.

In the meantime, Sherwood would have to find a way to pay counsel to defend the numerous actions against Sherwood and to prosecute Sherwood's own claims. The estate has no operating revenue to pay for either. Every dollar spent on that litigation would come out of the receivables that are the creditors' only source of payment.

### 3. Complexity: Ten state-court actions, four bankruptcy cases, and a lawyer who served both sides make this litigation complex, expensive, and slow.

The third part of the analysis is the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it. The litigation is obviously complex. The Homemakers case alone carries more than 460 docket entries, and three separate petitions were required to establish that Homemakers belongs in bankruptcy. As noted above, ten state-court actions and the federal proceedings in four bankruptcy cases are embroiled, one way or another, in this liability.

One of the principal causes of action lies against Alison Pitkanen, Esq., who served as an attorney for Sherwood and also as an attorney for the Dixon Parties. That claim raises esoteric questions of law: what is confidential and what is privileged when one attorney holds multiple conflicting relationships with the parties. Resolving that question alone would add motion practice, delay, and expense.

Already, the parties have spent an estimated $2,000,000 in professional costs, expenses, and fees, and the extant litigation is not even halfway through discovery. The complexity and expense of the litigation favor a settlement on good terms for Sherwood, and these terms are good. The $2,100,000 claim and the security interest behind it are extinguished without cost to Sherwood, and the Dixon Payor Parties pay a small and reasonable sum into the estate.

### 4. Paramount interest of creditors: Sherwood's creditors gain more from collecting what customers owe now than from waiting seven years for a slice of a problematic judgment.

The fourth part of the analysis is the paramount interest of the creditors and a proper deference to their reasonable views. Some creditors might argue that, by waiting seven years, the estate could recover a much larger sum, perhaps a seven-

figure return. That return lies seven years in the future. By then, the creditors' claims, all of which arose more than two years ago, would be nearly a decade old.

The interest of Sherwood's creditors lies in not wasting the estate's resources on a small slice of a problematic judgment seven years from now. The creditors' interest lies in pursuing the customers and entities that actually owe Sherwood money. Collection of even 25 or 30 percent of those receivables will be more than sufficient to pay all of Sherwood's remaining creditors.

## Conclusion

The ultimate test for approving a compromise is not what is best, but what is reasonable. This compromise and settlement is very reasonable. This court should approve it.

Respectfully submitted this 17th day of November, 2026.

Frank L. Amodeo
*Pro se*
1311 Hoffner Avenue
Orlando, Florida 32809
(407) 406-1315
flahome32801@gmail.com

## Certificate of Service

I certify that on November 17, 2026, I filed this memorandum with the Clerk of Court, who will serve it through the CM/ECF system on every registered CM/ECF recipient in this case.

______________________________
Frank L. Amodeo